UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CORDELL FUNDING, LLLP and
CORDELL CONSULTANTS, INC.,
MONEY PURCHASE PLAN, A
QUALIFIED RETIREMENT PLAN
TRUST,

               Appellants,

          - vs. -

THE 1031 TAX GROUP, LLC; 1031
ADVANCE 132 LLC; 1031 ADVANCE,
INC.; 1031 TG OAK HARBOR LLC; AEC
EXCHANGE COMPANY, LLC;
ATLANTIC EXCHANGE COMPANY,
INC.; ATLANTIC EXCHANGE
COMPANY, LLC; EXCHANGE
MANAGEMENT, LLC; INVESTMENT
EXCHANGE GROUP, LLC; NATIONAL
EXCHANGE ACCOMODATORS, LLC;
NATIONAL EXCHANGE SERVICES QI,
LTD.; NATIONAL INTERMEDIARY,
LTD; NRC 1031, LLC; REAL ESTATE
EXCHANGE SERVICES, INC.;
RUTHERFORD INVESTMENT LLC;
SECURITY 1031 SERVICES, LLC;
SHAMROCK HOLDINGS GROUP, LLC;
and OFFICIAL COMMITTEE OF
UNSECURED CREDITORS,

               Appellees.

Case No. 07-cv-11342 (NRB)

---

## APPELLANTS' BRIEF

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................. 1

BASIS OF APPELLATE JURISDICTION ............................................................... 2

ISSUES PRESENTED ON APPEAL ........................................................................ 3

STANDARD OF REVIEW AND ISSUES ................................................................ 3

STATEMENT OF THE CASE .................................................................................... 4

STATEMENT OF RELEVANT FACTS ................................................................... 5

    The Loans ............................................................................................................. 5

        The 5201 Loan ............................................................................................... 6
        $3mil Okun Loan ........................................................................................... 6
        $7mil Okun Loan ........................................................................................... 7
        Sam Loan ........................................................................................................ 8
        IPofA Shreveport Loan .................................................................................. 8

    Defaults and Modifications ................................................................................. 8

    The 1031 Debtors' Bankruptcies, the Motion and the Order ........................... 10

    The New York State Court Action ...................................................................... 14

    The Holding Companies' Bankruptcies ............................................................. 15

ARGUMENT ................................................................................................................ 16

    I.     THE BANKRUPTCY COURT ERRED BY ENTERING THE ORDER
          WHERE CORDELL WAS NOT PROVIDED BASIC PROCEDURAL
          AND SUBSTANTIVE DUE PROCESS ........................................................ 16

    II.    THE BANKRUPTCY COURT ERRED BY ENTERING THE ORDER
          WHERE THE ORDER DOES NOT MAKE A DETERMINATION
          THAT CERTAIN ASSETS AND NON-DEBTOR ENTITIES ARE
          SUBJECT TO THE CLAIMS OF CORDELL NOR DOES THE ORDER
          PROTECT CORDELL'S RIGHTS .................................................................. 20

    III.   THE BANKRUPTCY COURT ERRED IN ENTERING THE ORDER
          BECAUSE THE ORDER DE FACTO SUBSTANTIVELY
          CONSOLIDATES NON-DEBTORS AND THEIR ASSETS WITH THE
          1031 DEBTORS' ESTATES WITHOUT PROPER PROCEDURAL
          SAFEGUARDS, PROTECTION OF CORDELL'S RIGHTS, OR
          FINDINGS AND CONCLUSIONS WARRANTING SUBSTANTIVE
          CONSOLIDATION ........................................................................................ 22

    IV    THE BANKRUPTCY COURT ERRED BY ENTERING THE ORDER
          BECAUSE THERE IS A PRIOR IN TIME RESTRAINING ORDER
          ENTERED BY THE NEW YORK SUPREME COURT PROHIBITING
          TRANSFER OF THE ASSETS WHICH WERE PURPORTEDLY
          TRANSFERRED BY THE ORDER .................................................................. 25

CONCLUSION ............................................................................................................. 27

# TABLE OF AUTHORITIES

## FEDERAL CASES

Agway, Inc. Employees' 401(K) Thrift Investment Plan v. Magnuson, 409 F. Supp. 2d 136 (N.D.N.Y. 2005)........................................................................ 21

Amoco Oil Company v. Joyner (In the Matter of Joyner), 55 B.R. 242 (Bankr. M.D. Ga. 1985)......................................................................................... 27

Boston Valuation Group, Inc. v. Hall (In re Tremont Place Realty Trust), 159 B.R. 624 (Bankr. D. Mass. 1993)........................................................... 24

Carroll v. Rafael Galleries, Inc. (In re Altman), 254 B.R. 509 (D. Conn. 2000)................. 18, 20

Chemical Bank New York Trust Co. v. Kheel, 369 F.2d 845 (2d Cir. 1966) ........................... 22

Cullen v. Riley (In re Masters Mates & Pilots Pension Plan and IRAP Litigation), 957 F.2d 1020 (2d Cir. 1992)..................................................................... 20, 21

Dinova v. Harris (In re Dinova), 212 B.R. 437 (2d Cir. BAP 1997) ....................................... 16

Drabkin v. Midland-Ross Corporation (In re Auto-Train Corporation, Inc.), 810 F.2d 270 (D.C. Cir. 1987)........................................................................ 19

Federal Deposit Insurance Corporation v. Colonial Realty Company, 966 F.2d 57 (2d Cir. 1992)............................................................................................ 23

Flora Mir Candy Corp. v. R.S. Dickson & Co., 432 F.2d 1060 (2d Cir. 1970)......................... 22

H & C Development Group, Inc. v. Miner (In re Miner), 229 B.R. 561 (2d Cir. BAP 1999)......................................................................... 3, 4, 6, 7, 9, 10, 11, 12, 13

In re 599 Consumer Electronics, Inc., 195 B.R. 244 (S.D.N.Y. 1996) ................................... 23

In re D.H. Overmyer Co., Inc., 1976 WL 168421 at * 3 (Case Nos. 73-B-1126, 73-B-1162, 73-B-1189, 73-B-1175, S.D.N.Y. March 26, 1979) ........................ 23

In re Knobel, 167 B.R. 436 (Bankr. W.D. Tex. 1994) ........................................................... 22

In re Larson, 128 B.R. 257, 262 (Bankr. D.N.D. 1990) ........................................................ 26

In re N.S. Garrott & Sons, 48 B.R. 13 (Bankr. E.D. Ark. 1984) ...................................... 22, 24

In re Nutri Bevco, Inc., 117 B.R. 771 (Bankr. S.D.N.Y. 1990)............................................. 19

In re Tudor Motor Lodge Associates, Limited Partnership, 102 B.R. 936 (Bankr. D.N.J. 1989) ................................................................................................ 27

Memphis Light, Gas and Water v. Craft, 98 S.Ct. 1553 (1978) ............................................ 17

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed 865 (1950).......................................................................................... 16

Nelson v. Adams USA, Inc., 120 S.Ct. 1579, 529 U.S. 460, 146 L.Ed.2d 530 (2000)................................................................................................... 23

Official Committee of Unsecured Creditors of Stanwich Financial Services Corporation v. Pardee (In re Stanwich Financial Services Corporation), 377 B.R. 432 (Bankr. D. Conn. 2007)......................................................... 20

Perry v. McDonald, 280 F.3d 159 (2d Cir. 2001) ................................................................. 16

Raine v. Lorimar Productions, Inc., 71 B.R. 450 (S.D.N.Y. 1987) ......................................... 4

Raslavich v. Ira S. Davis Storage Company, Inc. (In re Ira S. Davis, Inc.), 1993 WL 384501 at * 5 (Adv. No. 93-0530S, Bankr. E.D. Pa. Sept. 22, 1993) .......... 24

## TABLE OF AUTHORITIES (cont'd)

Texaco, Inc. v. Board of Commissioners for the LaFourche Basin Levee District
(In re Texaco, Inc.), 254 B.R. 536 (Bankr. S.D.N.Y. 2000) ................................................ 16

Union Savings Bank v. Augie/Restivo Baking Company, Ltd. (In re
Augie/Restivo Baking Company, Ltd.), 860 F.2d 515 (2d Cir. 1988) ......................... 22, 23

United States v. AAPC, Inc. (In re AAPC, Inc.), 277 B.R. 785 (Bankr. D. Utah
2002) ................................................................................................................................ 24

### STATE CASES

Cordell Consultants Inc., Money Purchase Plan, a Qualified Retirement Plan
Trust, et al. v. Okun, et al., Index No. 603472/07 .............................................................. 15

### STATUTES

11 U.S.C. § 363(e) ................................................................................................................ 26

11 U.S.C. § 541 .................................................................................................................... 18

28 U.S.C. § 158(a) ................................................................................................................. 2

### RULES

FRBP 7001 ................................................................................................................. 2, 4, 17, 18

FRBP 8013 ............................................................................................................................. 3

### TREATISES

2 Collier on Bankruptcy ¶ 101.54[1] at 101-212 .................................................................. 25

5 Collier on Bankruptcy § 1100.06 at 1100-33.................................................................... 22

10 Collier on Bankruptcy ¶ 7001.02 (Henry J. Sommer & Alan N. Resnick eds.
15th ed. rev. 2008)........................................................................................................... 18

2 Norton Bankr. L & Prac. 3d § 21:15 ................................................................................ 24

## PRELIMINARY STATEMENT

Appellants Cordell Funding, LLLP ("Cordell Funding") and Cordell Consultants, Inc., Money Purchase Plan, a Qualified Retirement Plan Trust ("Cordell Retirement," and together with Cordell Funding, "Cordell") seek reversal and/or remand of that certain order (the "Order"), entered on October 26, 2007, approving that certain Agreement to Transfer Interests and Assets for the Benefit of Bankruptcy Estates (the "Agreement") entered by the Honorable Martin Glenn, United States Bankruptcy Judge such that Cordell is afforded substantive and procedural due process protection of its respective property rights and interests under the Bankruptcy Code and controlling state law.

The Order effectuated the transfer of nearly all of the assets of Edward H. Okun ("Okun") and his wife Simone Bolani ("Bolani") to the 1031 Debtors.[1]  The Order grants the 1031 Debtors ownership and control of entities and assets owned directly or indirectly by Okun and Bolani, including the assets of business entities whose equity interests were owned by Okun and Bolani immediately prior to transfer, to the exclusion of creditors with claims against the transferred entities and assets and Okun.

Cordell is a creditor of several of the entities whose ownership interests were transferred pursuant to the Order and the Agreement.  Despite being a known creditor of the transferred entities and a party in interest (indeed, the 1031 Debtors, as debtors in possession, and the Official Committee of Unsecured Creditors (the "Committee") of the 1031 Debtors are signatories to agreements with Cordell to modify Cordell's loans) and the existence of a restraining order prohibiting the transfer of assets, neither the 1031 Debtors nor the Committee

---

[1] The "1031 Debtors" are: The 1031 Tax Group, LLC; Exchange Management, LLC; Investment Exchange Group, LLC; National Exchange Accomodators, LLC; National Exchange Services QI, Ltd.; National Intermediary, Ltd.; NRC 1031, LLC; Real Estate Exchange Services, Inc.; Rutherford Investment LLC; Shamrock Holdings, Group, LLC; and AEC Exchange Company.

(together, the "Appellees") named Cordell as a party to an adversary proceeding or otherwise provided Cordell with procedural and substantive notice of their joint motion (the "Motion") for approval of the Agreement, together with their de facto request to quash a duly entered state court restraining order.

Cordell seeks reversal or remand with instructions for further proceedings of the Order because (1) Cordell was denied due process when the Appellees failed to give Cordell notice of the Motion, nor name Cordell to an adversary proceeding wherein Cordell's property rights were altered, as required under Federal Rule of Bankruptcy Procedure ("FRBP") 7001; (2) the Order does not acknowledge that the transferred entities and assets are subject to Cordell's claims and may be subject to the claims of other creditors of the transferred entities, nor does the Order protect Cordell's rights or the rights of the other creditors; (3) the Order effectuates a substantive consolidation the transferred entities and their assets with the 1031 Debtors without service of a motion, legal notice, an adversary proceeding, findings of fact and application of law warranting substantive consolidation, respect or consideration of the rights of creditors such as Cordell, that have known claims to and against such transferred entities and their assets, or any other protections; and (4) the Order was entered notwithstanding an existing restraining order entered by the Honorable Richard Lowe, Justice, New York Supreme Court without a determination as to whether or not the order remained in effect, and/or providing Cordell with adequate (or other) protection for its property interests.

## BASIS OF APPELLATE JURISDICTION

This appeal is filed with the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 158(a) which provides district courts of the United States with jurisdiction to hear appeals from, inter alia, final orders of the bankruptcy courts in their districts. The Order is a final order entered on October 26, 2007 by the Honorable Martin Glenn,

United States Bankruptcy Judge, Southern District of New York, in Bankruptcy Case No. 07-11448 (MG), which granted the Motion filed on October 16, 2007.  This appeal was timely filed on November 19, 2007.[2]

## ISSUES PRESENTED ON APPEAL

1.      Whether the Bankruptcy Court erred by entering the Order where Cordell was not provided basic procedural and substantive due process.

2.      Whether the Bankruptcy Court erred by entering the Order where the Order does not make a determination that certain assets and non-debtor entities are subject to the claims of Cordell nor does the Order protect Cordell's rights.

3.      Whether the Bankruptcy Court erred in entering the Order because the Order de facto substantively consolidates non-debtors and their assets with the 1031 Debtors' estates without proper procedural safeguards, protection of Cordell's rights, or findings and conclusions warranting substantive consolidation.

4.      Whether the Bankruptcy Court erred by entering the Order because there is a prior in time Restraining Order entered by the New York Supreme Court prohibiting transfer of the assets which were purportedly transferred by the Order.

## STANDARD OF REVIEW AND ISSUES

The standard of review of a bankruptcy court's judgment, order or decree is governed by FRBP 8013.  A bankruptcy court's findings of fact may not be set aside unless clearly erroneous. A bankruptcy court's legal conclusions are reviewed *de novo*. H & C Development Group, Inc. v. Miner (In re Miner), 229 B.R. 561, 565 (2d Cir. BAP 1999);  *De* novo review requires the appellate court to review questions of law independently of the Bankruptcy Court's

---

[2]  On November 5, 2007, the Bankruptcy Court entered the Stipulation and Order Extending Deadlines Relating to Order Approving Agreement to Transfer Assets for the Benefit of Bankruptcy Estates extending the deadline for Cordell to file a notice of appeal until November 19, 2007.

determination.  Raine v. Lorimar Productions, Inc., 71 B.R. 450, 452 (S.D.N.Y. 1987) ("The district court must make an independent review, however, of the bankruptcy court's conclusions of law."); In re Miner, 229 B.R. at 565 ("A *de novo* review allows us to decide the issue as if no decision had previously been rendered. No deference is given to the Bankruptcy Court's decision, and we are free to disregard the Bankruptcy Court's reasoning and determination, as if we were the original trial court…").

In the instant appeal, there are no factual questions at issue.  The facts are part of the record in the proceedings below.  The issues on appeal are legal in nature, involving the determination of the proper requirements of due process, consideration of third-parties affected by a settlement agreement, adjudication of property interests without service of an adversary proceeding or opportunity to be heard, and separation of entities and the assets of those entities. The determination of these issues leads to the inescapable conclusion that the Order must be reversed or alternatively, remanded with instructions to address the issues raised herein.  The standard for the Court to apply is *de novo*.

## STATEMENT OF THE CASE

This is an appeal, filed by Cordell, of the Order, entered on October 26, 2007, which granted the Motion and approved the Agreement.  The Bankruptcy Court entered the Order which went beyond the relief that was necessary for approval of a settlement and affected substantive rights of Cordell without imposition of an adversary proceeding, service, and/or notice to Cordell violating Cordell's procedural and substantive rights to due process and FRBP 7001.

In addition, the Bankruptcy Court erred in not considering the Agreement's impact on Cordell and other creditors of the transferred entities and assets.  Courts are required to consider the rights of third parties, and the impact that a settlement agreement has on those rights, before

approving such settlement.   Here, the Order does not account for the rights of third parties, including Cordell, in effect separating the assets from the non-bankruptcy entities, while leaving the liabilities behind without regard for the interests of the remaining creditors.

In addition, the Order also effectuated a substantive consolidation (or partial consolidation) of the transferred entities and their assets into the 1031 Debtors' estates without making any factual findings warranting such consolidation. As set forth in greater detail below, substantive consolidation is a significant remedy which is used sparingly and which cannot be invoked unless a court makes specific findings that support such relief.   Here, no findings were made as to the consolidation of substantially all of the non-debtor Okun's assets with those of the Debtors, which has (or will) allowed one group of creditors to be favored over other creditors.

Finally, the Bankruptcy Court erred when it ignored a prior in time restraining order entered in Cordell's favor against Okun and several of the transferred entities.   Instead of overruling the restraining order or holding a hearing to determine whether the restraining order should continue, the restraining order was ignored without a determination as to adequate protection (or other protection) to Cordell or establishing a full record with opportunity for Cordell to be heard.

Application of the proper legal standard here mandates the determination of the reversal of the Order.

## STATEMENT OF RELEVANT FACTS

### The Loans

Cordell is a secured creditor with claims of nearly $60 million against IPofA 5201 Lender, LLC ("IPofA 5201"), Simone Condo I, LLC ("Simone Condo"), Simone Condo II, LLC ("Simone Condo II"), Investment Properties of America, LLC ("Investment Properties"), Columbus Works Trust ("Columbus Works"), Parkway Trust ("Parkway"), Crossroads

Transportation and Logistics, Inc., IpofA Shreveport Industrial Park LLC ("IpofA Shreveport") and Edward Okun ("Okun"). (Affirmation of Douglas E. Spelfogel, Esq. in Support of Ex Parte Motion for Attachment and Appointment of Receiver ("Affirmation"), R. 9 at pgs. 1-2, Index of Exhibits ("Index"), R. 10 at pgs. 1-180). Cordell's claims arise from loans (the "Loans") made between December 2006 and April 2007. (Affirmation, R. 9 at pgs. 4-10, Index, R. 10 at pgs. 1-180).

The 5201 Loan

On December 12, 2006, Cordell Retirement loaned to IPofA 5201 the principal sum of $2,500,000.00 (the "5201 Loan"), which loan is evidenced by that certain Secured Promissory Note, dated December 12, 2006, from IPofA 5201 payable to the order of Cordell Retirement. (Affirmation, R. 9 at pgs.4-5, Index, R. 10 at pgs. 1-25). Repayment of the 5201 Note is secured by, among other things, a pledge to Cordell Retirement of IPofA 5201's interest in that certain Promissory Note ("Morgan Stanley Note") dated February 2, 2005 in the original principal amount of $7,100,000.00 made payable by various non-parties (collectively, "MSC Obligors") to Morgan Stanley Mortgage Capital, Inc. ("Morgan Stanley"), the Mortgage and Security Agreement dated February 2, 2005 made by MSC Obligors and IpofA West 86th Street LeaseCo, LLC to Morgan Stanley, and the other Loan Documents described in the 5201 Note. (Id.). Okun, Investment Properties and Crossroads executed and delivered to Cordell Retirement a Guaranty, Key Principal Guaranty, and Project Guaranty guaranteeing the performance of IPofA 5201 under the 5201 Note. (Affirmation, R. 9 at pg. 5, Index, R. 10 at pgs. 26-53).

$3mil Okun Loan

Cordell Retirement also loaned to Okun the principal sum of $3,000,000.00 (the "$3mil Okun Loan"), which loan is evidenced by that certain Promissory Note dated December 19, 2006 from Okun payable to the order of Cordell Retirement (the "$3mil Okun Note"). (Affirmation,

- 6 -

R. 9 at pgs. 5-6, Index, R. 10 at pgs. 54-73).  Repayment of the $3mil Okun Note is secured by, among other things, (i) that certain First Priority Real Estate Mortgage and Security Agreement, dated December 19, 2006, encumbering the premises located at 10548 Coppergate Drive, Carmel, Indiana; (ii) that certain Mortgage and Security Agreement dated December 19, 2006 encumbering condominium unit 1808 at 901 Brickell, Miami, Florida; (iii) that certain Mortgage and Security Agreement dated December 19, 2006 encumbering unit 3404 at 901 Brickell, Miami, Florida; and (iv) the other Loan Documents described in the $3mil Okun Note. (Id.) The $3mil Okun Loan is also collateralized against the Morgan Stanley Note.  Pursuant to agreement (the "Loan Modification Agreement") as detailed below, Cordell Retirement received and recorded the deeds for the above referenced collateral in partial satisfaction of the $3mil Okun Note (Affirmation, R. 9 at pg. 5, Index, R. 10 at pg. 143), which has credit in the amount of $1,598,304.77 against amounts due under such note.

$7mil Okun Loan

Cordell Retirement also loaned to Okun the principal sum of $7,000,000.00 (the "$7mil Okun Loan"), which loan is evidenced by that certain Secured Promissory Note dated April 20, 2007, from Okun payable to the order of Cordell Retirement (the "$7mil Okun Note"). (Affirmation, R. 9 at pg. 6, Index, R. 10 at pgs. 93-98).  Repayment of the $7mil Okun Note is secured by, among other things, (i) that certain third priority Mortgage Deed and Security Agreement dated April 20, 2007 encumbering the premises at 394 S. Hibiscus Drive, Miami Beach, Florida 33139; (ii) Collateral Assignment of Membership Interest dated April 20, 2007 by which the membership interest in IPofA Salina Central Mall Member, LLC was assigned to Cordell Retirement; and (iii) the other Loan Documents described in the $7mil Okun Note.  (Id.). Pursuant to the Loan Modification Agreement, the $7mil Okun Note is also collateralized against the assets pledged under the $3mil Okun Note and the Morgan Stanley Note. (Index, R. 10 at pg

- 7 -

141).

Sam Loan

Cordell Funding loaned Sam Trustee Services, LLC ("Sam Trustee") the principal sum of $26,500,000.00 (the "Sam Loan"), which loan is evidenced by that certain Secured Promissory Note (the "Sam Note"), dated May 3, 2006, from Sam, as trustee of Columbus Works and Parkway, payable to the order of Cordell Funding. (Affirmation, R. 9 at pgs. 6-7, Index, R. 10 at pgs 99-116). Repayment of the Sam Note is secured by, among other things, a Collateral Assignment, a Security Agreement, a Guaranty, a Stock Pledge Agreement, a Membership Interest Pledge and the other loan documents described in the Sam Note, including without limitation (i) that certain $27 million Promissory Note and Mortgage dated July 8, 2005 to Columbus (the "Columbus Note") and (ii) $2 million Promissory Note and Collateral Mortgage dated March 1, 2005 to Parkway. (Affirmation, R. 9 at pgs. 6-7, Index, R. 10 at pgs. 99-123).

IPofA Shreveport Loan

Cordell Funding loaned IPofA Shreveport the principal sum of $13,416,000.00, (the "Shreveport Loan") which loan is evidenced by that certain promissory note (the "Shreveport Note") dated February 23, 2007, from IPofA Shreveport payable to the order of Cordell Funding. Repayment of the Shreveport Note is secured by, among other things a Loan Agreement, Promissory Note, Mortgage, Security Agreement and Assignment of Leases and Rents, Guaranty Agreement and other loan documents described in the Shreveport Note.

**Defaults and Modifications**

Okun, Sam Trustee, IPofA 5201, and IPofA Shreveport (collectively the "Borrowers") defaulted on the Loans. Notices of the defaults and opportunity to cure on all the Loans were provided. (Affirmation, R. 9 at pgs. 7-8, Index, R. 10 at pg. 137). When the default notices were ignored, Cordell accelerated all of the Loans as immediately due and payable, together with

- 8 -

interest, default interest, late fees, and attorneys fees. (Id.).

In July, 2007, after the 1031 Debtors filed their voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), the Borrowers contacted Cordell to secure modifications and forbearances in respect of the Loans in order to provide the Borrowers with time to refinance, pay the Loans in full, and contribute excess proceeds from the refinancing to the 1031 Debtors' estates. (Affirmation, R. 9 at pg. 8, Index, R. 10 at pgs 137-140).   Thereafter the parties entered into such negotiations and preliminarily agreed to an escrow agreement (the "Escrow Agreement") which provided for the safeguarding and payment to Cordell on certain of the cash flow generated under the Morgan Stanley, Columbus Works and Parkway Notes. (Affirmation, R. 9 at pg. 8, Index, R. 10 at pgs. 124-136).

Thereafter, Cordell, the Borrowers, the 1031 Debtors and the Committee entered into the Loan Modification Agreement, which, *inter alia*, provided for deadlines and conditions for a refinancing, cross default and cross collateralizations for the loans made by Cordell, the delivery of certain collateral to Cordell, and a reduction in the rate of interest charged during the term of the Loan Modification Agreement. (Affirmation, R. 9 at pgs. 8-9, Index, R. 10 at pgs. 137-159). Under the Loan Modification Agreement, Borrowers duly acknowledged that the within obligations were due to Cordell and that the loan documents constituted valid and enforceable security agreements in and to the respective collateral, all without defense, setoff, or claim. (Affirmation, R. 9 at pgs. 8-9, Index, R. 10 at pgs. 142-143 & 145-146).   Borrowers executed and delivered to Cordell a Confession of Judgment confessing judgment in the amount of $13,424,302.05 as of July 31, 2007 with respect to the 5201 Note, the $3mil Okun Note and the $7mil Okun Note. (Affirmation, R. 9 at pg. 9, Index, R. 10 at pgs. 160-163).   Thereafter, Cordell entered into that certain Supplement to Loan Modification Agreement (the "Supplement") which

clarified the Loan Modification Agreement and terminated the Escrow Agreement. (Affirmation, R. 9 at pg. 9, Index, R. 10 at pgs 164-174).  <u>The Loan Modification Agreement and Supplement were signed by Borrowers, the 1031 Debtors and the Committee</u>. (Index, R. 10 at pgs. 148-153 & 168-174).

There have been numerous defaults under the Loan Modification Agreement and the Supplement. (Affirmation, R. 9 at pg. 9).  Cordell has not been paid regularly monthly debt service since April 2007.  Based upon the foregoing, Cordell terminated the Loan Modification Agreement and Supplement, issued notices of foreclosure sale on the Morgan Stanley Note, Columbus Note, and Parkway Note, and commenced action in the New York State Supreme Court as detailed more fully below. (Affirmation, R. 9 at pg. 9, Index, R. 10 at pgs. 175-180).

**<u>The 1031 Debtors' Bankruptcies, the Motion and the Order</u>**

In May and June 2007, the 1031 Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code. (Motion, R. 1 at pg. 4).

On October 16, 2007, the 1031 Debtors and the Committee filed the Motion seeking approval of the Agreement. (<u>Id</u>. at pgs. 1-17).  The 1031 Debtors and the Committee, despite actual knowledge through the Loan Modification Agreement and the Supplement, of Cordell's claims against the interests and assets subject to the Agreement, did not provide Cordell with notice of the Motion or the hearing on the Motion nor named as a party.  The purpose of the Agreement was more than payment of a settlment amount, but to cause Okun and Bolani to effectuate the "surrender to [the 1031 Debtors'] estates of substantially all of his direct and indirect equity and property interests for the benefit of the [1031] Debtors' creditors..." to the exclusion of other creditors.  (<u>Id</u>. at pg. 3)  In support of the Motion, James Feltman, Senior Managing Director of Mesirow Financial Consulting, financial consultants to the Committee, affirmed that the Motion should be granted and the Agreement approved because "[o]ther

potential risks and impediments to Creditor recoveries under a litigation approach would include competing estates and fiduciaries (IPofA and/or other Okun entities)…" (Affidavit of James Feltman in Support of Joint Motion for Approval of Agreement to Transfer Interest and Assets for the Benefit of Bankruptcy Estates (the "Feltman Affidavit"), Appellees R. 3 at pg. 5). The result of the Agreement appears to be substantive consolidation of the transferred entities and assets and the 1031 Debtors with complete (and intentional) disregard for independent parties, including Cordell, having claims against such entities, interests and assets.

Pursuant to the Agreement, Okun and Bolani purportedly transferred (with the exception of two parcels of real estate and two motor vehicles) all of their real and personal property whether directly or indirectly owned. (Agreement, Appellees R. at pgs. 9 & 16-21). The Okuns' ownership interests in certain of the Borrowers were transferred pursuant to the Agreement. (Id.) Cordell was not served or named with the Motion despite being a known secured and unsecured creditors of the entities transferred under the Agreement.

In addition to Cordell, it appears that at least one other entity, Newton Bayard Limited Partnership ("Bayard"), obtained a state court injunction against Okun and some of his entities and assets. (Transcript of Hearing Held on October 26, 2007 at 11:05 a.m. Re: Joint Motion for Approval of Agreement to Transfer Interest and Assets for the Benefit of Bankruptcy Estates Filed by Paul Traub ("October 26, 2007 Transcript"), R. 5 at pgs. 19-21). On October 16, 2007, the 1031 Debtors and the Committee brought an adversary proceeding against Bayard seeking to enjoin it from continuing to prosecute its state court action. The adversary proceeding was settled on or about October 26, 2007. (Id. at pgs. 19-27) in exchange for a cash payment to Bayard and allowance of an administrative claim.

On October 23, 2007, the Bankruptcy Court conducted hearings on the Motion and

motions to appoint a Chapter 11 trustee.  The Bankruptcy Court granted the motions to appoint a trustee by and through its amended memorandum opinion and order entered on October 23, 2007 (Amended Memorandum Opinion and Order Granting Motions for Appointment of Chapter 11 Trustee ("Order Appointing Trustee"), Appellees R. 6 at pgs. 1-10).  On October 25, 2007, Gerard McHale was appointed as the Chapter 11 trustee (the "Trustee") for the 1031 Debtors' estates.  (Motion for an Order (A) Authorizing Chapter 11 Trustee to Pay Necessary Expenses Associated with the Maintenance of Assets Acquired Pursuant to Asset Transfer Agreement and (B) Approving on a Nunc Pro Tunc Basis Certain Expenses Paid on an Emergency Basis ("Motion to Approve Payment"), Appellees R. 9 at pg. 2).  The Trustee subsequently approved/ratified the Agreement. (October 26, 2007 Transcript, R. 5 at pg. 33)

On October 26, 2007, the Bankruptcy Court continued the hearing on the Motion.[3] During the hearing it was revealed that in addition to Cordell, at least two other creditors with claims against the assets transferred pursuant to the Agreement did not receive notice of the Motion. (Id. at pgs. 30 & 32).  Despite concerns raised by Cordell and counsel for Valley National Bank regarding the lack of notice, the Bankruptcy Court approved the Motion. (Id. at pg. 41, Order, R. 2 at pgs. 1-5 ).

During the hearing, the Bankruptcy Court stated that:

> The [1031] debtors also have claims to the nondebtor assets to the extent that the debtors' funds, essentially the diverted exchanger funds, were used to acquire or support the nondebtor assets Okun acquired through the Okun entities. (Id. at pg. 36)

The Bankruptcy Court, however, did not make specific findings as to which of the assets were either purchased or maintained with "diverted exchanger funds".  It is also unclear whether Okun's diversion of exchangers' funds results in a claim against Okun or the transferee of such

---

[3] Counsel for Cordell participated in the hearing only because it was served earlier that day with an adversary complaint seeking to restrain Cordell from exercising its rights in its collateral.  (Id. at pg. 32).

funds. Nevertheless, Cordell has secured and unsecured claims against the entities and the assets, the repayment of which has higher priority than the 1031 Debtors' unsecured creditors (the 1031 Debtors do not have any secured creditors).

The Bankruptcy Court also stated that:

> The settlement eliminates the possibility of an unfavorable outcome of litigation to the estate and the risk of all of the assets in question that would be exhausted or grabbed by other Okun creditors by the time any remedy could be obtained by the trustee. (Id. at pg. 40)

Thus, in granting the Motion, the Order, at least in part, appears to preclude the claims of creditors whose collateral was transferred pursuant to the Agreement and Order, in affect authorizing preferential and/or fraudulent transfers for the benefit of the 1031 Debtors and to the detriment of other legitimate creditors.

On October 26, 2007, the Bankruptcy Court entered the Order. (Order, R. 2 at pgs. 1-5). In the Order, the Bankruptcy Court found and held that "[c]onveyance of the Assets for the benefit of the [1031 Debtors'] estates as set forth in the Agreement is in the best interests of the creditors of the [1031] Debtors' estates." (Id. at pg. 4). The Court also found that "[d]ue and sufficient notice of the hearing to consider the Agreement was provided to parties in interest, including [Okun and Bolani]." (Id). The Order gave the Trustee control of the transferred assets and entities on behalf of the 1031 Debtors' estates only. Nowhere in the Order is there any acknowledgement or provision for creditors with claims against the entities or assets transferred pursuant to the Agreement. (Id. at pgs. 1-5). In addition, of important note, nowhere in the Order does it provide for a wavier of state law requirements to affect the ultimate transfer of title with respect to each such asset.

On October 26, 2007, the same date the Bankruptcy Court heard continued argument on

the Motion, the Trustee served Cordell with the adversary complaint, seeking to enjoin Cordell from continuing to prosecute its rights against the Borrowers and Cordell's collateral. (October 26, 2007 Transcript, R. 5 at pgs. 32-33, Complaint against Cordell Funding, LLLP, Greenwich Capital Financial Products, Inc., Wachovia Bank National Association, Boulder Holdings VI, LLC, Valley National Bank, Westheimer Mall, LLC, JPS Capital Partners LLC, Kluger, Peretz, Kaplan & Berlin P.L., Ninety-Eight Aviation, LLC, Marquette Transportation Finance, Inc. (the "Complaint"), R. 7 at pgs. 1-14).

On July 30, 2007, the Bankruptcy Court entered an Order establishing August 24, 2007 as the bar date for filing proofs of claim. (Copy of docket through 12/7/07 (the "Docket"), Appellees R. 1 at pg. 55). Thus, Cordell, who was not a creditor of the 1031 Debtors at that time, has been left without a mechanism to assert its rights.

Since the Order was entered, the Trustee has brought several motions to sell various assets held by Okun or his entities. Certain documents submitted in support of the motions indicate that title was not transferred from Okun or his entities even as of the time the motions were filed.

On November 19, 2007, Cordell filed the Notice of Appeal of the Order and, on November 29, 2007, filed the its Statement of Issues and Designation of Items to be Included in Record on Appeal. (Notice of Appeal of the Order, R. 6 at pgs. 1-5, Docket, Appellees R. 1 at pgs. 106 & 108). On December 10, 2007, the 1031 Debtors filed their Designation of Additional Items to be Included in Record on Appeal. On December 18, 2007, this appeal was docketed in this Court.

**The New York State Court Action**

On October 19, 2007, before the Agreement was approved by the Bankruptcy Court, and before legal title was transferred in such assets under applicable state law, Cordell filed an action

in the Supreme Court of the State of New York, County of New York, captioned <u>Cordell</u>
<u>Consultants Inc., Money Purchase Plan, a Qualified Retirement Plan Trust, et al. v. Okun, et al.</u>,
Index No. 603472/07, against the Borrowers seeking, *inter alia*, an order of attachment and the
appointment of a receiver and summary judgment in lieu of a complaint (the "New York State
Action"). (Affirmation, R. 9 at pgs. 1-32, Index, R. 10 at pgs. 1-180).

On October 22, 2007, the Honorable Richard Lowe entered an order (the "Restraining
Order") restraining and enjoining the Borrowers from "[s]elling, gifting or otherwise transferring
any and all of the assets described on the [list annexed to the Restraining Order], except with
respect to real and personal property having a fair value of less than $50,000.00 apiece owned
directly and indirectly by Edward H. Okun identified …[on the list]." (Restraining Order, R. 11
at pgs.1-2 ).  The Order approving the Agreement was entered four (4) days later.[4]

**<u>The Holding Companies' Bankruptcies</u>**

On November 15, 2007, Investment Properties, IPofA 5201, Simone Condo I and Simone
Condo II filed voluntary chapter 11 bankruptcy petitions in the United States Bankruptcy Court,
Southern District of New York. (Voluntary Petition (Chapter 11) - Investment Properties of
America, LLC, Appellees R. 13 at pgs. 1-9, Voluntary Petition (Chapter 11) – IpofA 5201
Lender, LLC, Appellees R. 14 at pgs. 1-9, Voluntary Petition (Chapter 11) – Simone Condo I,
LLC, Appellees R. 21 at pgs. 1-13, Voluntary Petition (Chapter 11) – Simone Condo II, LLC,
Appellees R. 22 at pgs. 1-13).  Additionally, on November 30, 2007, Parkway Virginia Trust and
Columbus Works Virginia Trust (together with Investment Properties, IPofA 5201, Simone
Condo I and Simone Condo II the "Holding Companies") filed voluntary chapter 11 bankruptcy
petitions in the United States Bankruptcy Court, Southern District of New York. (Voluntary
Petition (Chapter 11) – Parkway Virginia Trust, Appellees R. 23 at pgs. 1-13, Voluntary Petition

---

[4] The State Court Action was removed to the Bankruptcy Court and is subject to a pending motion for remand.

(Chapter 11) – Columbus Works Virginia Trust, Appellees R. 24 at pgs. 1-13.).   To date, Borrowers Okun and Crossroads are not debtors in any bankruptcy proceedings.

## ARGUMENT

I.   **THE BANKRUPTCY COURT ERRED BY ENTERING THE ORDER WHERE CORDELL WAS NOT PROVIDED BASIC PROCEDURAL AND SUBSTANTIVE DUE PROCESS**

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed 865 (1950).   Notice must be given sufficiently early to permit parties in interest to respond. Id.; see also Texaco, Inc. v. Board of Commissioners for the LaFourche Basin Levee District (In re Texaco, Inc.), 254 B.R. 536, 561 (Bankr. S.D.N.Y. 2000) ("Fair or adequate notice has two basic elements: content and delivery." (quoting Fogel v. Zell, 221 F.3d 955, 962 (7th Cir. 2000)).   "The right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." Dinova v. Harris (In re Dinova), 212 B.R. 437, 442-43 (2d Cir. BAP 1997) (quoting Mullane, 339 U.S. at 314, 70 S.Ct. at 657).

Due process requires that notice be provided to known parties of any request for relief that directly impacts the rights of those parties.   See e.g. In re Dinova, 212 B.R. at 445 ("Virtually every substantive motion in American jurisprudence must be on notice to affected parties."); See also Perry v. McDonald, 280 F.3d 159, 174 (2d Cir. 2001) (Finding that appellant's rights to due process were not violated when appellee department of motor vehicles mailed notice to appellant at the address provided to appellee by appellant, the Second Circuit

states that "[t]he essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and an opportunity to meet it.'" (citations omitted)). <u>Memphis Light, Gas and Water v. Craft</u>, 98 S.Ct. 1553, 1563 (1978) ("The purpose of the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing'.").

In this case, the 1031 Debtors and the Committee were on notice of the pending Restraining Order granted by the State Supreme Court, which enjoined the transfer of any of Okun's assets with a value over $50,000.00.   In addition, the 1031 Debtors (as well as the Committee) were counter-parties to the Loan Modification Agreement, which acknowledged Cordell's rights and claims in and against Okun's assets.

Notwithstanding, the 1031 Debtors failed to serve Cordell with the Motion to approve transfer, nor name Cordell as a party for purposes of asking the bankruptcy court to overrule the Restraining Order.  As a consequence, Cordell was not on notice of the Motion, nor afforded any notice that the 1031 Debtors would be seeking in effect, to quash the Restraining Order granted in favor of Cordell.

This is in stark contrast to treatment afforded to another third party, Bayard, which maintained an injunction in its favor prohibiting the transfer of some or all of the assets at issue. As a result of the foregoing, Bayard was named in an adversary complaint brought by the 1031 Debtors seeking to in effect enjoin or overrule its injunction to facilitate the transfer of the assets under the Agreement.  In connection with the foregoing, the 1031 Debtors brought an order to show cause before the Bankruptcy Court for an expedited determination of the issues raised, naming Bayard as a party, which provided for all of the other formalities required to adjudicate property rights under FRBP 7001, including, but not limited to providing for notice and

opportunity to be heard. As a result, Bayard had the opportunity to respond to the relief, ultimately reaching a settlement with the 1031 Debtors whereby in exchange for agreeing to release the injunction, Bayard was paid a cash settlement and received an administrative claim in the Bankruptcy Case.

Contrastingly, Cordell was not noticed with the Motion nor named in any adversary proceeding. An "adversary proceeding" is an action "to recover money or property . . . [or] to determine the validity, property, or extent of a lien or other interest in property,. . . ." FRBP 7001. It is initiated by a complaint that must be responded to by an answer. Clearly the State Court injunction constituted a "lien or other interest in property" within the plain meaning of FRBP 7001. An adversary proceeding is initiated by a complaint that must be responded to by an answer. Had an adversary proceeding been filed, Cordell would have been able to refer to a complaint that might have alerted it to the threat to their interests.

Similarly, adversary proceedings are also utilized when there is a dispute whether a particular item of property is property of the estate under 11 U.S.C. § 541 . "[A]ctions or proceedings for the recovery of money or property, whether brought by a trustee or debtor or by a third person claiming property held by the trustee or debtor, will come within Rule 7001." 10 Collier on Bankruptcy ¶ 7001.02 (Henry J. Sommer & Alan N. Resnick eds. 15th ed. rev. 2008).

Thus Cordell could fairly have assumed that the Debtors would utilize an adversary proceeding to void the injunction or, as detailed more fully below, to affect the wholesale consolidation of non-debtor estates with the 1031 Debtors. Indeed, notice of proceedings together with the formalities required under FRBP 7001 must be given to all of the parties with an interest in a property. See Carroll v. Rafael Galleries, Inc. (In re Altman), 254 B.R. 509, 516 (D. Conn. 2000). ("[T]he Bankruptcy Rules clearly contemplate and provide for an adversarial

procedure to resolve the issue of whether property outside the estate may be brought in…").

Moreover, actual notice of the proposed action must be provided. See Drabkin v. Midland-Ross Corporation (In re Auto-Train Corporation, Inc.), 810 F.2d 270, 279 (D.C. Cir. 1987) (Remanding case back to bankruptcy court where creditor of non-debtor entity did not receive actual notice of consolidation hearing). "Even where a creditor is aware of the pendency of the bankruptcy case, courts have held that the debtor is obligated to give formal notice to the creditor where the creditor is known to the debtor." In re Nutri Bevco, Inc., 117 B.R. 771, 778 (Bankr. S.D.N.Y. 1990).

In this case, as detailed above, although Cordell is a known creditor of the transferred entities, and the 1031 Debtors and the Committee are signatories to the Loan Modification Agreement and the Supplement, and the Motion sought to bring into the 1031 Debtors' estates assets subject to Cordell's claims and liens and also effectively consolidated the transferred entities and their assets with the 1031 Debtors, neither the 1031 Debtors nor the Committee gave Cordell notice of the Motion, nor named Cordell to any adversary proceeding. Cordell has been prejudiced by this lack of procedural and substantive notice (including initiation of an adversary complaint as done with Bayard) because its interests, including its ability to exercise its rights as a secured and unsecured creditor (and counter-party to a restraining order entered in the State Court), have been affected by the Order without Cordell's ever having received a fair and full opportunity to be heard on the Motion (or receive adequate (or other protection) as provided for with Baynard.)

As a consequence, Cordell was not given an opportunity to put forth its position as to what amounted to a de facto declaratory ruling by the Bankruptcy Court disregarding the injunction imposed in Cordell's favor by the State Supreme Court, nor was Cordell otherwise

afforded an opportunity to participate in a hearing to determine what protections, protocols and procedures should be put in place to adequately protect Cordell's rights, while other similarly situated parties were named in an adversary complaint, and ultimately provided with cash and a priority administrative claim to protect their respective interests in the transferred assets. In addition, Cordell has been prejudiced in not having an opportunity to be heard and demonstrate that its collateral (certain of which was included in the Order, including the membership interests in the Salina Mall) should not have been included among the assets transferred pursuant to the Agreement and Order.[5] C.f. In re Altman, 254 B.R. at 515. Accordingly, the Bankruptcy Court erred in entering the Order when Cordell was denied an opportunity to be heard in terms of procedural and substantive due process.

## II.    THE BANKRUPTCY COURT ERRED BY ENTERING THE ORDER WHERE THE ORDER DOES NOT MAKE A DETERMINATION THAT CERTAIN ASSETS AND NON-DEBTOR ENTITIES ARE SUBJECT TO THE CLAIMS OF CORDELL NOR DOES THE ORDER PROTECT CORDELL'S RIGHTS

In addition, it is well settled that courts must consider the rights of non-settling third parties before approving any settlement. Cullen v. Riley (In re Masters Mates & Pilots Pension Plan and IRAP Litigation), 957 F.2d 1020, 1026 (2d Cir. 1992). "[W]here the rights of one who is not a party to a settlement are at stake, the fairness of the settlement to the settling parties is not enough to earn the judicial stamp of approval." Id.; see also Official Committee of Unsecured Creditors of Stanwich Financial Services Corporation v. Pardee (In re Stanwich Financial Services Corporation), 377 B.R. 432, 437 (Bankr. D. Conn. 2007) ("The Second Circuit has instructed that when the rights of non-settling parties are implicated by the terms of a settlement, the court cannot approve it without considering the interests of those non-settling

---

[5] Cordell was only in Bankruptcy Court at the adjourned hearing on the Motion because it was served with an order to show cause restraining it from taking action against its collateral days before the hearing.

parties.").

When determining whether to approve a settlement that affects the rights of third-parties "the court's primary focus is upon the effect of the settlement on the non-settling defendants." Agway, Inc. Employees' 401(K) Thrift Investment Plan v. Magnuson, 409 F. Supp. 2d 136, 142 (N.D.N.Y. 2005). Moreover, where the rights of third parties are involved "third party participation in an evidentiary fairness hearing … [is] necessary to protect the due process rights of third parties." Cullen, 957 F.2d at 1031 (Refusing to approve a settlement in the class action context when the settlement would bar certain types of claims by non-settling parties.)

Here, the bankruptcy court did not consider the rights of any of the creditors with claims against the transferred entities and assets, including Cordell. Instead, the Order appears to preclude such third party creditors from exercising certain of their rights. In particular, the Order operated to take the assets of Okun, including ownership interests in several business entities, without addressing the liabilities of Okun and the transferred entities to third parties, including Cordell. That the Agreement may be advantageous to the creditors of the 1031 Debtors does not overcome the requirement that the Bankruptcy Court was required to consider the Agreement's impact on the third parties involved, and ensure that the Agreement was fair to those third parties, in particular, where the claims bar date has already passed in the 1031 Debtors' cases, while the Order gives rise to an entirely new class of creditors. Thus, the Bankruptcy Court erred when it entered the Order favoring the creditors of the 1031 Debtors, without establishing protections to address the newly created class of creditors left with claims against Okun's empty shell, and consequently, should be reversed.

III.    **THE BANKRUPTCY COURT ERRED IN ENTERING THE ORDER BECAUSE
THE ORDER DE FACTO SUBSTANTIVELY CONSOLIDATES NON-DEBTORS
AND THEIR ASSETS WITH THE 1031 DEBTORS' ESTATES WITHOUT
PROPER PROCEDURAL SAFEGUARDS, PROTECTION OF CORDELL'S
RIGHTS, OR FINDINGS AND CONCLUSIONS WARRANTING SUBSTANTIVE
CONSOLIDATION**

Substantive consolidation may not be effected "unless a party seeks it and there is a
proper justification." In re Knobel, 167 B.R. 436, 440-41 (Bankr. W.D. Tex. 1994); see also In re
N.S. Garrott & Sons, 48 B.R. 13, 18 (Bankr. E.D. Ark. 1984) (Noting that cases involving
substantive consolidation involved a formal application and hearing for consolidation).
"Because of the dangers in forcing creditors of one debtor [or non-debtor] to share on a parity
with creditors of a less solvent debtor, … substantive consolidation 'is no mere instrument of
procedural convenience … but a measure vitally affecting substantive rights to be used
sparingly.'" Union Savings Bank v. Augie/Restivo Baking Company, Ltd. (In re Augie/Restivo
Baking Company, Ltd.), 860 F.2d 515, 518 (2d Cir. 1988) (refusing to permit substantive
consolidation when consolidation would result in the enrichment of one creditor at the expense
of another), quoting Flora Mir Candy Corp. v. R.S. Dickson & Co., 432 F.2d 1060, 1062 (2d Cir.
1970) and Chemical Bank New York Trust Co. v. Kheel, 369 F.2d 845, 847 (2d Cir. 1966).

In this case, the relief at issue effectively consolidated the assets of the non-debtor
entities with the 1031 Debtors without regard for the procedural and substantive requirements for
consolidation (or partial consolidation).  In particular, to permissibly substantively consolidate
entities and their assets, courts must make specific evidentiary findings that (i) "creditors dealt
with the entities as a single economic unit and 'did not rely on their separate identity in
extending credit'… or (ii) whether the affairs [of the entities] are so entangled that consolidation
will benefit all creditors." Augie/Restivo, 860 F.2d at 518 (quoting 5 Collier on Bankruptcy §
1100.06 at 1100-33).  Substantive consolidation may not be effectuated unless there has been "a

searching review of the record, on a case-by-case basis, … [to] ensure that substantive consolidation effects its sole aim: fairness to all creditors." Federal Deposit Insurance Corporation v. Colonial Realty Company, 966 F.2d 57, 61 (2d Cir. 1992); In re 599 Consumer Electronics, Inc., 195 B.R. 244, 250 (S.D.N.Y. 1996) (remanding case to bankruptcy court for further findings when bankruptcy court denied motion to substantively consolidate debtors and it was not clear if the bankruptcy court considered one prong of the Augie/Restivo test); In re D.H. Overmyer Co., Inc., 1976 WL 168421 at * 3 (Case Nos. 73-B-1126, 73-B-1162, 73-B-1189, 73-B-1175, S.D.N.Y. March 26, 1979) ("Even if there were no objections voiced by any class of creditors, it would at the very least be necessary, as I view it, that the court take testimony and consider other proof on the question of whether or not substantive consolidation is warranted…".).

Here, it does not appear, let alone been established by findings of fact, that the requirements for substantive consolidation have been satisfied.  Cordell made loans to the Borrowers based on their financial condition and not the financial condition of the 1031 Debtors, and it has not been demonstrated in the record below that the financial affairs of the Borrowers and the 1031 Debtors "approached the level of 'hopeless() obscurity(ity)' of 'interrelationships of the group' found necessary to warrant consolidation…" Augie/Restivo, 860 F.2d at 519. However, even if the elements of substantive consolidation could be satisfied, "judicial predictions about the outcome of hypothesized litigation cannot substitute for the actual opportunity to defend that due process affords every party against whom a claim is stated." Nelson v. Adams USA, Inc., 120 S.Ct. 1579, 529 U.S. 460, 146 L.Ed.2d 530 (2000) (finding that due process was denied to the appellant principal of a corporation when, after a ruling for appellee, appellee moved to amend its third party complaint to add appellant and also

simultaneously moved to amend the judgment to include the appellant, the Supreme Court ruled that appellant was entitled to be heard to contest the issue of his liability).

In addition, the relief at issue fails as a matter of procedural due process, given the failure of the 1031 Debtors to provide notice of the motion to consolidate the assets of a non-debtor entity with the assets of a bankruptcy estate to the creditors of the non-debtor entity.  United States v. AAPC, Inc. (In re AAPC, Inc.), 277 B.R. 785, 789-90 (Bankr. D. Utah 2002) (Creditors of non-debtor entities are parties in interest to an adversary proceeding to substantively consolidate the non-debtor entities with the debtor and "[b]ecause creditors' rights may be affected, they must be given notice …[t]o proceed otherwise would deny creditors their right to due process."); Raslavich v. Ira S. Davis Storage Company, Inc. (In re Ira S. Davis, Inc.), 1993 WL 384501 at * 5 (Adv. No. 93-0530S, Bankr. E.D. Pa. Sept. 22, 1993) (Stating that a request for substantive consolidation could not proceed unless notice was provided to the creditors of the non-debtor entity sought to be consolidated with the debtor.); In re N.S. Garrott & Sons, In re Eastern Arkansas Planting Company, 48 B.R. at 18 ("[T]he procedure for achieving substantive consolidation utilized by these debtors circumvents basic due process.  Not one word concerning substantive consolidation appears in either the plan or the disclosure statement."); Boston Valuation Group, Inc. v. Hall (In re Tremont Place Realty Trust), 159 B.R. 624, 625 (Bankr. D. Mass. 1993) ("[S]ubstantive consolidation requires notice to the creditors of both entities…").  Notice must be given to creditors of non-debtor entities because their rights are affected by the outcome of the consolidation.  2 Norton Bankr. L & Prac. 3d § 21:15 ("[C]ourts have stated that, at a minimum, due to the substantive nature of the matter, notice must be provided to all debtor and nondebtor creditors and such creditors must have an opportunity to be heard.")

Accordingly, as set forth in greater detail above, the Bankruptcy Court erred in entering

the Order in effect transferring and consolidating substantially all of the assets of Okun with the 1031 Debtors without following the proper procedure of requiring either a formal motion for substantive consolidation or an adversary proceeding and is not based on the requisite factual findings necessary for a determination that consolidation is warranted.

**IV    THE BANKRUPTCY COURT ERRED BY ENTERING THE ORDER BECAUSE THERE IS A PRIOR IN TIME RESTRAINING ORDER ENTERED BY THE NEW YORK SUPREME COURT PROHIBITING TRANSFER OF THE ASSETS WHICH WERE PURPORTEDLY TRANSFERRED BY THE ORDER**

Lastly, as provide above, the Bankruptcy Court also erred when it entered the Order because the Court did not properly take the Restraining Order into account. Instead of either giving the Restraining Order effect or expressly overruling it, the Bankruptcy Court appears to have ignored the Restraining Order without providing Cordell an opportunity to be heard on the issues in question or providing for appropriate protections to Cordell, based in part upon the so-called argument that the assets at issue were already transferred prior to entry of the Restraining Order.

Notwithstanding, although Okun purportedly transferred his assets effective on the date of the Agreement, and "transfer" is defined in section 101(54) of the Bankruptcy Code to include "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with (i) property; or (ii) an interest in property..." non-bankruptcy law "determines when or if a transfer of such interests takes place." 2 Collier on Bankruptcy ¶ 101.54[1] at 101-212 (2007) (citing Frierdich v. Mottaz (In re Frierdich), 294 F.3d 864 (7th Cir. 2002)). Thus, in this case state law controls the effective date of the transfers, and to the extent that state law requires more than just an agreement to transfer assets, Okun has not, and cannot, effectuate a transfer of the assets. Here, subsequent to entry of the Order, the Trustee brought on various motions to approve the sale of some of the larger transferred assets, including, airplanes, cars,

- 25 -

helicopters, and/or yachts. The papers accompanying the motions make clear that the title in such assets remained in the name of Okun (or his designated entity) and had <u>not</u> been transferred to the 1031 Debtors or the Trustee some months after the entry of the Order. Notwithstanding, the Bankruptcy Court did not take evidence to determine whether or not the assets had in fact been transferred prior to the date of imposition of the Restraining Order by the State Supreme Court, and to the extent that its ruling was based upon the prior transfer of any such assets, the decision was in error given the lack of development of the record, coupled with the failure to give Cordell an opportunity to be heard on the issue. The result of the instant Order was to enable Okun to render himself judgment proof and favor certain creditors to the detriment of others. Thus, the Order should be reversed because it ignores the Restraining Order.

Lastly, to the extent Cordell's state court rights were modified by the Bankruptcy Court, Cordell was entitled to adequate protection as a result of its superior interest in the Property. Bankruptcy Code Section 363(e) provides:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. This subsection also applies to property that is subject to any unexpired lease of personal property (to the exclusion of such property being subject to an order to grant relief from the stay under section 362).

11 U.S.C. § 363(e).

Courts have applied the Bankruptcy Code's adequate protection requirements beyond the traditional secured party scenario, including pursuant to contracts, franchise agreements and leases, amongst other things. See <u>Larson</u>, 128 B.R. 257, 262 (Bankr. D.N.D. 1990) (debtor must provide adequate protection of equipment lessor's interests which "must not only preserve the value of the equipment itself but must preserve the remedies mandated under section 365"); <u>In re</u>

Tudor Motor Lodge Associates, Limited Partnership, 102 B.R. 936 (Bankr. D.N.J. 1989) (holding that debtor failed to satisfy its burden to show adequate protection of licensor's interest in trademarks and service marks and terminating stay to permit termination); Amoco Oil Company v. Joyner (In the Matter of Joyner), 55 B.R. 242 (Bankr. M.D. Ga. 1985) (granting relief from stay to permit termination of jobber contract).

## CONCLUSION

Cordell respectfully requests that this Court overrule the Order or remand the matter to the bankruptcy court with instructions to hold additional hearings consistent with the issues raised herein.  Cordell also requests that the Court overrule the Order because it effectively substantively consolidates the transferred entities and their assets with the 1031 Debtors' estates without requiring the procedural safeguards of a formal motion for substantive consolidation or an adversary proceeding.

Dated: June 2, 2008                            Respectfully submitted,


By:    /s/ Richard J. Bernard
       Douglas E. Spelfogel (DS 7097)
       Richard J. Bernard (RB 6371)
       Baker & Hostetler LLP
       45 Rockefeller Plaza
       New York, NY 10111
       Telephone: (212) 589-4200
       Facsimile: (212) 589-4201

       Attorneys for Appellants
       Cordell Funding, LLLP and Cordell
       Consultants, Inc., Money Purchase Plan,
       a Qualified Retirement Plan Trust