UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CORDELL FUNDING, LLP and CORDELL CONSULTANTS, INC., MONEY PURCHASE PLAN, A QUALIFIED RETIREMENT PLAN TRUST, | : : : : : : |
| Appellants, | : : |
| - vs. - | : : |
| THE 1031 TAX GROUP, LLC; 1031 ADVANCE 132 LLC; 1031 ADVANCE, INC.; 1031 TG OAK HARBOR LLC; AEC EXCHANGE COMPANY, LLC; ATLANTIC EXCHANGE COMPANY, INC.; ATLANTIC EXCHANGE COMPANY, LLC; EXCHANGE MANAGEMENT, LLC; INVESTMENT EXCHANGE GROUP, LLC; NATIONAL EXCHANGE ACCOMODATOR, LLC; NATIONAL EXCHANGE SERVICES QI, LTD.; NATIONAL INTERMEDIARY, LTD; NRC 1031, LLC; REAL ESTATE EXCHANGE SERVICES, INC.; RUTHERFORD INVESTMENT LLC; SECURITY 1031 SERVICES, LLC; SHAMROCK HOLDINGS GROUP, LLC; and OFFICIAL COMMITTEE OF UNSECURED CREDITORS, | : : : : : : : : : : : : : : : : : : : |
| Appellees. | : : |

Case No. 07-cv-11342 (NRB)

**APPELLEES' BRIEF**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF ISSUES PRESENTED............................................................................ 4

STANDARD OF REVIEW ................................................................................................... 5

STATEMENT OF THE CASE.............................................................................................. 5

STATEMENT OF FACTS ................................................................................................... 6

A.    Background of the Bankruptcy Case................................................................... 6

B.    The Asset Transfer Agreement............................................................................ 7

C.    The Opinion and Order Approving The Agreement ......................................... 10

D.    Transfers Effected Pursuant To The Agreement .............................................. 12

ARGUMENT...................................................................................................................... 13

I.     CORDELL'S APPEAL IS BARRED BY
       THE DOCTRINE OF EQUITABLE MOOTNESS ........................................... 13

II.    CORDELL HAS NO STANDING
       TO APPEAL THE ORDER................................................................................ 16

III.   THE ORDER SHOULD BE AFFIRMED.......................................................... 19

       A.    Cordell Was Not Entitled To Notice...................................................... 19

       B.    The Bankruptcy Court Did Not Abuse its Discretion in
             Granting the Rule 9019 Motion ............................................................. 22

       C.    There Was No Substantive Consolidation Of Non-Debtor
             Assets With The 1031 Debtors' Estates................................................. 23

       D.    The Restraining Order Issued By The New York Supreme
             Court Did Not Preclude Approval Of The Agreement ........................... 24

CONCLUSION................................................................................................................... 26

# TABLE OF AUTHORITIES

## CASES

*In re Adelphia Communications Corp.*,
    222 Fed. Appx. 7, 2006 WL 3826700 (2d Cir. Dec. 26, 2006) ........................................14, 15

*In re Agway, Inc. Employees; 401(K) Thrift Investment Plan v. Magnuson*,
    409 F. Supp. 2d 136 (N.D.N.Y. 2005)..................................................................................22

*Allstate Insurance Co., v. Hughes*,
    174 B.R. 884 (S.D.N.Y. 1994) ............................................................................................15

*In re Cosmopolitan Aviation Corp.*,
    763 F.2d 507, 513 (2d Cir.), cert. denied, 474 U.S. 1032 (1985)
    *(abrogated on other grounds by Canfield v. Van Atta Buick/GMC Truck, Inc,*
    127 F.3d 248 (2d Cir. 1997)) ..............................................................................................17

*In re Chateaugay*, 10 F.3d 944 (2d Cir. 1993) ............................................................................15

*In re Chateaugay Corp.*, 988 F.2d 322 (2d Cir. 1993) .................................................................14

*In re Delta Airlines, Inc.*, 374 B.R. 516 (S.D.N.Y. 2007) ....................................................5, 14, 15

*In re Dinova* 212 B.R. 437 (2d Cir. BAP 1997) ...........................................................................20

*Drabkin v. Midland Ross Corporation (In re Automobile-Train Corp., Inc.)*,
    810 F.2d 270 (D.C. Cir. 1987).............................................................................................20

*In re East 44th Realty, LLC*,
    2008 WL. 2171036 (S.D.N.Y. Jan. 23, 2008) .......................................................................5

*Federal Deposit Insurance Co. v. Colonial Realty Co.*,
    966 F.2d 57 (2d Cir. 1991) .................................................................................................23

*In re Iridium Opertaing, LLC*,
    478 F.3d 452 (2d Cir. 2007) ........................................................................................10, 22

*Kane v. Johns-Manville Corp.*,
    843 F.2d 636 (2d Cir. 1988) ...............................................................................................17

*Kavowras v. The New York Times Co., et al.*,
    328 F.3d 50 (2d Cir. 2003) ...................................................................................................8

*Mai Sa v. Doe*,
    406 F.3d 155 (2d Cir. 2005) .................................................................................................8

*Memphis Light, Gas and Water v. Craft* 98 S. Ct. 1553 (1978) ...................................................20

*In re Masters Mates & Pilots Pension Planand IRAP Litigation*
    957 F.2d 1020 (2d Cir. 1992) ...................................................................................22

*Mullane v. Central Hanover Bank & Trust Co.,*
    339 U.S. 306, 70 S.Ct. 652, 94 L.Ed 865 (1950)....................................................20

*Perry v. McDonald,*
    280 F.3d 159 (2d Cir. 2001) ....................................................................................20

*In re Nutri Bevco, Inc.,*
    117 B.R. 771 (Bankr. S.D.N.Y. 1990).....................................................................20

*In re PC Liquidation Corp.,*
    2008 WL 199457 (E.D.N.Y. Jan. 17, 2008) ......................................................14, 15

*In re Refco Inc.,*
    505 F.3d 109 (2d Cir. 2007) .............................................................................16, 17, 18

*In re Salant Corp.,*
    176 B.R. 131 (S.D.N.Y. 1994) ...............................................................................16

*Southern Blvd. Inc. v. Martin Paint Stores,*
    207 B.R. 57 (S.D.N.Y. 1997) ...................................................................................18

*In re Stanwich Financial Services Corporation,*
    377 B.R. 432 (Bankr. D. Conn. 2007)......................................................................22

## CODE

Bankruptcy Code Section 1109(b) ................................................................................16

Bankruptcy Code Section 363(e)..................................................................................25

Gerard A. McHale, Jr., solely in his capacity as Chapter 11 trustee (the "Trustee") for the above-captioned debtors-appellees (collectively, the "1031 Debtors"), respectfully submits that the Order of the United States Bankruptcy Court, Southern District of New York (Glenn, J.) (the "Bankruptcy Court"), entered on October 26, 2007 (the "Order"), approving the Agreement of Transfer Interests and Assets for the Benefit of Bankruptcy Estates (the "Agreement") should be affirmed.

## PRELIMINARY STATEMENT

After inexplicably waiting more than eight months to pursue this appeal, the Appellants now seek to overturn an order approving the Agreement, entered on October 26, 2007, under which Edward H. Okun and Simone Bolani transferred to the 1031 Debtors' estates all of their assets (excluding two vehicles and two residences), including, in pertinent part, equity interests in entities that owned real property subject to security interests asserted by Cordell Funding LLLP ("Cordell Funding") and/or Cordell Consultants, Inc. Money Purchase Plan, a Qualified Retirement Plan Trust ("Cordell Retirement," together with Cordell Funding, "Cordell" or the "Appellants").

Over the past eight months, the Trustee, the Bankruptcy Court and numerous third parties (including Cordell) have taken action in reliance upon the Order and the transfers effected under it. For example, numerous assets transferred into the estate have been irrevocably transferred to third parties for millions of dollars. Although those sales were approved by the Court upon notice to Cordell, Cordell never sought to stay the Order pending this appeal. Indeed, Cordell admittedly is not a creditor of the 1031 Debtors; deliberately chose not to file a proof of claim prior to the bar date; and thus has no direct financial or legal interest in the outcome of the 1031 cases. This appeal is therefore equitably moot and should be dismissed.

Cordell made no effort to obtain a stay of the Order, and thus has permitted circumstances to change so comprehensively that to unwind the sales and other transactions that have been effected as a consequence of the implementation of the Agreement would be both inequitable and impossible.

Even if the appeal could survive the equitable mootness doctrine, Cordell has no standing to appeal. To have standing to appeal, the party must be a "person aggrieved" by the outcome of a particular proceeding. To qualify as "aggrieved," the order at issue must adversely affect the appellant's pecuniary interest. In this case, Cordell's pecuniary interests -- its security interest in real property that was *not* transferred to the 1031 Debtors' Estates and any claims against such property or the owners of such property -- are intact and have been actively pursued by Cordell since the Order was entered (a fact conveniently not mentioned by Cordell). Thus, Cordell has no standing to appeal the Order.

As to the merits, Cordell's arguments are based on its conflation of two distinct legal concepts -- that of a transfer of assets, as opposed to a transfer of the equity interest in entities that, in turn, own those assets. As it impacts Cordell, the Agreement merely transfers Okun's equity interest in non-debtor entities that borrowed funds from Cordell, but it did not transfer the assets of such entities, including assets in which Cordell asserts a security interest. Further, Cordell fails to advise the Court that under the Agreement, all assets and interests were conveyed *subject to any existing liens and encumbrances*. Cordell continues to assert and vigorously pursue remedies regarding the assets owned by the entities, ownership of which was transferred under the Agreement and the Order.

For these reasons and others, Cordell was not entitled to notice of the hearing on the Order. Cordell was not a "party in interest" and had no direct financial or legal stake in the

motion to approve the Agreement because it is not a creditor of the 1031 Debtors, and its security interests are in real property (or mortgages encumbering real property) that were unaffected by the Agreement. In all events, Cordell had actual notice of the Agreement and the motion for its approval long before the Order was entered, and, although Cordell elected not to file an objection, it appeared (via telephone) in Court before Judge Glenn on October 26, 2007, the day the Court rendered its decision and entered the Order.

Nor can it establish that the Bankruptcy Court abused its discretion in approving the Agreement. The Court held a full day hearing, considered several objections (including those filed by third parties), and considered all applicable criteria for a motion under Fed. R. Bankr. P. 9019.

Cordell's claim that the Order effected a "*de facto*" substantive consolidation of non-debtor assets with the 1031 Debtor's Estates is utterly baseless. No substantive consolidation -- *de facto* or otherwise --was effected, or even attempted, by virtue of the Order, a fact the Bankruptcy Court expressly noted during its hearing on the Motion to approve the Agreement. Finally, contrary to Cordell's contention, the Bankruptcy Court was provided with and acknowledged the existence of the *ex parte* restraining order Cordell surreptitiously obtained in New York State Supreme Court on the eve of hearing of the Order, and nonetheless approved the Agreement.

In short, either the appeal should be dismissed because it is equitably moot or because Cordell has no standing to bring it, or the Bankruptcy Court's Order should be affirmed. In either case, there is no legal or equitable basis for undoing what has taken months to achieve for the benefit of the 1031 Debtors, at substantial expense to them, and with no consequential damage to Cordell.

## STATEMENT OF ISSUES PRESENTED

(1)    Whether Cordell's appeal should be dismissed as equitably moot because there has been a comprehensive change in circumstances resulting from the fact that numerous transfers have taken place and substantial monies have been expended and decisions made pursuant to and in reliance on the Agreement, and Cordell has never sought to stay the Order, despite the fact that it was on notice of such transfers and expenditures.

(2)    Whether Cordell lacks standing to appeal the Order because approval of the Agreement did not adversely affect Cordell's pecuniary interest.

(3)    Whether the Bankruptcy Court erred by entering the Order in the absence of service on Cordell of the motion to approve the Agreement notwithstanding the facts that Cordell (i) is not a "party in interest"; (ii) is not a creditor of the 1031 Debtors and had no direct legal or financial stake in the outcome of the motion to approve the Agreement; (iii) had actual knowledge of the Agreement and the motion to approve it; and (iv) appeared by telephone at the adjourned hearing date of the Motion to approve the Agreement.

(4)    Whether the Bankruptcy Court abused its discretion by approving the Agreement pursuant to applicable legal principles governing compromises and settlements under Fed. R. Bankr. P. 9019.

(5)    Whether the Order effected a substantive consolidation of assets of non-debtor entities with the 1031 Debtors' Estates.

(6)    Whether the Bankruptcy Court abused its discretion by approving the Agreement after acknowledging the entry of an *ex parte* restraining order by the New York Supreme Court that post-dated the effective date of the Agreement.

## STANDARD OF REVIEW

Appellants erroneously contend that a *de novo* standard of review applies to all aspects of its appeal. In fact, two of the enumerated questions presented, Appellants' questions 2 and 4 which inquire as to whether the Bankruptcy Court properly approved the Agreement, are governed by an abuse of discretion standard. It is well established that the review of a Bankruptcy Court's order approving a Rule 9019 motion, as is at issue here, is subject to an abuse of discretion standard of review. *In re East 44th Realty, LLC,* 2008 WL 217103 *6 (S.D.N.Y. Jan. 23, 2008); *In re Delta Airlines, Inc.,* 374 B.R. 516, 522 (S.D.N.Y. 2007). Unless the bankruptcy court's decision approving a settlement is "manifestly erroneous and a clear abuse of discretion," it should not be overturned. *In re East 44th Realty,* 2008 WL 217103 *9 (citations and internal quotations omitted). According to this court, "[a] bankruptcy court will have abused it discretion if no reasonable person could agree with the decision to approve the settlement." *Id.* at 2008 WL 217103 *6 (citations and internal quotations omitted). When the Court "canvass[es] the issues, apprise[s] [itself] . . . of the key issues, and consider[s] the relevant factors" and determines that the settlement does not fall "below the lowest point in the range of reasonableness," then the Bankruptcy Court does not abuse its discretion. *Id.* at 2008 WL 217103 *9.

## STATEMENT OF THE CASE

Cordell appeals the Order of the Bankruptcy Court, entered on October 26, 2007, approving the Agreement, under which Edward H. Okun ("Okun") and his wife transferred assets to the 1031 Debtors' Estates. After sitting on its hands for eight months, never once seeking a stay of the Order, in the face of numerous transfers and other acts undertaken by authority of the Agreement and Order, Cordell now seeks to have this Court reverse the Order, nullify the Agreement and "unscramble the egg" by somehow undoing fully consummated transactions.

Cordell's appeal must be denied and the Order affirmed because (1) Cordell's appeal is equitably moot; (2) Cordell has no standing to bring the appeal; (3) no due process has been violated, because Cordell was not entitled to service of the motion papers; (4) the Bankruptcy Court did not abuse its discretion in approving the Agreement; (5) no substantive consolidation was effected by the Order; and (6) the Bankruptcy Court did not abuse its discretion in approving the Agreement, notwithstanding an *ex parte* restraining order obtained by Cordell from the New York State Supreme Court.

## STATEMENT OF FACTS

### A.    Background of the Bankruptcy Case

These bankruptcy cases arise from a massive fraud perpetrated by Okun and others, who unlawfully took in excess of $130 million held by qualified intermediary entities ("QI") of which Okun was the sole owner or member (*i.e.,* the 1031 Debtors). These funds had been entrusted to the QIs and were to be used to complete like-kind exchanges under section 1031 of the Internal Revenue Code. Instead, Okun and his cohorts utilized those funds to acquire lavish personal assets for Okun and poured much of that money into one or more entities in which he generally owned, directly or indirectly, a 100% equity interest. These entities, in turn, used the money, at least in part, for the acquisition and/or operation of real property that Okun leveraged to obtain additional tens of millions of dollars in secured loans.

Having been drained of funds, the 1031 Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on May 14, 2007, with the exception of debtor AEC Exchange Company LLC, which filed its petition on June 11, 2007 (the "1031 Cases"). The 1031 Cases are being jointly administered.

On October 11, 2007, the Agreement was executed, and a motion for its approval was filed on Monday, October 16, 2007. (Joint Motion for Approval of Agreement to Transfer

Interests and Assets for the Benefit of Bankruptcy Estates ("Motion"), Appellants R. 1). On October 23, 2007, a full day hearing was held by the Bankruptcy Court on the Motion. On October 25, 2007, the Court appointed the Trustee as chapter 11 trustee for the 1031 Debtors' estates. The following day, by Order dated October 26, 2007, the Court approved the Agreement, first by reading its decision into the hearing record, and then by entering an Order Granting Motion to Approve Agreement to Transfer Interests and Assets for the Benefit of Bankruptcy Estates ("Order"). (Appellants R. 2; Transcript of Hearing Held on October 26, 2007 Re: Joint Motion for Approval of Agreement to Transfer Interest and Assets for the Benefit of Bankruptcy Estates (the "10/26/07 Hearing"), Appellants R. 5).

On November 15, 2007 and on November 30, 2007, the Trustee, under authority of the Agreement, filed voluntary petitions under chapter 11 of the Bankruptcy Code for the IPofA Debtors, which comprise several (but not all) of the entities whose ownership was transferred to the 1031 Estates (the "Okun Entities").[1] (Voluntary Petitions (Chapter 11) – IPofA entities (the "IPofA Petitions"), R. 21-32). The IPofA Cases are being jointly administered.

### B.    The Asset Transfer Agreement

Pursuant to the terms of the Agreement, Okun and his wife conveyed all of their direct and indirect right, title and interest in certain real property, and tangible and intangible property owned by them (the "Assets").[2] (Affidavit of James Feltman in Support of Joint Motion

---

[1] The Debtors in the IPofA Cases are Investment Properties of America, LLC, IPofA 5201 Lender, LLC, IPofA Columbus Works LeaseCo, LLC, IPofA Shreveport Industrial Park, LLC, IPofA West 86th Street Lease Co, LLC 100 Corporate Drive, LLC, Crossroads Miami Logistics Center, LLC, CW Acquisition, LLC, Simone Condo I, LLC, Simone Condo II, LLC, Columbus Works Virginia Trust and Parkway Virginia Trust (collectively, the "IPofA Debtors").

[2] The Assets include (but are not limited to) Okun's direct ownership interest in various entities, including Crossroads Transportation and Logistics, Inc.; Investment Properties of America LLC ("IPofA"); the other IPofA Debtors, Okun Air LLC; Okun Air 3, LLC; Okun Air 4, LLC; Okun Holdings, Inc.; FMFG Ownership, Inc.; Okun Water LLC; and Simone Bentley, LLC. Also included in the Assets are Okun's indirect ownership interest in Simone Salon LLC; Montauk Financial; IPofA Salina Central Mall, LLC;

for Approval of Agreement to Transfer Interest and Assets for the Benefit of Bankruptcy Estates (the "Feltman Affidavit"), R. 3, Ex. 1 ("Agreement")). The conveyance expressly excluded (i) two automobiles retained for Okun's personal use; (ii) two residences; and (iii) certain personal effects. (Agreement, ¶ 2). With respect to real property owned by the Okun Entities, only Okun's ownership interest of the entities was conveyed to the 1031 Debtors, *not the real property itself.* The Assets, moreover, were conveyed subject to "any existing liens and encumbrances." (Agreement, ¶ 5.3).

Thus, in the case of the real properties in which Cordell claims a security interest, the properties themselves were not conveyed to the 1031 Debtors under the Agreement. Rather, the ownership of the entities (including IPofA Debtors and other IPofA entities) holding the real property merely changed from Okun to the Trustee. Thus, for example, the $2.5 million loan from Cordell Retirement, which was made to one of the IPofA Debtors, IPofA 5201 Lender LLC, is secured by IPofA's mortgage on real property located at 5201 W. 86th Street in Indianapolis, Indiana. That property is an asset of the IPofA 5021 Lender LLC estate, not the 1031 Debtors' estate. Cordell sought and obtained relief from the automatic stay with respect to this real property.[3] The $3 million loan from Cordell Retirement to Okun was secured by liens on three residences: 10548 Coppergate Drive in Carmel, Indiana; unit 1808 at 901 Brickell in Miami, Florida; and unit 3404 at 901 Brickell in Miami, Florida. As Cordell concedes, it took

---

IPofA West Oaks Mall, LP; IPofA Racing, LLC.; and IPofA W. 86th Street LeaseCo, LLC, all of which are directly owned by IPofA. (Agreement, pp. 9-10)

[3] The Court may take judicial notice of the Docket of the IPofA Cases, which is not part of the record on appeal, and which reflects events which occurred subsequent to entry of the Order. *See Mai Sa v. Doe,* 406 F.3d 155, 158 (2d Cir. 2005) (Court may take judicial notice of its files as well as district court files); *Kavowras v. The New York Times Co., et al.,* 328 F.3d 50, 57 (2d Cir. 2003) ("Judicial notice may be taken of public filings.") A copy of the docket and documents filed with the Bankruptcy Court in Bankruptcy Case No. 07-13621, of which Appellees' respectively request the Court take judicial notice, is attached hereto as Exhibit 1. The request for granting Cordell relief from the automatic stay appears on Exhibit 1 as Entry # 29. The Stipulations granting stay relief appear on Exhibit 1 as Entry ## 107 and 151, respectively.

the deeds to these three residences in August 2007 (Appellant's Brief (the "App. Br."), p. 7), two months prior to the effective date of the Agreement, and has since sold those properties. Therefore, they were not assets transferred under the Agreement either. The $7 million loan from Cordell Retirement to Okun is secured by a third mortgage on Okun's residence at 394 S. Hibiscus Drive in Miami, Florida (which property was expressly excluded from the Agreement) and an interest in Okun's membership interest in non-debtor IPofA Salina Central Mall Member, LLC, the owner of a mall property in Salina, Kansas, which real property was also not transferred under the Agreement.

The $26.5 million loan from Cordell Funding to Sam Trustee Services, LLC, as trustee for other IPofA Debtors, Columbus Works Virginia Trust and Parkway Virginia Trust, is secured by the mortgages on two commercial properties (1) a note and mortgage in the face amount of $27 million held by Columbus Works Virginia Trust and secured by a lien on property in Columbus, Ohio and (2) a note and mortgage in the face amount of $2.5 million held by Parkway Virginia Trust and secured by a lien on real property located at 4201 Millersville Road in Indianapolis, Indiana. Neither of these mortgages nor real properties were transferred under the Agreement. The $13.4 million loan from Cordell Funding to another of the IPofA Debtors, IPofA Shreveport Industrial Park, LLC, is secured by an approximately one million square foot warehouse facility sitting on nearly 200 acres of property owned by IPofA Shreveport. Similarly, this real property was not transferred under the Agreement.

Moreover, the Agreement has in no way prevented or hindered Cordell from pursuing its claims against or protecting its interests in these properties. In fact, Cordell has vigorously pursued remedies regarding these real properties and mortgages, by among other conduct, moving to dismiss the IPofA Debtors' bankruptcy cases and/or to lift the automatic stay

in effect in those cases; entering into a stipulation pursuant to which Cordell was granted, *inter alia*, relief from the automatic stay, enabling Cordell to enforce its rights as a secured creditor against the IPofA properties; and obtaining approximately $675,000 in adequate protection payments during the period November 9, 2007 to date.

### C.    The Opinion and Order Approving The Agreement

On October 23, 2007, the Court held an evidentiary hearing on the Motion and heard objections from representatives of numerous parties, including several third parties. (Transcript of Hearing Held on October 23, 2007 Re: Joint Motion for Approval of Agreement to transfer Interest and Assets for the Benefit of Bankruptcy Estates, etc. (the "10/23/07 Hearing"), Appellants R. 3). The Court adjourned the hearing until October 26, 2007, without deciding the Motion. On October 26, 2007, the Court read its bench decision on the Motion and approved the Agreement (10/26/07 Hearing, Appellants R. 5, pp. 33-42).[4]  After noting that the Trustee, who was appointed the day before, wished to proceed with the Agreement, the Court first confirmed that the assets transferred by the Agreement were transferred on October 11, 2007, the date Okun executed the Agreement. The Court further found that the relief sought by the Motion "was authorized by sections 363(b) and 105(a) of the Bankruptcy Code . . . [and that the] motion is properly brought pursuant to Rule 9019 of the Federal Rule of Bankruptcy Procedure." (10/26/07 Hearing, Appellants R. 5, pp. 36-37). The Court explained its rationale for this decision, applying the standards governing a motion to approve the settlement.[5]

The Court found that the first two factors for Rule 9019 approval -- (i) the balance between the potential litigation's likely success and the settlement's future benefits and (ii) the

---

[4] Cordell's counsel noted its appearance by telephone prior to the Court's rendering its decision and upon invitation by the Court to be heard. (10/26/07 Hearing, Appellants R. 5, pg. 5)

[5] These standards are set forth in *In re Iridium Operating LLC*, 478 F.3d 452, 465 (2d Cir. 2007).

chances that the potential litigation will be complex and protracted -- were satisfied because the Agreement "strikes the appropriate balance." According to the Court, the Agreement substantially increases the likelihood of a meaningful recovery by the Debtors while eliminating the "significant risks and obstacles" posed by having to fund litigation necessary to establish ownership of nondebtor property. The settlement further "eliminates the possibility of an unfavorable outcome of litigation to the estate and the risk that all of the assets in question would be exhausted or grabbed by other Okun creditors by the time any remedy could be obtained by the trustee." (10/26/07 Hearing, Appellants R. 5, p. 40).

With respect to the third factor -- whether the settlement is in the best interest of creditors -- the Court concluded that it "represents the best opportunity for creditors to receive a reasonable recovery within a reasonable period of time." As to the fourth factor -- to what extent other parties in interest support the settlement -- the Court, while noting that certain parties opposed the Agreement, overruled these objections, concluding that delaying the decision posed too great a risk to the 1031 Debtors' ability to realize some recovery. Finally, the Court held that counsel for the parties who had appeared in the matter were "competent and experienced" and that the "settlement was negotiated in good faith and at arms length by all parties." (10/26/07 Hearing, Appellants R. 5, p. 41). Accordingly, the Court found that the factors "support the finding that [the] settlement is fair and equitable and in the best interest of the creditors," approved the Agreement, and expressly overruled all objections to it. (10/26/07 Hearing, Appellants R. 5, pp. 41-42).

The Order was entered on October 26, 2007 (Order, Appellants R. 2) and provided, among other items, that the "[c]onveyance of the Assets for the benefit of the estates as set forth in the Agreement is in the best interests of the creditors of the Debtors' estates" and that

"[d]ue and sufficient notice of the hearing to consider the Agreement was provided to parties-in-interest." (Order, Appellants R. 2, ¶¶ 11, 12)

### D.    Transfers Effected Pursuant To The Agreement

In reliance on the Agreement and the Order, the Trustee has expended substantial amounts of time and effort, at great expense to the 1031 Estates, in order to locate, take possession of, secure, analyze the value of, and attempt to monetize the Assets.  Since the entry of the Order, millions of dollars worth of property have been transferred in reliance on the Order, and upon proper motions, duly noticed to Cordell (and numerous others).  These transactions include, but are not limited to, the sale of the "Christian Cove" Property (Order Granting Motion to Sell Christian Cove Property and Granting Related Relief, R. 14); the sale of a helicopter (Order Granting Motion Authorizing the Sale of a Certain Helicopter, R. 15); the sale of a Gulfstream Jet (Docket through 12/7/07 (the "Docket"), R. 1, Entry #897); the sale of a Yacht (Docket, R. 1, Entry #953); the sale of a Lear Jet (Docket, R. 1, Entry #987); and other sales of motor vehicles, boats and watercrafts.

At no time did Cordell ever seek to stay the enforcement of the Order or to stay the sale or transfer of any such Assets.  Indeed, on January 16, 2008, the Trustee filed a complaint and a Preliminary Injunction Motion requesting that the Court find Okun in contempt for failing to transfer certain assets to the 1031 Debtors' estates and to compel Okun to comply with the Agreement.  Okun thereafter filed a motion to vacate or withdraw the Agreement on January 25, 2008.  The Court ultimately denied Okun's motion and granted the Trustee's motion, compelling Okun to comply fully with the Agreement.  Cordell never sought to intervene or

otherwise participate in any of this litigation, but, instead, sat quietly on the sidelines as the Court, again, validated the Agreement.[6]

In addition to Assets being transferred into, and then out of, the 1031 Debtors' estates, the Agreement gave the Trustee control over the Okun Entities. (Agreement, ¶¶ 2, 5.1). Based on this authority, the Trustee filed voluntary petitions for the IPofA Debtors, which cases have been proceeding in due course. (IPofA Petitions, R. 21-32; Exhibit 1 hereto). In addition, the Trustee has been in control of other non-debtor IPofA entities, and has owned or operated commercial properties of these entities for over seven months. These include the Salina Mall in Salina Kansas; the JC Penney property in Houston Texas; and the Corporate Drive condominiums in Norwalk, Connecticut. With these properties and others, the Trustee has employed management companies, employees, contractors and vendors, expending funds on their operation, upkeep, security, and insurance -- all in reliance on the Trustee's control over the entities which is derived from the Order that Cordell now seeks to nullify.[7]

Thus, the Order has given rise to a complicated series of interwoven transactions on which dozens -- if not hundreds -- of individuals and entities have relied in good faith over the course of the past eight months.

## ARGUMENT

## I.

## CORDELL'S APPEAL IS BARRED BY
## THE DOCTRINE OF EQUITABLE MOOTNESS

Under the law of this Circuit, "[a]n appeal should . . . be dismissed as moot when, even though effective relief could conceivably be fashioned, implementation of that relief would

---

[6] A copy of the Order dated February 13, 2008 is attached hereto as Exhibit 2.

[7] *See* Exhibit 1, Entry ## 22, 51, 53, 57 and Declaration of Kevin W. Murphy (Entry # 65) at ¶¶ 7, 11 and 19. The Murphy Declaration is attached hereto as Exhibit 3.

be inequitable." *In re Chateaugay Corp.*, 988 F.2d 322, 325 (2d Cir. 1993). As stated by the Second Circuit, "a dismissal is appropriate when the appellant has made no effort to obtain a stay and has permitted such a comprehensive change of circumstances to occur as to render it inequitable for the appellate court to reach the merits of the appeal." *Id.* (internal quotations and citations omitted). *See also In re Adelphia Communications Corp.*, 222 Fed. Appx. 7, 2006 WL 3826700 *1 (2d Cir. Dec. 26, 2006) ("Appellants ask this court to give them the benefit of the doubt on the issue of equitable mootness so that we might reach the merits of this appeal. . . . We disagree. The relief requested by appellants would be inequitable as a consequence of their failure to seek a stay, which created comprehensively changed circumstances.")

In *In re PC Liquidation Corp.*, 2008 WL 199457 *5 (E.D.N.Y. Jan. 17, 2008), the Court set forth "the five circumstances that must exist in order for a bankruptcy transaction *not* to be equitably moot when there has been a comprehensive change in circumstances." These circumstances are: (1) the Court can still order effective relief; (2) such relief will not affect the reemergence of the debtor as a revitalized corporate entity; (3) the relief will not unravel intricate transactions so as to "knock the props out from under the authorization for every transaction that has taken place" and "create an unmanageable, uncontrollable situation for the Bankruptcy Court"; (4) the "parties who would be adversely affected by the modification have notice of the appeal and the opportunity to participate in the proceedings;" and (5) the appellant has "pursued with diligence all available remedies to obtain a stay of execution of the objectionable order…if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from." *Id.*[8] Unless all five factors are met, an appeal is equitably moot. *Id.*

---

[8] In delineating these factors, the Court cites to *In re Chateaugay*, 10 F.3d 944, 953 (2d Cir. 1993), which involved the application of the doctrine to a reorganization plan that had been substantially consummated, but notes that the courts in this Circuit have applied the same factors in the context of a comprehensive change of circumstances. *See In re Delta Airlines*, 374 B.R. 516, 523 (S.D.N.Y. 2007); *Allstate Ins. Co.*,

In *PC Liquidation*, the Court held that an appeal from two orders approving certain settlements was equitably moot because the appellant's failure to obtain a stay of the orders had "resulted in a comprehensive change in circumstances." 2008 WL 199457 at *5, citing to *In re Adelphia Communications Corp.*, 222 Fed. Appx. 7 (2d Cir. 2006) and *In re Delta Air Lines*, 374 B.R. 516 (S.D.N.Y. 2007). Applying the *Chateaugay II* factors to appellant's claim, the Court concluded that there was no effective relief available if the Orders were vacated because funds were paid, releases of claims were obtained, monies were disbursed, and there was no realistic possibility that the transaction could be undone. Pointing to the undisputed fact that the appellant did not seek a stay of the execution of the orders, the Court found that it would be inequitable to now reverse them. According to the Court, "since [appellant] was required to establish all five *Chateaugay II* factors to demonstrate that his appeals are not equitably moot in light of the comprehensive change of circumstances resulting from the consummation of the Settlement Agreements and his failure to seek a stay thereof, which he failed to do, his appeal must be dismissed as equitably moot." *In re PC Liquidation*, 2008 WL 199457 *7.

In this case, as in *PC Liquidation*, there has been a comprehensive change of circumstances as a result of the Order. As detailed above, millions of dollars have been paid by third parties for Assets conveyed pursuant to the Agreement. The IPofA Cases were filed and numerous agreements and stipulations have been entered into by the Trustee based on his authority under the Agreement, and on which the Court and many third parties have relied. Indeed, Cordell itself has benefited by entering into two stipulations in the IPofA cases which resolved its own motion for relief from the automatic stay. (*See* p. 8 n. 3, *supra*)

---

*v. Hughes*, 174 B.R. 884 (S.D.N.Y. 1994). The five factors are referred to by the Court in *In re PC Liquidation* and herein as the "*Chateaugay II* factors."

Further, some of the assets transferred were Okun's ownership interests in non-debtor entities. The Trustee has been operating these entities outside the confines of the Bankruptcy Court, making dozens, if not hundreds, of decisions on which third parties unconnected with the bankruptcy proceedings have relied. (*See* pp. 12-13 and n. 7, *supra*) There is, thus, no effective relief available because any effort to "unravel" the transactions will create "an unmanageable, uncontrollable situation for the Bankruptcy Court." Assets sold to third parties would have to be retrieved, to the extent such third parties have not yet sold such Assets. Operating expenses and funds disbursed to numerous third parties all would somehow have to be recovered which, as a practical and legal matter, is impossible. The IPofA Debtors' Bankruptcies themselves -- filed 7 months ago -- would have to be "unwound," since the Trustee filed voluntary petitions for these entities under the authority vested in him by the Agreement. (Agreement, ¶ 2(c))

Cordell never sought to stay the Order, which has resulted in a comprehensive change of circumstances for which no effective relief is available if the Order is overruled.[9] The appeal must be dismissed as equitably moot.

## II.

## CORDELL HAS NO STANDING
## TO APPEAL THE ORDER

In order to have standing to appeal, Cordell must establish that it is a "party in interest" under Bankruptcy Code Section 1109(b), and that it is a "person aggrieved by that order." *See In re Refco Inc.,* 505 F.3d 109, (2d Cir. 2007) ("party-in-interest standing is a necessary precondition for [there to be] appellate standing); *In re Salant Corp.,* 176 B.R. 131,

---

[9] These circumstances alone are sufficient to render Cordell's appeal equitably moot under application of the *Chateaugay II* factors. In addition, since third parties, including transferees of Okun's interest in non-debtor entities, were not provided with notice of the appeal, the fourth *Chateaugay II* factor was likewise not satisfied.

133 (S.D.N.Y. 1994) (only a person aggrieved by a Bankruptcy Court order has standing to appeal it). The term "person aggrieved" means a person or entity who has been "directly and adversely affected pecuniarily by [the] challenged [bankruptcy] order." *In re Cosmopolitan Aviation Corp.,* 763 F.2d 507, 513 (2d Cir.), *cert. denied,* 474 U.S. 1032 (1985) (*abrogated on other grounds by Canfield v. Van Atta Buick/GMC Truck, Inc,* 127 F.3d 248 (2d Cir. 1997)). The soundness of the rationale for so limiting appellate standing is irrefutable: "[I]f appellate standing is not limited, bankruptcy litigation will become mired in endless appeals brought by the myriad of parties who are indirectly affected by every bankruptcy court order." *Kane v. Johns-Manville Corp.,* 843 F.2d 636, 642 (2d Cir. 1988).

In this case, Cordell has no standing to appeal the Order approving the Agreement because it is neither a "party in interest" nor an "aggrieved person," as the Courts in this Circuit have defined those terms.

Cordell is not a "party in interest" because it has no legal right or claim that it can enforce against the 1031 Debtors' estates. By Cordell's own admission, Cordell is not a creditor of the 1031 Debtors' estates (App. Br., pp. 1, 14), and it did not file a proof of claim. Nor does it have any direct claim or interest in the Assets that were transferred pursuant to the Agreement (*See* pp. 7-9, *supra*). Rather, it is a lender to entities now under the Trustee's ownership, rather than under Okun's, with all of Cordell's rights and interests in such entities and their assets expressly left intact under the Agreement. Accordingly, Cordell does not even meet the "pre-condition" to have standing to appeal the Order. *See, e.g., In re Refco Inc., supra* (investors in defendant company in adversary proceeding commenced by Creditors' Committee that was settled by having defendant pay money into the debtors' estate were not "parties in interest" with standing to object to the settlement on the grounds of fraud; "A real party in interest is the one

who . . . has the legal right which is sought to be enforced or is the party entitled to bring suit." Because investors could not assert a claim against the debtor's estate, "they are not a party in interest within the meaning of the Bankruptcy Code.") (citations and internal quotations omitted). *Accord, Southern Blvd. Inc. v. Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y. 1997) (Commercial tenant in same building where debtor had executory lease was not a "party in interest" and did not have standing to object to debtor's assumption of its lease and assignment of its rights thereunder to business in direct competition with tenant. Tenant's status "is analogous to that of a creditor of a debtor's creditor . . . . [I]t has no legal interest, claim or right that it asserts against [the debtor].")

Moreover, Cordell has no standing to bring this appeal because the Order has no direct, adverse impact on Cordell's pecuniary interests. Throughout its papers, Cordell makes conclusory and misleading assertions that the Agreement adversely impacts Cordell, but does not and cannot support these assertions. Thus, for example, Cordell concludes -- without support -- that the transfer of the Assets for the benefit of 1031 Debtors' estates "was to the exclusion of other creditors" (App. Br., p. 10); that the Order "appears to preclude the claims of creditors whose collateral was transferred pursuant to the Agreement" (App. Br., p. 13); that Cordell was "left without a mechanism to assert its rights" (App. Br., p. 14); and that the Order appears to preclude . . . third party creditors from exercising certain of their rights" (App. Br., p. 21.) However, the Agreement on its face transferred Okun's assets including his ownership interest of IPofA entities "subject to any existing liens." (Agreement, ¶ 5.3)    That the Agreement did not strip Cordell of its rights in IPofA assets is made clear by Cordell's continuing assertion of its rights, through, *inter alia*, automatic stay relief, and the demand for and receipt of adequate protection payments. As explained above, the properties in which Cordell claims a security interest were

*not transferred* to the 1031 Debtors' estates: only the ownership interest of the entities which, in turn, owned the assets, was transferred. Cordell's argument is akin to arguing that the liens held by secured lenders to public companies are divested or disturbed by trades of the stock of those companies. In short, the absence of any direct and adverse pecuniary affect of the Order on Cordell is made abundantly clear by its manifest ability to protect its interests.

Accordingly, because Cordell is not a party in interest or an aggrieved party, it has no standing to pursue this appeal.

## III.

## THE ORDER SHOULD BE AFFIRMED

As demonstrated above, Cordell's appeal should be dismissed as equitably moot or, in the alternative, because Cordell has no standing to bring this appeal. However, even if the appeal is not dismissed, it should be denied, on the merits, and the Order affirmed, for the reasons set forth below.

### A.    Cordell Was Not Entitled To Notice

Cordell contends that it was deprived of procedural and substantive due process because it was not served with the Motion nor "named as a party for purposes of asking the bankruptcy court to overrule the Restraining Order entered by the New York State Supreme Court" on October 22, 2007, one day prior to the hearing on the Motion.

Cordell was not entitled to notice because it is *not* a "party in interest." *See* discussion *supra* at 17-18 and Bankruptcy Rule 2002 (a)(3). Further, Bankruptcy Rule 9019 requires notice for approval of Rule 9019 motions, such as the Motion, only to be given to "creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct." Cordell plainly does not fit within any of those categories.

The linchpin of Cordell's due process argument is its conclusory statement that the approval of the Agreement "directly impacts . . . [Cordell's] rights" and puts it "in jeopardy of serious loss." But Cordell fails to articulate how it is so impacted. (App. Br., p. 16-17). To the contrary, the Agreement expressly transferred the assets *subject to all liens and encumbrances*, and Cordell has vigorously sought to protect its interests since the entry of the Order.

Cordell is not a creditor of the 1031 Debtors, rendering the caselaw cited by Cordell readily distinguishable.[10] For the same reason, Cordell's reliance on the circumstances concerning another third party, Bayard, are misplaced. Unlike Cordell, Bayard is a creditor of the 1031 Debtors. As such, by definition, it was entitled to notice of the motion. Its status as a creditor likewise justified the use of an adversary proceeding to address an injunction obtained months before by Bayard.

Even more telling is the fact that Cordell was on actual notice of the Agreement and the Motion for its approval, appeared at the hearing by telephone on the day the Court announced its decision, and was invited by the Court to be heard on the Agreement even though it had not filed an objection. (10/26/07 Hearing, Appellants R. 5, p. 5) Since these cases were filed, Cordell has been in regular contact with the 1031 Debtors and the Creditors Committee, including actively negotiating a Loan Modification Agreement with them in August 2007. (App.

---

[10] The two cases cited by Cordell concern the obligation to provide notice to a creditor of the debtor. *See Drabkin v. Midland Ross Corporation (In re Auto-Train Corp., Inc.)*, 810 F.2d 270, 279 (D.C. Cir. 1987); *In re Nutri Bevco, Inc.*, 117 B.R. 771, 778 (Bankr. S.D.N.Y. 1990).

The other cases cited by Cordell in support of its notice argument also are inapplicable. *Mullane v. Central Hanover Bank & Trust Co., Perry v. McDonald,* and *Memphis Light, Gas and Water v. Craft* (App. Br., pp. 16-17) are not bankruptcy cases and stand for the general and non-controversial proposition that to satisfy due process, notice is necessary to give "interested parties" . . . an opportunity to present their objections. (App. Br., p. 16). The bankruptcy cases cited involve notice to parties whose rights will be "directly impact[ed]." *In re Altman* (appellant which claims ownership interest of a painting was entitled to notice of a hearing to transfer painting to the debtor's estate); *In re Dinova* (chapter 7 debtor whose case was dismissed on *ex parte* motion of trustee was entitled to service of motion papers); *In re Texaco* (at issue was notice to lessor of asset). In all of these cases, unlike Cordell, the plaintiffs or appellants were parties in interest, and were directly and adversely impacted by the Orders at issue.

Br., p. 9) Moreover, Cordell's counsel admitted in his affidavit sworn to on October 19, 2007 in conjunction with Cordell's *ex parte* motion in New York Supreme Court that Cordell (i) had a copy of the Agreement, and (ii) was aware of the Motion scheduled to be heard on October 23, 2007. Although Cordell failed to provide the New York State Court with a copy of the Agreement and failed to inform the Court that a hearing for its approval was scheduled for two business days hence, Cordell's attorney acknowledged that "Okun has entered into the Agreement to Transfer Interests and Assets for the Benefit of Bankruptcy Estates ("Asset Transfer Agreement");" he then proceeded to misrepresent the Agreement by contending, among other things, that it resulted in the "transfer of the very assets that constitute the [Cordell's] collateral." (Affirmation of Douglas E. Spelfogel, Esq. in Support of *Ex Parte* Motion for Attachment and Appointment of Receiver (the "Spelfogel Affirmation"), Appellants R. 9, ¶¶ 46 and 47). Mr. Spelfogel admitted that Cordell was following the docket in the 1031 Cases and was aware of the Motion to approve the Agreement, stating that "Motions to appoint a trustee are currently pending in the bankruptcy cases," and that "four other motions are currently pending in the bankruptcy case of The 1031 Tax Group with respect to the transfer of Okun's personal assets subject to Plaintiff's claims and interests." (Spelfogel Affirmation, Appellants R. 9, footnotes 4 and 5; Docket, R. 1, p. 89-99, Entry # 736).

Thus, while Cordell cries that its due process rights were violated (even though it was not entitled to notice), it fails to explain why it did not file an objection notwithstanding its actual notice of the Agreement and the Motion, but, rather, surreptitiously sought to collaterally attack the Agreement by seeking (based on misinformation) an *ex parte* order from state court on the eve of the hearing. Thus, not only is Cordell's claim of lack of notice demonstrably false,

but, based on its actual knowledge of the Agreement and the Motion, Cordell sought to collaterally attack it.

Cordell is not a creditor of the 1031 Debtors, was not a party in interest, and was not entitled to be served with notice of the Motion. As such, its rights to due process were not violated. That it had actual notice of the hearing and elected not to object further underscores the meritlessness of Cordell's lack of "notice" arguments.

**B.    The Bankruptcy Court Did Not Abuse its Discretion in Granting the Rule 9019 Motion**

In approving the Order, the Court properly applied the criteria under Rule 9019 for approving the Agreement. *See In re Iridium Operating, LLC,* 478 F.3d 452 (2d Cir. 2007) (setting forth the seven factors to be applied in evaluating whether a settlement under Rule 9019 is fair and equitable). As set forth *supra,* at 10-11, the Court methodically evaluated the Agreement pursuant to the standards governing motions to approve settlements brought under Rule 9019 and determined that the Agreement was "fair and equitable and in the best interest of creditors." (10/26/07 Hearing, Appellants R. 5, p. 41; Order, Appellants R. 2, ¶11). Moreover, contrary to Cordell's assertion that the Court "did not consider the rights of any creditors with claims against the transferred entities and assets" (App. Br., p. 21), the Court expressly considered and overruled objections by third parties who were not parties to the Agreement. (10/26/07 Hearing, Appellants R. 5, p. 34).[11]

---

[11] The cases cited by Cordell to support its contention that the Order should be reversed because the Court did not sufficiently consider the "rights of third parties" (App. Br., p. 21) are wholly distinguishable from the instant matter. Two of these cases -- *In re Masters Mates v. Pilot Pension Plan and IRAP Litigation* and *Agway, Inc. Employees' 401(i) Thrift Investment Plan v. Magnuson* -- involve settlements under ERISA and have no relevance whatsoever to the propriety of the analysis of settlements undertaken by the courts for purposes of Rule 9019. *In re Stanwich* is also irrelevant. There, the bankruptcy court held that the direct consequences of a settlement dismissing an adversary proceeding upon the plaintiff had to be considered in determining the reasonableness of the settlement. In contrast, in the case at hand, the Agreement has no impact on Cordell, as explained above.

The Bankruptcy Court did not abuse its discretion in approving the Agreement, and the Order should thus be affirmed.

### C.    There Was No Substantive Consolidation Of Non-Debtor Assets With The 1031 Debtors' Estates

The parties readily agree that there has never been any motion or other request for substantive consolidation in these cases, nor has there been any substantive consolidation of the 1031 Debtors estates or of the 1031 Debtors' with the IPofA Debtors' estates. Cordell's argument is based on the unsupported and unsupportable contention that the Court somehow stumbled into a "*de facto*" substantive consolidation of "non-debtor entities' assets" with the 1031 Debtors' estates.[12]

This did not occur. In fact, the issue of substantive consolidation was raised at the October 23, 2007 hearing on the Motion, and the Court expressly rejected the suggestion. The Court stated that since there was not going to be any immediate distribution to creditors, there was no need to proceed by way of substantive consolidation. (10/23/07 Hearing, Appellants R. 3, p. 225)

Further, Cordell has not explained how a so-called "*de facto* substantive consolidation" occurred by virtue of the Agreement. Substantive consolidation "usually results not only in the pooling of assets and liabilities of two or more entities, but also in satisfying liabilities from the resultant common fund; eliminating inter-entity claims; and combining the creditors of the two entities for purposes of voting on reorganization plans." *Federal Deposit Ins. Co. v. Colonial Realty Co.,* 966 F.2d 57, 58-9 (2d Cir. 1991) (internal quotations and citations omitted). The Order neither resulted in, nor even mentions, the pooling of assets and liabilities of non-debtor entities or their assets with those of the 1031 Debtors; nor did it create a

---

[12] Cordell fails to consistently identify what entity was purportedly substantively consolidated with the 1031 Debtors' estates. At certain points Cordell refers to the "assets of the non-debtor entities" (presumably, certain IPofA Entities) being consolidated with the 1031 Debtors (*See e.g.,* App. Br., p. 22), but at other points Cordell states that "all of the assets of Okun" were consolidated with the 1031 Debtors. (App. Br., p. 25).

"common fund" from which Okun's creditors are entitled to recover. This is purely a figment of Cordell's imagination. With regard to non-debtor entities, only the ownership of those entities, not their assets, were transferred to the 1031 Estates. The assets remain outside the Bankruptcy Court, except for assets of the IPofA Debtors which are assets of the IPofA Debtors' estates, not the 1031 Debtors' estates. Similarly, no "common fund" exists from which a creditor of the IPofA Debtors could, by virtue of the Agreement, satisfy its claims.

In short, no substantive consolidation occurred, as the Bankruptcy Court explicitly made clear on the record.

### D.    The Restraining Order Issued By The New York Supreme Court Did Not Preclude Approval Of The Agreement

Cordell argues that the Bankruptcy Court "appears to have ignored" the restraining order entered by the New York Supreme Court on October 22, 2007, eleven days *after* the effective date of the Agreement. Cordell also complains, without citing to any applicable law, that Okun "has not, and cannot, effectuate a transfer of the assets" because "state law controls the effective date of the transfers," and that the *ex parte* temporary restraining order should be treated as an interest in the property that would entitle it to "adequate protection." These arguments are utterly devoid of factual or legal support.

First, the Bankruptcy Court was well aware of the Restraining Order prior to entering the Order approving the Agreement. The Court was advised on October 22, 2007 that an *ex parte* temporary restraining order had been obtained in New York State Court. At the hearing held on October 23, 2007, the Bankruptcy Court was again told that the New York Supreme Court had entered an injunction and was provided with a copy of the restraining order. The Court affirmatively stated that it did not "intend to enjoin that proceeding" and continued with the hearing on the Agreement. (10/23/07 Hearing, Appellants R. 3, p. 33).

Second, the effective date of the Agreement was October 11, 2007, and the Bankruptcy Court expressly noted that "Okun transferred the assets covered by the Agreement" on that date. (10/26/07 Hearing, Appellants R. 5, p. 33). Thus, the Assets were transferred prior to Cordell obtaining a Restraining Order from the State Court, and thus could not have violated that subsequent order. Cordell tries to avoid this fact by contending (without authority) that state law would not recognize the transfer until title had passed. To the contrary, a contractually specified effective date is perfectly enforceable, and the Bankruptcy Court indeed gave effect to this contractual provision.

Cordell's "adequate protection" argument (like its other arguments) borders on the frivolous. Bankruptcy Code Section 363(e) states on its face that only parties with "an interest in property used, sold or leased" by the trustee may be entitled to adequate protection. An *ex parte* temporary restraining order does not create an "interest in property," and Cordell provides no authority for its claim that it does.[13] Indeed, even if Cordell had fully litigated the state court action to judgment, the judgment still would not constitute an "interest in property." Such an interest only arises if and when the judgment holder satisfies the specific statutory criteria to create its lien, such as, in the case of real property, by filing the judgment in a county clerk's office. *See, e.g.* CPLR §§ 5202 and 5203.

Fully aware of the Agreement and Motion, and rather than filing an objection, Cordell launched a collateral attack by racing into New York Supreme Court, *ex parte*, on Friday, October 19, 2007, for a restraining order (which as demonstrated above, creates no interest in property), without providing the state court with the Agreement, misrepresenting its contents, and failing to advise the Supreme Court that the Bankruptcy Court would be hearing

---

[13] None of the cases cited by Cordell involves a restraining order or anything comparable; to the contrary, each involves a holder of a specific contractual interest in property. (App. Br., pp. 26-27)

the Motion on Tuesday, October 23. Cordell did not attend the hearing on October 23, 2007, participated by telephone on October 26, 2007, then sat on its hands for seven months while dozens of transactions were consummated in reliance on the Agreement -- and now tries to use the existence of that *ex parte* Order to unwind the entire Agreement.

These shenanigans cannot support Cordell's claim that the Court abused its discretion by approving the October 11, 2007 Agreement notwithstanding the October 22, 2007 restraining order, and should not be countenanced by this Court.

## CONCLUSION

For the foregoing reasons, Cordell's appeal should be dismissed or, in the alternative, the Order of the Bankruptcy Court approving the Agreement should be affirmed.

Dated: July 3, 2008

Respectfully submitted,

GOLENBOCK EISEMAN ASSOR BELL
& PESKOE LLP

By:____/s/Jacqueline G. Veit_____
     Jonathan L. Flaxer (JF 7096)
     Jacqueline G. Veit (JV 2935)

437 Madison Avenue
New York, New York 10022
(212) 907-7300

- and -

JOHNSON, POPE, BOKOR, RUPPEL, AND
BURNS, LLP
Michael C. Markham, Esq. (FBN-0768560)
Angelina E. Lim, Esq. (AL-8845)
911 Chestnut Street
Clearwater, FL 33756
(727) 461-1818

*Co-Counsel for Gerard A. McHale, Jr., As Chapter*
*11 Trustee to the Debtors-Appellees*

# Exhibit 1

instal, Lead, RELATED, MDisCs, FeeDueAP, PENAP

# U.S. Bankruptcy Court
## Southern District of New York (Manhattan)
## Bankruptcy Petition #: 07-13621-mg

*Assigned to:* Judge Martin Glenn
Chapter 11
Voluntary
Asset

*Date Filed:* 11/15/2007

**Debtor**
**Investment Properties of America, LLC**
Gerard A. McHale, Jr., PA, Trustee
c/o Golenbock Eiseman Assor Bell Peskoe
437 Madison Ave., 35th Floor
New York, NY 10022
Tax id: 20-2290451

represented by **Andrea Fischer**
Olshan Grundman Frome
Rosenzweig
& Wolosky, LLP
Park Avenue Tower
65 East 55th Street
New York, NY 10022
(212) 451 2300
Fax : (212) 451 2222
Email:
afischer@olshanlaw.com

**Jonathan L. Flaxer**
Golenbock, Eiseman, Assor &
Bell
437 Madison Avenue
New York, NY 10022
(212) 907-7300
Fax : (212) 754-0330
Email:
jflaxer@golenbock.com

**Trustee**
**Gerard A. McHale, Jr.,** *Chapter 11 Trustee of*
*1031 Debtors*

represented by **Andrea Fischer**
(See above for address)

**Jonathan L. Flaxer**
(See above for address)

**U.S. Trustee**
**United States Trustee**
33 Whitehall Street
21st Floor
New York, NY 10004
(212) 510-0500

**Creditor Committee**
**Official Committee of Unsecured Creditors of**

**The 1031 Tax Group, LLC, et al.**

| Filing Date | # | Docket Text |
|---|---|---|
| 11/15/2007 | 1 | Voluntary Petition (Chapter 11). Order for Relief Entered.*Investment Properties of America, LLC* Filed by Jonathan L. Flaxer of Golenbock, Eiseman, Assor & Bell on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 11/15/2007) |
| 11/15/2007 | 2 | Motion to Shorten Time *Motion of Debtors and Debtors in Possession for the Entry of an Order (a) Scheduling an Expedited Hearing on First Day Motions and Applications Filed by the Debtors and (B) Approving the Form and Manner of Notice Thereof* filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Attachments: # 1 Exhibit A: Proposed Order# 2 Exhibit B: Rule 9011 Certification) (Flaxer, Jonathan) (Entered: 11/15/2007) |
| 11/15/2007 | 3 | Motion to Authorize *Motion of the Debtors for Entry of an Order Authorizing (I) Payment of Pre-Petition Wages, Salaries and Employee Benefits; (II) Reimbursement of Employee Business Expenses; and (III) Payment of Other Employee-Related Amounts* filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Attachments: # 1 Exhibit A: Proposed Order) (Flaxer, Jonathan) (Entered: 11/15/2007) |
| 11/15/2007 | 4 | Motion to Authorize *Motion of the Debtors for Entry of an Order Authorizing the Debtors to (A) Mail Initial Notices and (B) Prepare a Consolidated List of Creditors (without claim amounts) in Lieu of a Matrix* filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Attachments: # 1 Exhibit A: Proposed Order) (Flaxer, Jonathan) (Entered: 11/15/2007) |
| 11/15/2007 | 5 | Motion to Authorize *Motion of Debtors for Entry of an Order Under 11 U.S.C. Sections 105, 363, 1107 and 1108 Authorizing (I) Maintenance of Existing Bank Accounts, (II) Continued Use of Existing Business Forms and (III) Continued Use of Existing Cash Management System* filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Attachments: # 1 Exhibit A: List of Existing Accounts# 2 Exhibit B: Proposed Order) (Flaxer, Jonathan) (Entered: 11/15/2007) |
| 11/15/2007 | 6 | Motion to Extend Deadline to File Schedules or Provide Required Information *Motion for Order Extending Time to File Schedule of Assets and Liabilities and Statement of Financial Affairs* filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Attachments: # 1 Exhibit A: Proposed Order) (Flaxer, Jonathan) (Entered: 11/15/2007) |

| 11/15/2007 | 7 | Motion for Joint Administration *Motion for Order Under Fed. R. Bankr. P. 1015(b) Authorizing Joint Administration* filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Attachments: # 1 Exhibit A: Proposed Order) (Flaxer, Jonathan) (Entered: 11/15/2007) |
|---|---|---|
| 11/15/2007 | 8 | Declaration *of Gerard A. McHale, Jr. Pursuant to Local Bankruptcy Rule 1007-2* filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Attachments: # 1 Exhibit A: Debtor's Schedules# 2 Exhibit B: Debtor's Secured Creditors List) (Flaxer, Jonathan) (Entered: 11/15/2007) |
| 11/16/2007 | | Judge Martin Glenn added to the case. (Porter, Minnie). (Entered: 11/16/2007) |
| 11/16/2007 | | Receipt of Voluntary Petition (Chapter 11)(07-13621) [misc,824] (1039.00) Filing Fee. Receipt number 174268. Fee amount 1039.00. (Villegas) (Entered: 11/16/2007) |
| 11/19/2007 | 9 | Affidavit of Service (related document(s)4, 7, 5, 2) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 11/19/2007) |
| 11/19/2007 | 10 | Order Signed on 11/19/2007 Granting Motion to Authorize the Debtors to Mail Initial Notices and Prepare a Consolidated List of Creditors (Without Claim Amounts) in Lieu of a Matrix. (Related Doc # 4) (Tetzlaff, Deanna) (Entered: 11/19/2007) |
| 11/19/2007 | 11 | Order Signed on 11/19/2007 Granting Motion To Extend Deadline to File Schedules of Assets and Liabilities and Statement of Financial Affairs. (Related Doc # 6) (Tetzlaff, Deanna) (Entered: 11/19/2007) |
| 11/19/2007 | 12 | Order signed on 11/19/2007 granting motion to authorize payment of pre-petition wages, salaries and employee benefits, and; reimbursement of employee business expenses; and payment of other employee-related amounts. Hearing regarding objections, if any, will be held before the Honorable Martin Glenn on 11/29/2007 at 10 a.m. in Courtroom 621. (Related Doc # 3) (Tetzlaff, Deanna) (Entered: 11/19/2007) |
| 11/19/2007 | 13 | Order Signed on 11/19/2007 Granting Motion to Authorize Maintenance of Pre-Petition Cash Management Systems, Continued use of Existing Business Forms, and Granting Related Relief. (Related Doc # 5) (Tetzlaff, Deanna) (Entered: 11/19/2007) |
| 11/20/2007 | 14 | Order signed on 11/19/2007 Granting Motion for Joint Administration of Case Numbers 07-13621 Through 07-13630. All |

| | | |
|---|---|---|
| | | Docket Entries Shall be made in Lead Case Number 07-13621. (Related Doc # 7) (Tetzlaff, Deanna) (Entered: 11/20/2007) |
| 11/20/2007 | | Case Related to 1031 Tax Group, Case No. 07-11448 (MG) (White, Greg) (Entered: 11/20/2007) |
| 11/20/2007 | 15 | Notice of Appearance *Request for Service of Papers and Reservation of Rights* filed by Jeffrey Cohen on behalf of Richard Morley, WCK, LLC, Samuel Guirguis, John T Dugan, Joyce E. Bradley, James S Bradley, Donald L Barnes, Margaret J Alvarez, Sergio Alvarez. (Cohen, Jeffrey) (Entered: 11/20/2007) |
| 11/21/2007 | 16 | Notice of Appearance *under Bankrutpcy Rule 9010(b) Combined with Request for Copies Pursuant to Bankruptcy Rules 2002(a) and (b)* filed by David H. Botter on behalf of GCCFC 2006-GG7 Westheimer Mall, LLC. (Botter, David) (Entered: 11/21/2007) |
| 11/21/2007 | 17 | Notice of Hearing *to Consider Final Approval of Order Authorizing (I) Payment of Pre-Petition Wages, Salaries and Employee Benefits; (II) Reimbursement of Employee Business Expenses; and (III) Payment of Other Employee-Related Amounts* (related document(s)3, 12) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with hearing to be held on 11/29/2007 at 10:00 AM at Courtroom TBA (MG) Objections due by 11/26/2007, (Attachments: # 1 Exhibit 1: Exhibit to Attached Signed Order)(Flaxer, Jonathan) (Entered: 11/21/2007) |
| 11/21/2007 | 18 | Affidavit of Service (related document(s)3, 17) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 11/21/2007) |
| 11/27/2007 | 19 | Transcript *of Hearing Held on 11/19/07 at 2:01 PM* filed by Veritext LLC. (Richards, Beverly) (Entered: 11/29/2007) |
| 12/03/2007 | 20 | Motion for Joint Administration *Notice of Motion and Joint Motion of IPofA Debtors and Trust Debtors for Order Directing Joint Administration* filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Attachments: # 1 Exhibit A: Proposed Order) (Flaxer, Jonathan) (Entered: 12/03/2007) |
| 12/03/2007 | 21 | Affidavit of Service (related document(s)20) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 12/03/2007) |
| 12/04/2007 | 22 | Final Order Signed on 12/4/2007 Authorizing (i) payment of pre-petition wages, salaries and employee benefits, and (ii) reimbursement of employee business expenses, and (iii) Payment of |

| | | |
|---|---|---|
| | | Other Employee-Related Amounts. (related document(s)3) (Tetzlaff, Deanna) (Entered: 12/04/?007) |
| 12/07/2007 | 23 | Application to Employ Golenbock Eiseman Assor Bell & Peskoe LLP and Johnson Pope Bokor Ruppell & Burns, LLP as Co-Counsel for the Debtors filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Attachments: # 1 Exhibit A - Proposed Order re: Golenbock Eiseman Assor Bell & Peskoe LLP# 2 Exhibit B - Proposed Order re: Johnson Pope Bokor Ruppell & Burns, LLP# 3 Exhibit C - Declaration of Jonathan L. Flaxer# 4 Exhibit D - Declaration of Michael C. Markham) (Flaxer, Jonathan) (Entered: 12/07/2007) |
| 12/07/2007 | 24 | Order signed on 12/7/2007 Granting Application to Employ Golenbock Eiseman Assor Bell & Peskoe LLP as co-counsel for the Debtors as of November 15, 2007. (Related Doc # 23) (Tetzlaff, Deanna) (Entered: 12/07/2007) |
| 12/07/2007 | 25 | Order Signed on 12/7/2007 Authorizing the Retention of Johnson Pope Bokor Ruppell &Burns LLP as Co-counsel for Debtors as of November 15, 2007. (related document(s)23) (Tetzlaff, Deanna) (Entered: 12/07/2007) |
| 12/13/2007 | 26 | Order signed on 12/13/2007 Directing Joint Administration of Affiliate Cases. **Lead Case Number is 07-13621 (MG)** (Related Doc # 20) (Lopez, Mary) (Entered: 12/13/2007) |
| 12/14/2007 | 27 | Application to Employ Cook, Yancey, King & Galloway, P.C. as Special Lousiana Counsel to the Debtor *Application for Entry of an Order Pursuant to 11 U.S.C. Sections 327(a) and 328(a) and Rule 2014 of the Federal Rules of Bankruptcy Procedure Authorizing the Retention of Cook, Yancey, King & Galloway, P.C., as Special Lousiana Counsel to the Debtor as of November 6, 2007 (for IPofA Shreveport Industrial Park, LLC)* filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Attachments: # 1 Exhibit A: Proposed Order# 2 Exhibit B: Declaration of J. Benjamin Warren, Jr. in Support of Application) (Flaxer, Jonathan) (Entered: 12/14/2007) |
| 12/20/2007 | 28 | Order Signed on 12/20/2007 Granting Application to Authorize the Retention of Cook, Yancey, King & Golloway, P.C., as Special Louisiana Counsel to the Debtor as of November 6, 2007. (Related Doc # 27) (Tetzlaff, Deanna) (Entered: 12/20/2007) |
| 12/22/2007 | 29 | Motion for Relief from Stay *Dismiss Chapter 11 Cases, Directing Adequate Protection, and Related Relief* filed by Douglas E. Spelfogel on behalf of Cordell Funding LLLP and Cordell Consultants Inc.. with hearing to be held on 1/4/2008 at 02:00 PM at |

| | | |
|---|---|---|
| | | Courtroom 623 (BRL) Responses due by 12/31/2007, (Attachments: # 1 Exhibit Affidavit in Support) (Spelfogel, Douglas) (Entered: 12/22/2007) |
| 12/22/2007 | | Receipt of Motion for Relief from Stay (fee)(07-13621-mg) [motion,185] ( 150.00) Filing Fee. Receipt number 4569915. Fee amount 150.00. (U.S. Treasury) (Entered: 12/22/2007) |
| 12/22/2007 | 30 | Notice of Hearing *Motion to Dismiss Chapter 11 Cases, Terminate Automatic Stay, Direct Adequate Protection and Related Relief* filed by Douglas E. Spelfogel on behalf of Cordell Funding LLLP and Cordell Consultants Inc.. with hearing to be held on 1/4/2008 at 02:00 PM at Courtroom 623 (BRL) Objections due by 12/31/2007, (Attachments: # 1 Exhibit proposed order)(Spelfogel, Douglas) (Entered: 12/22/2007) |
| 12/23/2007 | 31 | Amended Notice of Hearing *To Dismiss Chapter 11 Cases, Terminate Automatic Stay, Directing Adequate Protection, and Related Relief* filed by Douglas E. Spelfogel on behalf of Cordell Funding LLLP and Cordell Consultants Inc.. with hearing to be held on 1/4/2008 at 02:00 PM at Courtroom 623 (BRL) Objections due by 12/31/2007, (Attachments: # 1 Exhibit proposed order)(Spelfogel, Douglas) (Entered: 12/23/2007) |
| 12/26/2007 | 33 | Letter *to Judge Glenn requesting an adjournment of Motion for Relief from the Automatic Stay, scheduled for January 4, 2008* filed by Jonathan L. Flaxer. (Ebanks, Liza) (Entered: 12/27/2007) |
| 12/27/2007 | 32 | Order Signed on 12/27/2007 Striking Motion for Failure to Give Required Notice for Motion to Dismiss Chapter 11 Cases. (related document(s)29) (Tetzlaff, Deanna) (Entered: 12/27/2007) |
| 12/27/2007 | 34 | Motion to Dismiss Case *Exhibits to Motion of Cordell Funding, LLLP and Cordell Consultants Inc., Money Purchase Plan, a Qualified Retirement Plan Trust for Entry of an Order to (A) Dismissing Chapter 11 Cases; (B) Modifying Automatic Stay; (C) Granting Adequate Protection and (D) Related Relief Exhibit A* (related document(s)29) filed by Douglas E. Spelfogel on behalf of Cordell Funding LLLP and Cordell Consultants Inc.. (Attachments: # 1 Exhibit B# 2 Exhibit C# 3 Exhibit D# 4 Exhibit E# 5 Exhibit F# 6 Exhibit G# 7 Exhibit H# 8 Exhibit I# 9 Exhibit J) (Spelfogel, Douglas) (Entered: 12/27/2007) |
| 12/27/2007 | 35 | Certificate of Service (related document(s)31, 29, 34) filed by Douglas E. Spelfogel on behalf of Cordell Funding LLLP and Cordell Consultants Inc.. (Spelfogel, Douglas) (Entered: 12/27/2007) |
| 01/02/2008 | 36 | Affidavit *Declaration of Elyssa S. Kates in Support of Scheduling* |

| | | |
|---|---|---|
| | | *Order* (related document(s)29, 34) filed by Douglas E. Spelfogel on behalf of Cordell Funding LLLP and Cordell Consultants Inc.. (Attachments: # 1 Exhibit A)(Spelfogel, Douglas) (Entered: 01/02/2008) |
| 01/03/2008 | 37 | So Ordered Stipulation signed on 1/3/2008 Extending Time to File Schedule of Assets and Liabilities and Statement of Financial Affairs. Schedule due by 2/7/2008. (Tetzlaff, Deanna) (Entered: 01/03/2008) |
| 01/03/2008 | 38 | Certificate of Service (related document(s)36) filed by Richard J. Bernard on behalf of Cordell Funding LLLP and Cordell Consultants Inc.. (Bernard, Richard) (Entered: 01/03/2008) |
| 01/03/2008 | 39 | Affidavit *Verified Statement of Cohen & Associates, P.C., Pursuant to Bankruptcy Rule 2019* filed by Jeffrey Cohen on behalf of Margaret J Alvarez, Sergio Alvarez, Donald L Barnes, James S Bradley, Joyce E. Bradley, John T Dugan, Samuel Guirguis, Richard Morley. (Attachments: # 1 Exhibit Exhibit A to Verified Statement of Cohen & Associates, P.C.)(Cohen, Jeffrey) (Entered: 01/03/2008) |
| 01/04/2008 | 40 | Application for Pro Hac Vice Admission filed by Randall D. LaTour on behalf of Randall D. LaTour. (Attachments: # 1 Proposed Order) (LaTour, Randall) (Entered: 01/04/2008) |
| 01/04/2008 | | Receipt of Application for Pro Hac Vice Admission(07-13621-mg) [motion,122] ( 25.00) Filing Fee. Receipt number 4581198. Fee amount 25.00. (U.S. Treasury) (Entered: 01/04/2008) |
| 01/04/2008 | 41 | So Ordered Stipulation Signed on 1/4/2008 Deeming Motion Refiled and Scheduling Hearing and Related Briefing on Cordell's Motion for Entry of an Order (A) Dismissing Chapter 11 Cases; (B) Modifying Automatic Stay; (C) Granting Adequate Protection and (D) Related Relief. (related document(s)29) (Tetzlaff, Deanna) (Entered: 01/04/2008) |
| 01/07/2008 | 42 | Stipulation and Order signed on 1/7/2008 Deeming Motion Refiled and Scheduling Hearing and Related Briefing on Cordell's Motion for Entry of an Order (A) Dismissing Chapter 11 Cases; (B) Modifying Automatic Stay; (C) Granting Adequate Protection and (D) Related Relief; with hearing to be held on 1/25/2008 at 10:00 AM at Courtroom 623 (BRL). (Lopez, Mary) (Entered: 01/07/2008) |
| 01/07/2008 | 43 | Application for Pro Hac Vice Admission filed by Jesse Cook-Dubin on behalf of 6200 East Broad Street. Filing fee collected, receipt #174697. (Porter, Minnie) (Entered: 01/08/2008) |
| 01/10/2008 | 44 | Order signed on 1/9/2008 Granting Application for Pro Hac Vice for |

| | | Jesse Cook-Dubin. (Related Doc # 43) (Lopez, Mary) (Entered: 01/10/2008) |
|---|---|---|
| 01/10/2008 | 45 | Order signed on 1/9/2008 Granting Application for Pro Hac Vice for Randall D. LaTour. (Related Doc # 40) (Lopez, Mary) (Entered: 01/10/2008) |
| 01/11/2008 | 46 | Notice of Appearance *and Request for Service of Papers* filed by Allen G. Kadish on behalf of Official Committee of Unsecured Creditors of The 1031 Tax Group, LLC, et al.. (Attachments: # 1 Affidavit of Service)(Kadish, Allen) (Entered: 01/11/2008) |
| 01/14/2008 | 47 | Matrix *Amended Matrix* filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 01/14/2008) |
| 01/16/2008 | 48 | Motion to Dismiss Case *Exhibit J to Motion of Cordell Funding, LLLP and Cordell Consultants Inc., Money Purchase Plan, a Qualified Retirement Plan Trust for Entry of an Order to (A) Dismissing Chapter 11 Cases; (B) Modifying Automatic Stay; (C) Granting Adequate Protection and (D) Related Relief* (related document(s)31, 29, 34) filed by Douglas E. Spelfogel on behalf of Cordell Funding LLLP and Cordell Consultants Inc.. (Spelfogel, Douglas) (Entered: 01/16/2008) |
| 01/18/2008 | 49 | Notice of Appearance filed by Randall D. LaTour on behalf of Randall D. LaTour. (LaTour, Randall) (Entered: 01/18/2008) |
| 01/18/2008 | 50 | Affidavit *of Multiple Representation in Case by Vorys, Sater, Seymour & Pease LLP* filed by Randall D. LaTour on behalf of Randall D. LaTour. (LaTour, Randall) (Entered: 01/18/2008) |
| 01/18/2008 | 51 | Order Signed on 1/18/2008 Authorizing the Retention of Deloitte Financial Advisory Services LLP as Financial Advisor to the IPofA Debtors as of November 15, 2007. (Nulty, Lynda) (Entered: 01/18/2008) |
| 01/22/2008 | 52 | Application to Employ Deloitte Financial Advisory Services LLP as Financial Advisor *to the Debtors as of Novemeber 15, 2007* filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Attachments: # 1 Exhibit A: Proposed Order# 2 Exhibit B: Declaration of John P. Sordillo) (Flaxer, Jonathan) (Entered: 01/22/2008) |
| 01/22/2008 | 53 | Application to Employ Colonial Realty as Real Estate Broker *to 100 Corporate Drive, LLC* filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Attachments: # 1 Exhibit A: |

| | | |
|---|---|---|
| | | Proposed Order# 2 Exhibit B: Declaration of David S. Gorbach# 3 Exhibit C: Listing Agreement) (Flaxer, Jonathan) (Entered: 01/22/2008) |
| 01/23/2008 | 54 | So Ordered Stipulation Signed on 1/23/2008 Adjourning Hearing of and Related Briefing on Motion of Cordell Funding, LLP and Cordell Consultants Inc., Money Purchase Plan, a Qualified Retirement Trust for Entry of Order (A) Dismissing Chapter 11 Cases; (B) Modifying Automatic Stay; (C) Granting Adequate Protection; and (D) Related Relief. Hearing to be Held on February 8, 2008 at 10:00 AM in Courtroom 623. (related document(s)42) (Tetzlaff, Deanna) (Entered: 01/23/2008) |
| 01/23/2008 | 55 | Application for FRBP 2004 Examination *Motion for an Order Directing Production of Documents Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure* filed by Randall D. LaTour on behalf of IPofAColumbus Works 1, LLC, et al.. with hearing to be held on 2/8/2008 (check with court for location) Responses due by 2/5/2008, (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3# 4 Certificate of Service) (LaTour, Randall) (Entered: 01/23/2008) |
| 01/23/2008 | 56 | Notice of Presentment *of Order Directing Production of Documents Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure* (related document(s)55) filed by Randall D. LaTour on behalf of IPofAColumbus Works 1, LLC, et al.. with hearing to be held on 2/8/2008 (check with court for location) Objections due by 2/5/2008, (LaTour, Randall) (Entered: 01/23/2008) |
| 01/24/2008 | 57 | Motion to Allow*Motion for Allowance and Payment of Administrative Expense of $948,318.42 Plus $12,864.28 Per Diem from February 1, 2008 Until Payment, for Rent and Property Taxes* filed by Randall D. LaTour on behalf of IPofAColumbus Works 1, LLC, et al.. with hearing to be held on 2/26/2008 at 10:00 AM at Courtroom TBA (MG) Objections due by 2/21/2008, (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3# 4 Notice) (LaTour, Randall) (Entered: 01/24/2008) |
| 01/25/2008 | 58 | Order Signed on 1/25/2008 Granting Application to Retain Colonial Realty as Real Estate Broker to 100 Corporate Drive, LLC. (Related Doc # 53) . (Tetzlaff, Deanna) (Entered: 01/25/2008) |
| 01/29/2008 | 59 | Notice of Proposed Order *Notice of Motion for an Order Under Section 365(a) of the Bankruptcy Code Authorizing the Rejection of Certain Unexpired Leases and Fixing Bar Date for Claims of Counterparites to Rejected Leases* filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with hearing to be held on 2/26/2008 at 02:00 PM at Courtroom TBA (MG) Objections due by 2/21/2008, (Flaxer, Jonathan) (Entered: 01/29/2008) |

| 01/29/2008 | 60 | Motion to Authorize *Motion for an Order Under Section 365(a) of the Bankruptcy Code Authorizing the Rejection of Certain Unexpired Leases and Fixing Bar Date for Claims of Counterparties to Rejected Leases* (related document(s)59) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with hearing to be held on 2/26/2008 at 02:00 PM at Courtroom TBA (MG) Responses due by 2/21/2008, (Attachments: # 1 Exhibit A: Proposed Order# 2 Exhibit B: Agreements) (Flaxer, Jonathan) (Entered: 01/29/2008) |
| --- | --- | --- |
| 01/29/2008 | 61 | Affidavit of Service (related document(s)59, 60) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 01/29/2008) |
| 02/01/2008 | 62 | Objection to Motion *IPofA Debtors' and Chapter 11 Trustee's Objection to Cordell's Motion for Dismissal, Lifting of the Automatic Stay and/or Adequate Protection* (related document(s)29) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with hearing to be held on 2/8/2008 at 10:00 AM at Courtroom TBA (MG) (Flaxer, Jonathan) (Entered: 02/01/2008) |
| 02/01/2008 | 63 | Declaration *of John P. Sordillo* (related document(s)62) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 02/01/2008) |
| 02/01/2008 | 64 | Declaration *of Randall G. Kominsky* (related document(s)62) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 02/01/2008) |
| 02/01/2008 | 65 | Declaration *of Kevin W. Murphy* (related document(s)62) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C) (Flaxer, Jonathan) (Entered: 02/01/2008) |
| 02/01/2008 | 66 | Statement *of Official Committee of Unsecured Creditors of The 1031 Tax Group, LLC, et al., in Support of Opposition of Trustee to Motion of Cordell Funding, LLLP and Cordell Consultants, Inc. Money Purchase Plan for Order Dismissing Cases, Modifying Automatic Stay, Granting Adequate Protection and Other Related Relief* (related document(s)62) filed by Allen G. Kadish on behalf of Official Committee of Unsecured Creditors of The 1031 Tax Group, LLC, et al.. with hearing to be held on 2/8/2008 at 10:00 AM at Courtroom TBA (MG) (Attachments: # 1 Affidavit of Service) (Kadish, Allen) (Entered: 02/01/2008) |
| 02/07/2008 | 67 | Letter *Concerning Rule 2004 Production Request and Requesting Continuance of Hearing Thereon* (related document(s)55) filed by Randall D. LaTour on behalf of IPofAColumbus Works 1, LLC, et al.. (LaTour, Randall) (Entered: 02/07/2008) |

| 02/07/2008 | 68 | Statement *Facts Concerning February 8, 2008 Hearing on Motion of Cordell Funding, LLLP and Cordell Consultants Inc., Money Purchase Plan, a Qualified Retirement Plan Trust for Entry of an Order to (a) Dismissing Chapter 11 Cases; (b) Modifying Automatic Stay; (c) Granting Adequate Protection and (d) Related Relief* (related document(s)48, 29, 34) filed by Douglas E. Spelfogel on behalf of Cordell Funding LLLP and Cordell Consultants Inc.. (Spelfogel, Douglas) (Entered: 02/07/2008) |
|---|---|---|
| 02/11/2008 | 69 | Application for Ex Parte Relief *Ex Parte Motion Seeking Entry of a Bridge Order Extending Automatic Stay Protection to the IPofA Debtros Through the Later of March 6, 2008 or the Conclusion of a Hearing on the Relief Sought* filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Attachments: # 1 Exhibit A: Proposed Order) (Flaxer, Jonathan) (Entered: 02/11/2008) |
| 02/11/2008 | 70 | Affidavit of Service (related document(s)69) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 02/11/2008) |
| 02/13/2008 | 71 | So Ordered Stipulation signed on 2/13/2008 Further Extending Time to File Schedule of Assets and Liabilities and Statement of Financial Affairs. (Tetzlaff, Deanna) (Entered: 02/13/2008) |
| 02/13/2008 | 72 | So Ordered Stipulation signed on 2/13/2008 Extending Automatic Stay Protection to the IPOFA Debtors Pursuant to Section 362(D)(3) of the Bankruptcy Code Through and Including March 7, 2008. (related document(s)29) (Tetzlaff, Deanna) (Entered: 02/13/2008) |
| 02/13/2008 | 73 | Notice of Proposed Order *Notice of Motion Authorizing Entry of (I) An Order Authorizing IPofA Shreveport Industrial Park, LLC's Use of Cash Collateral; and (II) An Order Extending Automatic Stay Protection to the IPofA Debtors Through May 13, 2008* filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with hearing to be held on 3/5/2008 at 10:00 AM at Courtroom TBA (MG) (Flaxer, Jonathan) (Entered: 02/13/2008) |
| 02/13/2008 | 74 | Motion to Authorize *Entry of (I) An Order Authorizing IPofA Shreveport Industrial Park, LLC's Use of Cash Collateral; and (II) An Order Extending Automatic Stay Protection to the IPofA Debtors Through May 13, 2008* (related document(s)73) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with hearing to be held on 3/5/2008 at 10:00 AM at Courtroom TBA (MG) (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D) (Flaxer, Jonathan) (Entered: 02/13/2008) |
| 02/13/2008 | 75 | Notice of Proposed Order *Notice of Motion for Order Pursuant to 11 U.S.C. 363(b) and Rule 9019(a) of the Federal Rules of Bankruptcy* |

| | | |
|---|---|---|
| | | *Procedure Authorizing the Termination of Master Lease and Mutual Releases* filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with hearing to be held on 3/7/2008 at 10:00 AM at Courtroom TBA (MG) (Flaxer, Jonathan) (Entered: 02/13/2008) |
| 02/13/2008 | 76 | Motion to Authorize *Motion for Order Pursuant to 11 U.S.C. 363(b) and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure Authorizing the Termination of Master Lease and Mutual Releases* (related document(s)75) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Attachments: # 1 Exhibit A) (Flaxer, Jonathan) (Entered: 02/13/2008) |
| 02/13/2008 | 77 | Notice of Proposed Order *Notice of Motion for Entry of an Order Approving a Stipulation and Order Settling the Dispute Between Investment Properties of America, LLC and Today's Kids, Inc. Pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure* filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with hearing to be held on 3/7/2008 at 10:00 AM at Courtroom TBA (MG) (Flaxer, Jonathan) (Entered: 02/13/2008) |
| 02/13/2008 | 78 | Motion to Approve *Motion for Entry of an Order Approving a Stipulation and Order Settling the Dispute Between Investment Properties of America, LLC and Today's Kids, Inc. Pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure* (related document(s)77) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with hearing to be held on 3/7/2008 at 10:00 AM at Courtroom TBA (MG) (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C) (Flaxer, Jonathan) (Entered: 02/13/2008) |
| 02/13/2008 | 79 | Affidavit of Service (related document(s)77, 74, 73, 76, 75, 78) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 02/13/2008) |
| 02/15/2008 | 80 | Notice of Proposed Order *Notice of Application for an Order Pursuant to 11 U.S.C. 327(a) and 328(a) and Fed. R. Bankr. P. 2014 Authorizing the Retention of Keen Consultants, the Real Estate Division of KPMG Corporate Finance LLC, Along With Its Wholly-Owned Subsidiary KPMG CF Realty LLC, as Special Real Estate Advisor* filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with hearing to be held on 2/26/2008 at 02:00 PM at Courtroom TBA (MG) (Flaxer, Jonathan) (Entered: 02/15/2008) |
| 02/15/2008 | 81 | Application to Employ Keen Consultants, the Real Estate Division of KPMG Corporate Finance LLC, Along With Its Wholly-Owned Subsidiary KPMG CF Realty LLC as Special Real Estate Advisor |

| | | |
|---|---|---|
| | | (related document(s)80) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C) (Flaxer, Jonathan) (Entered: 02/15/2008) |
| 02/15/2008 | 82 | Notice of Proposed Order *Notice of Motion for Order Under Section 365(a) of the Bankruptcy Code Authorizing the Rejection of Certain Unexpired Lease and Fixing Bar Date for Claims of Counterparties to Rejected Lease* filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with hearing to be held on 3/7/2008 at 10:00 AM at Courtroom TBA (MG) Objections due by 3/4/2008, (Flaxer, Jonathan) (Entered: 02/15/2008) |
| 02/15/2008 | 83 | Motion to Authorize *Motion for an Order Under Section 365(a) of the Bankruptcy Code Authorizing the Rejection of Certain Unexpired Lease and Fixing Bar Date for Claims of Counterparties to Rejected Lease* (related document(s)82) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with hearing to be held on 3/7/2008 at 10:00 AM at Courtroom TBA (MG) Responses due by 3/4/2008, (Attachments: # 1 Exhibit A# 2 Exhibit B) (Flaxer, Jonathan) (Entered: 02/15/2008) |
| 02/15/2008 | 84 | Affidavit of Service (related document(s)83, 82) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 02/15/2008) |
| 02/15/2008 | 85 | Affidavit of Service (related document(s)80, 81) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 02/15/2008) |
| 02/20/2008 | 86 | Letter *Exhibit B to Motion for Entry of an Order Approving a Stipulation and Order Settling the Dispute Between Investment Properties of America, LLC and Today's Kids, Inc. Pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure* (related document(s)78) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 02/20/2008) |
| 02/20/2008 | 87 | Affidavit of Service (related document(s)86) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 02/20/2008) |
| 02/21/2008 | 88 | Objection */Limited Objection and Reservation of Rights of Parkway Properties LP to Motion for an Order Under Section 365(a) of the Bankruptcy Code Authorizing the Rejection of Certain Unexpired Leases and Fixing Bar Date for Claims of Counterparties to Rejected Leases* filed by Jason Richard Wolf on behalf of Parkway Properties LP. (Wolf, Jason) (Entered: 02/21/2008) |
| | | |

| 02/21/2008 | 89 | Certificate of Service *of Limited Objection and Reservation of Rights of Parkway Properties LP to Motion for an Order Under Section 365 (a) of the Bankruptcy Code Authorizing the Rejection of Certain Unexpired Leases and Fixing Bar Date for Claims of Counterparties to Rejected Leases* (related document(s)88) filed by Jason Richard Wolf on behalf of Parkway Properties LP. (Wolf, Jason) (Entered: 02/21/2008) |
| --- | --- | --- |
| 02/21/2008 | 90 | Letter *from Dallas L. Albaugh to Honorable Martin Glenn re: Adjournment of Objection Deadline and Hearing Date* (related document(s)57, 55) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with hearing to be held on 3/7/2008 at 02:00 PM at Courtroom TBA (MG) Objections due by 2/27/2008, (Flaxer, Jonathan) (Entered: 02/21/2008) |
| 02/22/2008 | 91 | Notice of Adjournment of Hearing *on Motion for an Order Under Section 365(a) of the Bankruptcy Code Authorizing the Rejection of Certain Unexpired Leases and Fixing Bar Date for Claims of Counterparties to Rejected Leases* (related document(s)60) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with hearing to be held on 3/7/2008 at 10:00 AM at Courtroom TBA (MG) (Flaxer, Jonathan) (Entered: 02/22/2008) |
| 02/26/2008 | 92 | Notice of Appearance filed by Mark B. Conlan on behalf of Lucent Technologies Inc.. (Conlan, Mark) (Entered: 02/26/2008) |
| 02/27/2008 | 93 | Order signed on 2/27/2008 Granting Application to Employ Keen Consultants, the Real Estate Division of KPMG Corporate Finance LLC, Along With Its Wholly-Owned Subsidiary KPMG CF Realty LLC as Special Real Estate Advisor (Related Doc # 81) (Tetzlaff, Deanna) (Entered: 02/27/2008) |
| 02/27/2008 | 94 | Joint Objection to Motion *for Allowance and Payment of Administrative Expense of $258,955.67 for Rent and Property Taxes; and (II) Motion for Allowance and Payment of Administrative Expense of $948,318.42, Plus $12,864.28 Per Diem from Feb. 1, 2008 Until Payment, For Rent and Property Taxes* (related document (s)57) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with hearing to be held on 3/7/2008 at 10:00 AM at Courtroom TBA (MG) (Flaxer, Jonathan) (Entered: 02/27/2008) |
| 02/27/2008 | 95 | Affidavit of Service (related document(s)94) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 02/27/2008) |
| 03/04/2008 | 96 | Response to Motion (related document(s)83) filed by Karen Giannelli on behalf of Lucent Technologies Inc.. (Giannelli, Karen) (Entered: 03/04/2008) |

| 03/04/2008 | 97 | Objection to Motion (related document(s)83) filed by Thomas A. Pitta on behalf of Tradition (North America), Inc.. (Pitta, Thomas) (Entered: 03/04/2008) |
|---|---|---|
| 03/05/2008 | 98 | Notice of Hearing *Notice Regarding Telephonic Participation in the Hearing Scheduled for March 7, 2008 at 10:00 A.M. (EST)* (related document(s)60, 57) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with hearing to be held on 3/7/2008 (check with court for location) (Flaxer, Jonathan) (Entered: 03/05/2008) |
| 03/05/2008 | 99 | So Ordered Stipulation Signed on 3/5/2008 Further Extending Time to File Schedule of Assets and Liabilities and Statement of Financial Affairs. (related document(s)37, 6  71, 11) (Tetzlaff, Deanna) (Entered: 03/05/2008) |
| 03/05/2008 | 100 | Notice of Withdrawal *of Rule 2004 Motion* (related document(s)55) filed by Jesse Cook-Dubin on behalf of IPofAColumbus Works 1, LLC, et al.. (Cook-Dubin, Jesse) (Entered: 03/05/2008) |
| 03/06/2008 | 101 | Affidavit of Service */Supplemental Affidavit of Service* (related document(s)83, 82) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 03/06/2008) |
| 03/06/2008 | 102 | Response */Reply of Debtor to Objection of Tradition (North America), Inc. to Motion to Reject Certain Unexpired Lease* (related document(s)97) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 03/06/2008) |
| 03/06/2008 | 103 | Affidavit of Service (related document(s)102) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 03/06/2008) |
| 03/06/2008 | 104 | Letter *to Judge Glenn from Adam C. Silverstein, Esq., regarding agreement between the debtors and Cordell* (related document(s)29) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Attachments: # 1 Stipulation and Order)(Flaxer, Jonathan) (Entered: 03/06/2008) |
| 03/07/2008 | 105 | So Ordered Stipulation signed on 3/7/2008 Regarding Pre-Petition Termination of Certain Leases and Subleases. (related document(s) 76) (Tetzlaff, Deanna) (Entered: 03/07/2008) |
| 03/07/2008 | 106 | Order Signed on 3/7/2008 Granting Motion to Approve (Related Doc # 78) a Stipulation and Order Settling the Dispute Between Investment Properties of America, LLC and Today's Kids, Inc. |

| | | |
|---|---|---|
| | | (Tetzlaff, Deanna) (Entered: 03/07/2008) |
| 03/07/2008 | <u>107</u> | So Ordered Stipulation signed on 3/7/2008 Modifying the Automatic Stay and Establishing Scheduling and Related Relief. **Evidentiary hearing to be held before the Honorable Martin Glenn on March 28, 2008 at 10:00 a.m. in Courtroom 623.** (Related Doc # <u>29</u>) (Tetzlaff, Deanna) Modified on 3/7/2008 (Richards, Beverly). (Entered: 03/07/2008) |
| 03/10/2008 | <u>108</u> | Order signed on 3/10/2008 Granting Motion to Authorize the Rejection of Certain Unexpired Leases and Fixing Bar Date for Claims of Counterparties to Rejected Leases. (Related Doc # <u>60</u>) (Tetzlaff, Deanna) (Entered: 03/10/2008) |
| 03/10/2008 | <u>109</u> | Notice of Hearing *Notice Regarding Telephonic Participation in the Hearing Scheduled for March 11, 2008 at 2:00 P.M. (EST)* (related document(s)<u>83</u>, <u>57</u>) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with hearing to be held on 3/11/2008 at 02:00 PM at Courtroom TBA (MG) (Flaxer, Jonathan) (Entered: 03/10/2008) |
| 03/10/2008 | <u>110</u> | Statement / *Withdrawal of Objection of Tradition (North America), Inc. to Motion for Order Under Section 365(a) Authorizing the Rejection of Certain Unexpired Lease and Fixing Bar Date for Claims of Counterparties to Rejected Lease* (related document(s)<u>97</u>) filed by Thomas A. Pitta on behalf of Tradition (North America), Inc.. (Pitta, Thomas) (Entered: 03/10/2008) |
| 03/10/2008 | <u>111</u> | Declaration *of Gerard A. McHale, Jr. in Support of Motion for Order Under Section 365(a) of the Bankruptcy Code Authorizing the Rejection of Certain Unexpired Lease and Fixing Bar Date for Claims of Counterparties to Rejected Lease* (related document(s)<u>83</u>) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Attachments: # <u>1</u> Exhibit A (Part 1)# <u>2</u> Exhibit A (Part 2)# <u>3</u> Exhibit B# <u>4</u> Exhibit C) (Flaxer, Jonathan) (Entered: 03/10/2008) |
| 03/10/2008 | <u>112</u> | Affidavit of Service (related document(s)<u>111</u>) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 03/10/2008) |
| 03/10/2008 | <u>113</u> | Affidavit of Service (related document(s)<u>108</u>) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 03/10/2008) |
| 03/10/2008 | <u>114</u> | Affidavit *of Janie Kashiwa-Li in Support of Trustee's Motion to Authorize Rejection* (related document(s)<u>83</u>) filed by Jesse Cook-Dubin on behalf of IPofAColumbus Works 1, LLC, et al.. |

| | | |
|---|---|---|
| | | (Attachments: # 1 Exhibit A: Calculation)(Cook-Dubin, Jesse) (Entered: 03/10/2008) |
| 03/10/2008 | 115 | Affidavit *Verified Rule 2019 Statement of Vorys, Sater, Seymour & Pease LLP* filed by Jesse Cook-Dubin on behalf of IPofAColumbus Works 1, LLC, et al.. (Cook-Dubin, Jesse) (Entered: 03/10/2008) |
| 03/11/2008 | 134 | Transcript *Of Hearing Held On February 8, 2008 At 10:08 AM, Re: Motion To Dismiss Chapter 11 Cases, Adequate Protection And Related Relief; Motion For 2004 Examination* filed by TypeWrite Word Processing Service. (Braithwaite, Kenishia) (Entered: 04/08/2008) |
| 03/12/2008 | 116 | Agreed Order signed on **3/11/2008** Granting Motion to Authorize the Rejection of Certain Unexpired Lease and Fixing Bar Date for Claims of Counterparties to Rejected Lease and (B) Resolving Joint Objection to (I) Motion for Allowance and Payment of Administrative Expense of $258,955.67 for Rent and Property Taxes; and (II) Motion for Allowance and Payment of Administrative Expense of $948,318.42, plus $12,864.28 per diem from Feb. 1, 2008 Until Payment, for Rent and Property Taxes. (Related Doc # 57, 83) (Tetzlaff, Deanna) **Signature Date Modified on 3/12/2008 (Richards, Beverly).** (Entered: 03/12/2008) |
| 03/14/2008 | 117 | Notice of Proposed Order *Notice of Motion for Entry of an Order Approving an Agreement Settling the Dispute Among the Trustee, IPofA Water View, LLC and Valley National Bank Pursuant to 11 U.S.C. 363(b)(1) and 105(a) and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure* filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with hearing to be held on 4/8/2008 at 10:00 AM at Courtroom 601 Objections due by 4/3/2008, (Flaxer, Jonathan) (Entered: 03/14/2008) |
| 03/14/2008 | 118 | Motion to Approve *Motion for Entry of an Order Approving an Agreement Settling the Dispute Among the Trustee, IPofA Water View, LLC and Valley National Bank Pursuant to 11 U.S.C. 363(b)(1) and 105(a) and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure* (related document(s)117) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with hearing to be held on 4/8/2008 at 10:00 AM at Courtroom 601 (Attachments: # 1 Errata A# 2 Exhibit B) (Flaxer, Jonathan) (Entered: 03/14/2008) |
| 03/14/2008 | 119 | Declaration *of Gerard A. McHale, Jr. in Support of the Motion for Entry of an Order Approving an Agreement Settling the Dispute Among the Trustee, IPofA Water View, LLC and Valley National Bank Pursuant to 11 U.S.C. 363(b)(1) and 105(a) and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure* (related document(s) 118) filed by Jonathan L. Flaxer on behalf of Investment Properties of |

| | | America, LLC. (Flaxer, Jonathan) (Entered: 03/14/2008) |
|---|---|---|
| 03/14/2008 | 120 | Affidavit of Service (related document(s)117, 118, 119) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 03/14/2008) |
| 03/20/2008 | 121 | Notice of Proposed Order *Notice of Motion for Entry of an Order Approving Termination of the Crooked Creek Property Management Agreement with Release and Discharge Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 105(a)* filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with hearing to be held on 4/16/2008 at 10:00 AM at Courtroom TBA (MG) Objections due by 4/11/2008, (Flaxer, Jonathan) (Entered: 03/20/2008) |
| 03/20/2008 | 122 | Motion to Approve *Motion for Entry of an Order Approving Termination of the Crooked Creek Property Management Agreement with Release and Discharge Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 105(a)* (related document(s)121) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with hearing to be held on 4/16/2008 at 10:00 AM at Courtroom TBA (MG) (Attachments: # 1 Exhibit A# 2 Exhibit B) (Flaxer, Jonathan) (Entered: 03/20/2008) |
| 03/20/2008 | 123 | Declaration *of Gerard A. McHale, Jr. in Support of the Motion for Entry of an Order Approving Termination of the Crooked Creek Property Management Agreement with Release and Discharge Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 105(a)* (related document(s)122) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 03/20/2008) |
| 03/20/2008 | 124 | Notice of Proposed Order *Notice of Motion of IPofA Debtors for an Order Pursuant to Bankruptcy Rule 1007(c) and Section 105(a) of the Bankruptcy Code Extending the IPofA Debtors' Time to File Schedules of Assets and Liabilities and Statements of Financial Affairs* filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with hearing to be held on 4/16/2008 at 10:00 AM at Courtroom TBA (MG) Objections due by 4/11/2008, (Flaxer, Jonathan) (Entered: 03/20/2008) |
| 03/20/2008 | 125 | Motion to Extend Deadline to File Schedules or Provide Required Information *Motion of IPofA Debtors for an Order Pursuant to Bankruptcy Rule 1007(c) and Section 105(a) of the Bankruptcy Code Extending the IPofA Debtors' Time to File Schedules of Assets and Liabilities and Statements of Financial Affairs* filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with hearing to be held on 4/16/2008 at 10:00 AM at Courtroom TBA (MG) (Attachments: # 1 Exhibit A) (Flaxer, Jonathan) (Entered: 03/20/2008) |

| | | |
|---|---|---|
| 03/20/2008 | <u>126</u> | Declaration *of Gerard A. McHale, Jr. in Support of the Motion of the IPofA Debtors for an Order Pursuant to Bankruptcy Rule 1007(c) and Section 105(a) of the Bankruptcy Code Extending the IPofA Debtors' Time to File Schedules of Assets and Liabilities and Statements of Financial Affairs* (related document(s)<u>125</u>) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 03/20/2008) |
| 03/20/2008 | <u>127</u> | Affidavit of Service (related document(s)<u>122</u>, <u>121</u>, <u>123</u>) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 03/20/2008) |
| 03/20/2008 | <u>128</u> | Affidavit of Service (related document(s)<u>124</u>, <u>126</u>, <u>125</u>) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 03/20/2008) |
| 03/20/2008 | <u>129</u> | Adversary case 08-01138. Complaint against Columbus Works Virginia Trust, IPofA Columbus Works LeaseCo, LLC, Gerard A. McHale, not individually but solely in his capacity as Chapter 11 Trustee for THE 1031 TAX GROUP, LLC, et al., IPofA Columbus Works, LLC, A Virginia LLC IPofA Fund Manager, LLC, Cordell Funding, LLLP . Nature(s) of Suit: (13 (Recovery of money/property - 548 fraudulent transfer)), (21 (Validity, priority or extent of lien or other interest in property)) Filed by Randall D. LaTour, Merritt A. Pardini, IPofA Columbus Works 1, LLC, IPofA Columbus Works 2, LLC, IPofA Columbus Works 3, LLC, IPofA Columbus Works 4, LLC, IPofA Columbus Works 5, LLC, IPofA Columbus Works 6, LLC, IPofA Columbus Works 7, LLC, IPofA Columbus Works 8, LLC, IPofA Columbus Works 9, LLC, IPofA Columbus Works 10, LLC, IPofA Columbus Works 11, LLC, IPofA Columbus Works 12, LLC, IPofA Columbus Works 13, LLC, IPofA Columbus Works 14, LLC, IPofA Columbus Works 15, LLC, IPofA Columbus Works 16, LLC, IPofA Columbus Works 17, LLC, IPofA Columbus Works 18, LLC, IPofA Columbus Works 19, LLC, IPofA Columbus Works 20, LLC, IPofA Columbus Works 21, LLC, IPofA Columbus Works 22, LLC, IPofA Columbus Works 23, LLC, IPofA Columbus Works 24, LLC, IPofA Columbus Works 25, LLC, IPofA Columbus Works 26, LLC, IPofA Columbus Works 27, LLC, IPofA Columbus Works 28, LLC, IPofA Columbus Works 29, LLC, IPofA Columbus Works 30, LLC, IPofA Columbus Works 31, LLC, IPofA Columbus Works 32, LLC, Gearhart Development Corp. 401K Plan on behalf of IPofA Columbus Works 1, LLC, IPofA Columbus Works 2, LLC, IPofA Columbus Works 3, LLC, IPofA Columbus Works 4, LLC, IPofA Columbus Works 5, LLC, IPofA Columbus Works 6, LLC, IPofA Columbus Works 7, LLC, IPofA Columbus Works 8, LLC, IPofA Columbus Works 9, LLC, IPofA Columbus Works 10, LLC, IPofA Columbus Works 11, LLC, IPofA Columbus Works 12, LLC, IPofA Columbus Works 13, LLC, IPofA Columbus Works 14, LLC, IPofA Columbus Works 15, LLC, IPofA Columbus Works 16, LLC, IPofA |

| | | |
|---|---|---|
| | | Columbus Works 17, LLC, IPofA Columbus Works 18, LLC, IPofA Columbus Works 19, LLC, IPofA Columbus Works 20, LLC, IPofA Columbus Works 21, LLC, IPofA Columbus Works 22, LLC, IPofA Columbus Works 23, LLC, IPofA Columbus Works 24, LLC, IPofA Columbus Works 25, LLC, IPofA Columbus Works 26, LLC, IPofA Columbus Works 27, LLC, IPofA Columbus Works 28, LLC, IPofA Columbus Works 29, LLC, IPofA Columbus Works 30, LLC, IPofA Columbus Works 31, LLC, IPofA Columbus Works 32, LLC, Gearhart Development Corp. 401K Plan. (LaTour, Randall) (Entered: 03/20/2008) |
| 03/24/2008 | 130 | So Ordered Stipulation Signed on 3/24/2008 Further Adjourning Hearing of and Related Briefing on Motion of Cordell Funding, LLP and Cordell Consultants Inc., Money Purchase Plan, a Qualified Retirement Trust for Entry of Order (A) Dismissing Chapter 11 Cases; (B) Modifying Automatic Stay; (C) Granting Adequate Protection; and (D) Related Relief. Hearing Adjourned to 4/8/2008 at 2:00 P.M. in Courtroom 601. (related document(s)41, 54, 42) (Tetzlaff, Deanna) (Entered: 03/24/2008) |
| 04/02/2008 | 131 | Notice of Meeting of Creditors filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with 341(a) meeting to be held on 5/6/2008 at 10:00 AM at 80 Broad St., 4th Floor, USTM. (Flaxer, Jonathan) (Entered: 04/02/2008) |
| 04/02/2008 | 132 | Affidavit of Service (related document(s)131) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 04/02/2008) |
| 04/07/2008 | 133 | So Ordered Stipulation signed on 4/7/2008 Further Adjourning Hearing of and Related Briefing on Motion of Cordell Funding, LLP and Cordell Consultants Inc., Money Purchase Plan, a Qualified Retirement Trust for Entry of Order (A) Dismissing Chapter 11 Cases; (B) Modifying Automatic Stay; (C) Granting Adequate Protection; and (D) Related Relief. (related document(s)29, 130) (Tetzlaff, Deanna) (Entered: 04/07/2008) |
| 04/09/2008 | 135 | Notice of Presentment *of Three Orders* filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with presentment to be held on 4/17/2008 at 12:00 PM at Courtroom TBA (MG) Objections due by 4/17/2008, (Attachments: # 1 Exhibit A: Motor Vehicles Order# 2 Exhibit B: Creditors Committee Order# 3 Exhibit A to Exhibit B# 4 Exhibit C: IPofA Water View and Valley National Bank Agreement Order)(Flaxer, Jonathan) (Entered: 04/09/2008) |
| 04/10/2008 | 136 | Affidavit of Service (related document(s)135) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 04/10/2008) |

| 04/11/2008 | <u>137</u> | Notice of Presentment *of Stipulation and Order Resolving Conditions and Related Relief By and Among the Cordell Lenders and the IPofA Debtors* filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with presentment to be held on 4/16/2008 at 10:00 AM at Courtroom TBA (MG) Objections due by 4/15/2008, (Flaxer, Jonathan) (Entered: 04/11/2008) |
|---|---|---|
| 04/11/2008 | <u>138</u> | **(This Document Was Submitted Incorrectly)** Stipulation *and Order Resolving Conditions and Related Relief* (related document(s) <u>137</u>) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) Modified on 4/16/2008 (Bush, Brent) (Entered: 04/11/2008) |
| 04/11/2008 | <u>139</u> | Letter *from Jonathan L. Flaxer to Honorable Martin Glenn re: Stipulation and Order Resolving Conditions and Related Relief* (related document(s)<u>138</u>, <u>137</u>) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 04/11/2008) |
| 04/11/2008 | <u>140</u> | Affidavit of Service (related document(s)<u>138</u>, <u>139</u>, <u>137</u>) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 04/11/2008) |
| 04/14/2008 | <u>141</u> | Stipulation *and Order Resolving Conditions and Related Relief* (related document(s)<u>138</u>, <u>139</u>, <u>137</u>) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 04/14/2008) |
| 04/15/2008 | <u>142</u> | Order signed on 4/14/2008 to Show Cause Why Cordell Funding, LLLP Should Not Be Held in Contempt, (2) for a Temporary Restraining Order and (3) for Preliminary Injunction Against Cordell Funding, LLLP. Hearing to be Held on 4/16/2008 at 10:00 AM in Courtroom 723. (Tetzlaff, Deanna) (Entered: 04/15/2008) |
| 04/15/2008 | <u>143</u> | Letter *from Dallas Albaugh to Honorable Martin Glenn re: Adjournment of Hearing* (related document(s)<u>122</u>, <u>121</u>) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 04/15/2008) |
| 04/15/2008 | <u>144</u> | Objection to Motion *Stipulation and Order Resolving Conditions and Related Relief* filed by Jesse Cook-Dubin on behalf of IPofAColumbus Works 1, LLC, et al.. (Cook-Dubin, Jesse) (Entered: 04/15/2008) |
| 04/15/2008 | <u>145</u> | Notice of Hearing *Notice of Agenda of Matters Scheduled for Hearing on April 16, 2008 at 10:00 a.m.* filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with hearing to be held on 4/16/2008 at 10:00 AM at Courtroom TBA (MG) (Flaxer, |

| | | Jonathan) (Entered: 04/15/2008) |
|---|---|---|
| 04/15/2008 | 146 | Affidavit of Service (related document(s)141) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 04/15/2008) |
| 04/15/2008 | 147 | Notice of Withdrawal *of Limited Objection to Stipulation and Order Resolving Conditions and Related Relief* (related document(s)144) filed by Jesse Cook-Dubin on behalf of IPofAColumbus Works 1, LLC, et al.. (Cook-Dubin, Jesse) (Entered: 04/15/2008) |
| 04/16/2008 | 148 | Affidavit of Service *for Motion of IPofA Columbus Works 1, LLC, et al. for (1) An Order To Show Cause Why Cordell Funding, LLLP Should Not Be Held In Contempt, (2) A Temporary Restraining Order And (3) Preliminary Injunction Against Cordell Funding, LLLP; Memorandum In Support; Declaration Of Melvin E. Pearl In Support; Declaration of Randall D. LaTour In Support; and Order To Show Cause Why Cordell Funding, LLLP Should Not Be Held In Contempt; Temporary Restraining Order; And Preliminary Injunction Against Cordell Funding, LLLP* filed by Cara S. Mittleman on behalf of IPofAColumbus Works 1, LLC, et al.. (Mittleman, Cara) (Entered: 04/16/2008) |
| 04/16/2008 | 149 | **(INCORRECT PDF FILE SUBMITTED, SEE DOCUMENT NUMBER 151 FOR CORRECT ENTRY)** So Ordered Stipulation Signed on 4/16/2008 Resolving Conditions and Granting Related Relief. (related document(s)138, 141, 137) (Tetzlaff, Deanna) Modified on 4/16/2008 (Richards, Beverly). (Entered: 04/16/2008) |
| 04/16/2008 | 150 | Order signed on 4/16/2008 Granting Motion To Extend IPofA Debtors' Time to File Schedules of Assets and Liabilities and Statements of Financial Affairs.(Related Doc # 125) (Tetzlaff, Deanna) (Entered: 04/16/2008) |
| 04/16/2008 | 151 | Amended So Ordered Stipulation Signed on 4/16/2008 Resolving Conditions and Granting Related Relief. (related document(s)149) (Tetzlaff, Deanna) (Entered: 04/16/2008) |
| 04/17/2008 | 152 | Order Signed on 4/17/2008 Approving the Agreement Settling the Dispute Among the Trustee, IPofA Water View, and Valley National Bank. (Tetzlaff, Deanna) (Entered: 04/17/2008) |
| 04/17/2008 | 153 | **(INCORRECT PDF FILE SUBMITTED, SEE DOCUMENT NUMBER 154 FOR CORRECT ENTRY)** Order Signed on 4/17/2008 Denying Request to Hold Cordell Funding, LLLP in Contempt. (Tetzlaff, Deanna) Modified on 4/18/2008 (Richards, Beverly). (Entered: 04/17/2008) |

| 04/18/2008 | 154 | Amended Order Signed on 4/17/2008 Denying Request to Hold Cordell Funding, LLLP in Contempt. (related document(s)153) (Tetzlaff, Deanna) (Entered: 04/18/2008) |
|---|---|---|
| 04/21/2008 | 155 | Notice of Proposed Order *Notice of Motion for Order Establishing Noticing Requirements with Respect to All Proceedings Herein* filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with hearing to be held on 5/14/2008 at 10:00 AM at Courtroom TBA (MG) Objections due by 5/9/2008, (Flaxer, Jonathan) (Entered: 04/21/2008) |
| 04/21/2008 | 156 | Motion to Limit Notice *Motion for Order Establishing Noticing Requirements with Respect to All Proceedings Herein* (related document(s)155) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with hearing to be held on 5/14/2008 at 10:00 AM at Courtroom TBA (MG) Responses due by 5/9/2008, (Attachments: # 1 Exhibit A) (Flaxer, Jonathan) (Entered: 04/21/2008) |
| 04/21/2008 | 157 | Notice of Proposed Order *Authorizing Entry into a Forbearance Agreement with Wachovia Bank, NA Under 11 U.S.C. 363(b)(1) and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a)* filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with hearing to be held on 5/14/2008 at 10:00 AM at Courtroom TBA (MG) Objections due by 5/9/2008, (Flaxer, Jonathan) (Entered: 04/21/2008) |
| 04/21/2008 | 158 | Motion to Authorize *Entry into a Forbearance Agreement with Wachovia Bank, NA Under 11 U.S.C. 363(b)(1) and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a)* (related document(s) 157) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with hearing to be held on 5/14/2008 at 10:00 AM at Courtroom TBA (MG) Responses due by 5/9/2008, (Attachments: # 1 Exhibit A# 2 Exhibit B) (Flaxer, Jonathan) (Entered: 04/21/2008) |
| 04/21/2008 | 159 | Declaration *of Gerard A. McHale, Jr. in Support of the Motion Authorizing Entry into a Forbearance Agreement with Wachovia Bank, NA Under 11 U.S.C. 363(b)(1) and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a)* (related document(s)158) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 04/21/2008) |
| 04/21/2008 | 160 | Affidavit of Service (related document(s)157, 156, 155, 158, 159) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 04/21/2008) |
| 04/24/2008 | 161 | Certificate of Service (related document(s)92) filed by Mark B. Conlan on behalf of Lucent Technologies Inc.. (Conlan, Mark) |

| | | |
|---|---|---|
| | | (Entered: 04/24/2008) |
| 04/28/2008 | 162 | So Ordered Stipulation signed on 4/28/2008 Resolving Motion by Tenants-in-Common and Granting Related Relief. (Tetzlaff, Deanna) (Entered: 04/28/2008) |
| 04/29/2008 | 163 | Notice of Appearance *Request for Notice* filed by John G. Bianco III on behalf of Future Force Personnel. (Bianco, John) (Entered: 04/29/2008) |
| 05/05/2008 | 164 | Order signed on 5/5/2008 Granting Motion Approving Termination of the Crooked Creek Property Management Agreement with Release and Discharge. (Related Doc # 122) (Tetzlaff, Deanna) (Entered: 05/05/2008) |
| 05/13/2008 | 165 | Letter *Exhibit A to Docket # 158, Motion to Authorize Entry of Forebarance Agreement with Wachovia Bank, N.A.* (related document (s)158) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 05/13/2008) |
| 05/13/2008 | 166 | Letter *from Dallas Albaugh to Honorable Martin Glenn re: Request for Adjournment of 5/14/08 Hearing on Motion for an Order Authorizing Entry into a Forbearance Agreement with Wachovia Bank, NA* (related document(s)158) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 05/13/2008) |
| 05/14/2008 | 167 | Order signed on 5/14/2008 Granting Motion to Limit Noticing Requirements with Respect to All Proceedings Herein. (Related Doc # 156) (Tetzlaff, Deanna) (Entered: 05/14/2008) |
| 05/30/2008 | 168 | Order signed on 5/30/2008 Authorizing Entry into a Forbearance Agreement with Wachovia Bank, NA Under 11 U.S.C. Sections 363 (B)(1) and 105(A) of the Bankruptcy Code and Bankruptcy Rule 9019(A). (Related Doc # 158) (Lopez, Mary) (Entered: 05/30/2008) |
| 06/10/2008 | 169 | Motion to Vacate *in part (I) Stipulation and Order Modifying Automatic Stay and Establishing Schedule and Related Relief, and (II) Amended Stipulation and Order Resolving Conditions and Related Relief* filed by Andrea Fischer on behalf of Gerard A. McHale, Jr., Investment Properties of America, LLC. (Attachments: # 1 Declaration of Alan M. Herbst# 2 declaration of Gerard A. McHale, Jr.# 3 exhibit A to declaration of Gerard A. McHale, Jr.# 4 exhibit B to declaration of Gerard A. McHale, Jr.# 5 exhibit C to declaration of Gerard A. McHale, Jr.# 6 exhibit D to declaration of Gerard A. McHale, Jr.# 7 exhibit E declaration of Gerard A. McHale, Jr.# 8 exhibit F declaration of Gerard A. McHale, Jr.) (Fischer, Andrea) (Entered: 06/10/2008) |

| 06/10/2008 | 170 | Motion to Approve *Order (A) Scheduling Hearing to Approve BID Procedures, Right of First Refusal and Notice Requirements (B) Scheduling a Hearing Authorizing Lease of Oil and Gas Rights Belonging to IPofA Shreveport LLC, and (C) Granting Other Relief Related to the Foregoing* filed by Andrea Fischer on behalf of Investment Properties of America, LLC, Gerard A. McHale, Jr.. with hearing to be held on 6/25/2008 at 02:00 PM at Courtroom 501 (MG) (Attachments: # 1 Order (I) Scheduling Hearing to Approve BID Procedures, Right of First Refusal and Notice Requirements (II) Scheduling a Hearing Authorizing Lease of Oil and Gas Rights Belonging to IPofA Shreveport LLC, and (III) Granting Related Relief# 2 Petrohawk Offer) (Fischer, Andrea) (Entered: 06/10/2008) |
|---|---|---|
| 06/10/2008 | 171 | Notice of Motion to Set Hearing *(i) for an Order (I) Scheduling Hearing to Approve BID Procedures, Right of First Refusal and Notice Requirements (II) Scheduling a Hearing Authorizing Lease of Oil and Gas Rights Belonging to IPofA Shreveport LLC, and (III) Granting Other Relief Related to the Foregoing, and (ii) for an Order Pursuant to Fed.R.Civ.P.60(b) and Fed.R.Bankr.P.9024 Vacating, on Part, (I) Stipulation and Order Modifying Automatic Stay, and (II) Amended Stipulation and Order Resolving Conditions and Related Relief* filed by Andrea Fischer on behalf of Investment Properties of America, LLC, Gerard A. McHale, Jr.. with hearing to be held on 6/25/2008 at 02:00 PM at Courtroom 501 (MG) (Fischer, Andrea) (Entered: 06/10/2008) |
| 06/10/2008 | 172 | Certificate of Service (related document(s)169, 170, 171) filed by Andrea Fischer on behalf of Investment Properties of America, LLC, Gerard A. McHale, Jr.. (Fischer, Andrea) (Entered: 06/10/2008) |
| 06/11/2008 | 173 | Notice of Appearance filed by Andrea Fischer on behalf of Investment Properties of America, LLC, Gerard A. McHale, Jr.. (Fischer, Andrea) (Entered: 06/11/2008) |
| 06/11/2008 | 174 | Notice of Appearance *Substitution of Special Counsel for Louisana* filed by Andrea Fischer on behalf of Investment Properties of America, LLC, Gerard A. McHale, Jr.. (Fischer, Andrea) (Entered: 06/11/2008) |
| 06/12/2008 | 175 | Motion to Reject Lease or Executory Contract */Motion for an Order Under Section 365(a) of the Bankruptcy Code Authorizing the Rejection of Certain Unexpired Leases and Fixing Bar Date for Claims of the Counterparty to the Rejected Leases* filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with hearing to be held on 7/23/2008 at 10:00 AM at Courtroom 501 (MG) (Attachments: # 1 Exhibit A - Proposed Order# 2 Errata B - Summary & Copy of Leases# 3 Exhibit C - Declaration of Robert Davenport# 4 Notice of Motion) (Flaxer, Jonathan) (Entered: 06/12/2008) |

| 06/12/2008 | 176 | Notice of Abandonment of Property *[regarding certain vehicles]* filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. Objections due by 6/27/2008, (Flaxer, Jonathan) (Entered: 06/12/2008) |
|---|---|---|
| 06/12/2008 | 177 | Motion to Approve Compromise */Motion for Entry of an Order Approving the Richmond Square Settlement Agreement Pursuant to 11 U.S.C. Sections 363(b)(1) and 105(a) and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure* filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with hearing to be held on 7/23/2008 at 10:00 AM at Courtroom 501 (MG) (Attachments: # 1 Exhibit A - Proposed Order# 2 Exhibit B - Settlement Agreement# 3 Notice of Motion) (Flaxer, Jonathan) (Entered: 06/12/2008) |
| 06/12/2008 | 178 | Declaration *of Gerald A. McHale, Jr. in Support of the Motion for Entry of an Order Approving the Richmond Square Settlement Agreement Pursuant to 11 U.S.C. Sections 363(b)(1) and 105(a) and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure* (related document(s)177) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Attachments: # 1 Exhibit A - Part 1# 2 Exhibit A - Part 2) (Flaxer, Jonathan) (Entered: 06/12/2008) |
| 06/13/2008 | 179 | Affidavit of Service (related document(s)177, 178) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 06/13/2008) |
| 06/13/2008 | 180 | Affidavit of Service (related document(s)176) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 06/13/2008) |
| 06/13/2008 | 181 | Affidavit of Service (related document(s)175) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 06/13/2008) |
| 06/20/2008 | 182 | Motion to Approve *Pro Forma Lease* (related document(s)170, 171) filed by Andrea Fischer on behalf of Investment Properties of America, LLC, Gerard A. McHale, Jr.. (Fischer, Andrea) (Entered: 06/20/2008) |
| 06/20/2008 | 183 | Omnibus Objection to Motion *Pursuant to Fed. R. Civ. P. 60(b) and Fed. R. Bankr. P. 9024 Vacating, In Part, (I) Stipulation and Order Modifying Automatic Stay and Establishing Schedule and Related Relief, and (II) Amended Stipulation and Order Resolving Conditions; and (2) Motion to Approve Sale and Bid Procedures and Related Relief* (related document(s)169, 170) filed by Douglas E. Spelfogel on behalf of Cordell Funding LLLP and Cordell Consultants Inc.. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 |

| | | Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit F# 7 Exhibit G# 8 Exhibit H# 9 The Affidavit of Richard F. Strickland# 10 Affidavit of Alissa Kantrow) (Spelfogel, Douglas) (Entered: 06/20/2008) |
|---|---|---|
| 06/23/2008 | 184 | Notice of Hearing *Notice Regarding Telephonic Participation in the Hearing Scheduled for June 25, 2008 at 2:00 P.M. (EST)* (related document(s)169, 170, 171) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with hearing to be held on 6/25/2008 at 02:00 PM at Courtroom 501 (MG) (Flaxer, Jonathan) (Entered: 06/23/2008) |
| 06/23/2008 | 185 | Notice of Hearing *Notice of Telephonic Participation in the Hearing Scheduled for June 25, 2008 at 2:00pm (EST)* (related document(s) 169, 170, 172, 171) filed by Andrea Fischer on behalf of Investment Properties of America, LLC. with hearing to be held on 6/25/2008 at 02:00 PM at Courtroom 501 (MG) (Fischer, Andrea) (Entered: 06/23/2008) |
| 06/23/2008 | 186 | Certificate of Service (related document(s)183) filed by Douglas E. Spelfogel on behalf of Cordell Funding LLLP and Cordell Consultants Inc.. (Spelfogel, Douglas) (Entered: 06/23/2008) |
| 06/24/2008 | 187 | Application to Employ Ayres, Warren, Shelton & Williams, LLC as Special Louisiana Counsel to the Trustee as of May 21, 2008 filed by Jonathan L. Flaxer on behalf of Gerard A. McHale, Jr.. (Attachments: # 1 Exhibit A - Proposed Order# 2 Exhibit B - Engagement Letter# 3 Declaration of J. Benjamin Warren, Jr.) (Flaxer, Jonathan) (Entered: 06/24/2008) |
| 06/24/2008 | 188 | Reply to Motion *REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEBTOR?S MOTIONS (i) FOR AN ORDER (A) SCHEDULING HEARING TO APPROVE BID PROCEDURES, RIGHT OF FIRST REFUSAL AND NOTICE REQUIREMENTS (B) SCHEDULING A HEARING AUTHORIZING LEASE OF OIL AND GAS RIGHTS BELONGING TO IPofA SHREVEPORT LLC; AND (C) GRANTING OTHER RELIEF RELATED TO THE FOREGOING, AND (ii) FOR AN ORDER PURSUANT TO FED. R. CIV. P. 60(B) AND FED. R. BANKR. P. 9024 VACATING, IN PART, (I) STIPULATION AND ORDER MODIFYING AUTOMATIC STAY, AND (II) AMENDED STIPULATION AND ORDER RESOLVING CONDITIONS AND RELATED RELIEF* (related document(s)169, 170) filed by Andrea Fischer on behalf of Investment Properties of America, LLC, Gerard A. McHale, Jr.. (Fischer, Andrea) (Entered: 06/24/2008) |
| 06/24/2008 | 189 | Declaration *of Gerard A. McHale, Jr* (related document(s)169, 170) filed by Andrea Fischer on behalf of Investment Properties of America, LLC, Gerard A. McHale, Jr.. with hearing to be held on |

| | | |
|---|---|---|
| | | 6/25/2008 at 02:00 PM at Courtroom 501 (MG) (Fischer, Andrea) (Entered: 06/24/2008) |
| 06/24/2008 | 190 | Declaration *Supplement Declaration of Alan M. Herbst* (related document(s)169, 170, 188, 183) filed by Andrea Fischer on behalf of Investment Properties of America, LLC, Gerard A. McHale, Jr.. with hearing to be held on 6/25/2008 at 02:00 PM at Courtroom 501 (MG) (Fischer, Andrea) (Entered: 06/24/2008) |
| 06/24/2008 | 191 | Declaration *Robert W. Sadowski* (related document(s)169, 170, 188, 183) filed by Andrea Fischer on behalf of Investment Properties of America, LLC, Gerard A. McHale, Jr.. with hearing to be held on 6/25/2008 at 02:00 PM at Courtroom 501 (MG) (Fischer, Andrea) (Entered: 06/24/2008) |
| 06/24/2008 | 192 | Declaration *J. Benjamin Warren, Jr.* (related document(s)169, 170, 188, 183) filed by Andrea Fischer on behalf of Investment Properties of America, LLC, Gerard A. McHale, Jr.. with hearing to be held on 6/25/2008 at 02:00 PM at Courtroom 501 (MG) (Fischer, Andrea) (Entered: 06/24/2008) |
| 06/24/2008 | 193 | Application to Employ Alan M. Herbst as Energy Analyst filed by Andrea Fischer on behalf of Investment Properties of America, LLC, Gerard A. McHale, Jr.. (Attachments: # 1 Exhibit A - Proposed Order# 2 Exhibit B - Herbst Declaration# 3 Exhibit 1 - Herbst CV# 4 Exhibit C - Herbst Retention Letter) (Fischer, Andrea) (Entered: 06/24/2008) |
| 06/25/2008 | 194 | Certificate of Service (related document(s)190, 189, 188, 192, 191) filed by Andrea Fischer on behalf of Investment Properties of America, LLC, Gerard A. McHale, Jr.. (Fischer, Andrea) (Entered: 06/25/2008) |
| 06/25/2008 | 195 | Letter /*"Schedule A" - annexed document to Notice of Abandonment [regarding vehicles]* (related document(s)176) filed by Jonathan L. Flaxer on behalf of Gerard A. McHale, Jr.. (Flaxer, Jonathan) (Entered: 06/25/2008) |
| 07/01/2008 | 196 | Notice of Proposed Order *Notice of Motion for an Order Authorizing the Sale of Certain Corporate Condominium Units Located in Trumbull, Connecticut Pursuant to 11 U.S.C. 363(b)(1) and 105(a) of the Bankruptcy Code* filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with hearing to be held on 7/23/2008 at 10:00 AM at Courtroom 501 (MG) Objections due by 7/18/2008, (Flaxer, Jonathan) (Entered: 07/01/2008) |
| 07/01/2008 | 197 | Motion to Authorize *Motion for an Order Pursuant to 11 U.S.C. 105 (a), 363(b)(1) and 363(f) of the Bankruptcy Code Authorizing the Sale* |

| | | |
|---|---|---|
| | | *of Certain Corporate Condominium Units Located in Trumbull, Connecticut* (related document(s)196) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. with hearing to be held on 7/23/2008 at 10:00 AM at Courtroom 501 (MG) Responses due by 7/18/2008, (Attachments: # 1 Exhibit A - Proposed Order# 2 Exhibit B - Agreement of Sale# 3 Exhibit C - Declaration of David S. Gorbach) (Flaxer, Jonathan) (Entered: 07/01/2008) |
| 07/02/2008 | 198 | Affidavit of Service (related document(s)196, 197) filed by Jonathan L. Flaxer on behalf of Investment Properties of America, LLC. (Flaxer, Jonathan) (Entered: 07/02/2008) |
| 07/02/2008 | | Adversary Case 08-01138 Closed. This Adversary Proceeding is Closed Subject to the Filing of a Notice of Appeal Within Ten (10) Days of the Entry of the Order Terminating this Adversary Proceeding. (Lopez, Mary) (Entered: 07/02/2008) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 07/03/2008 14:35:27 | | | |
| **PACER Login:** | ge0041 | **Client Code:** | 06136.100 |
| **Description:** | Docket Report | **Search Criteria:** | 07-13621-mg Fil or Ent: filed To: 7/3/2008 Doc From: 0 Doc To: 99999999 Format: HTML |
| **Billable Pages:** | 17 | **Cost:** | 1.36 |

# Exhibit 2

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re:                                                              Chapter 11

THE 1031 TAX GROUP, LLC, *et al.*,                                  Case No. 07-B-11448 (MG)
                                                                    Jointly Administered
    Debtors.

-------------------------------------------------------------x

GERARD A. McHALE, Jr., not individually but
solely in his capacity as Chapter 11 trustee for
THE 1031 TAX GROUP, LLC, *et al.*,

                          Plaintiff,

            -v-                                                     Adv. Pro. No. 08-01034 (MG)

EDWARD H. OKUN,

                          Defendant.

-------------------------------------------------------------x

### FINAL AND PERMANENT INJUNCTION AND JUDGMENT

Upon consideration of all of the pleadings and papers filed herein and the

testimony and argument at a hearing held on February 11, 2008, and upon the findings of fact

and conclusions of law, pursuant to Rule 52, Fed. R.Civ.P., set forth by the Court in the record at

the conclusion of the hearing, it is hereby:

**ORDERED** that defendant Edward H. Okun and any and all persons in active concert

with Edward H. Okun in possession of the following property ("Property"), or in active concert

with Edward H. Okun, are permanently enjoined and directed to permit Gerard A. McHale, Jr.,

solely in his capacity as the Chapter 11 Trustee of The 1031 Tax Group, LLC, *et al.,* (the

"Trustee") to take and maintain permanent ownership, possession, and control of the Property, to

415263.1

execute such documents, and to otherwise cooperate with the Trustee in carrying out this

injunction:

PROPERTY:

1.    2006 ROLLS ROYCE – PHANTOM (VIN # SCA1S68476UX08067);

2.    2005 BENTLEY – CONTINENTAL (VIN# SCBCR63W55C024552);

3.    2003 PORSCHE 911 TURBO (VIN# WP0AB299X3S686858);

4.    2005 LAMBORGHINI GALLARDO (VIN# ZHWGU22N96LA03777);

5.    One 16 feet Morin wooden boat with trailer; and

6.    Two Yamaha Wave-Runners.

and it is further

**ORDERED, ADJUDGED AND DECREED** that the motion of defendant Okun, filed

pursuant Rule 60(b), Fed.R.Civ.P., seeking (1) to vacate or otherwise obtain relief from an Order

of this Court entered October 26, 2007, which Order approved an agreement, dated October 11,

2007, (the "Transfer Agreement"), or (2) in any other way to obtain relief from, or to excuse his

performance under, the Transfer Agreement is denied.

Dated:    February 13, 2008
          New York, New York

SO ORDERED.

/s/ Martin Glenn
Martin Glenn, U.S. Bankruptcy Judge

# Exhibit 3

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>INVESTMENT PROPERTIES OF AMERICA, LLC, et al.<br><br>Debtors. | Chapter 11<br>Case No. 07-13621 (MG)<br><br>(Jointly Administered)<br><br>DECLARATION OF<br>KEVIN W. MURPHY |

KEVIN W. MURPHY, pursuant to 28 U.S.C. § 1746, declares, under penalty of perjury, as follows:

1.    I am chief executive officer of Boardwalk Management Co., Inc. ("Boardwalk"), the acting property manager for certain of the properties under the control of Gerard A. McHale, Jr., as chapter 11 trustee (the "Trustee"), including the approximately one million square foot warehouse facility located in Shreveport, Louisiana (the "Shreveport Facility") which I am told by the Trustee's counsel is owned by debtor IPofA Shreveport Industrial Park, LLC ("IPofA Shreveport"). I submit this declaration, at the request of the Trustee, in response to the motion of Cordell Funding, LLLP and Cordell Consultants Inc. (individually and collectively, "Cordell") for dismissal, lifting of the automatic stay and/or adequate protection. In particular, I respond to the assertions concerning conditions at the Shreveport Facility made by Gray Beverley in his affidavit submitted by Cordell in connection with its motion.

### Boardwalk's and My Background

2.    Boardwalk is a professional management and leasing company that manages properties throughout the United States. Boardwalk's two principals are me and Michael D. Salzman. Mr. Salzman and I collectively have more than 25 years of experience in

*411519.3*

the real estate industry, particularly with respect to shopping centers. Our experience includes real estate acquisition, disposition, development, financing, construction, management and leasing.

3.    Prior to co-founding Boardwalk, I was Director of Leasing for the Pyramid Companies, one of the largest private developers of shopping centers in the country. In that capacity, I oversaw all leasing activities involving Pyramid's then 17 shopping center portfolio, which, at the time, encompassed 21 million square feet of mall property across New York and Massachusetts. Before being elevated to Director of Leasing, I was Pyramid's top performing Senior Leasing Representative for four straight years. In total, I worked for Pyramid, in various leasing-related functions, for eight years.

4.    Boardwalk's co-founder, Mr. Salzman, also is a former employee of the Pyramid Companies, where, among the positions he held during his six year tenure there, he served as Senior Financial Officer and, in that role, participated in over $900 million of financing and re-financing transactions. Before being appointed Senior Financial Officer, Mr. Salzman was General Manager of a number of Pyramid's properties. Between working at Pyramid and co-founding Boardwalk, Mr. Salzman was Senior Leasing Director for National Programs at the Mills Corporation, a major national developer of mall properties. Mr. Salzman's duties at Mills included developing and implementing a national leasing program, which resulted in a 98% occupancy rate across Mills' 28 million square foot portfolio. Mr. Salzman also was responsible for planning the leasing programs for properties then being developed by Mills in Toronto, Canada and Madrid, Spain.

*Boardwalk's Involvement with the IPofA Debtors' Properties*

5.    In or around December 2006, Boardwalk was engaged by certain of Ed

Okun's companies to serve as property manager and leasing company, through a sub-

management agreement, for three mall properties owned by entities under his control: the West

Oaks Mall in Houston, Texas, the Central Mall in Salina, Kansas and the Richmond Square Mall

in Richmond, Indiana.

6.    In early October 2007, Okun's companies sought to broaden the scope of

Boardwalk's engagement, and signed Boardwalk to contracts for the provision of management

and leasing services in connection with his industrial property portfolio, including the Shreveport

Facility and the office and industrial complex located in Columbus, Ohio referred to as

"Columbus Works." Boardwalk had just signed the contracts to provide those services when we

learned that Okun had transferred his interest in all of those properties to the Trustee.

7.    Boardwalk has been asked by the Trustee to provide management and

leasing services for those two properties and continued management and leasing services for

Central Mall in Salina, Kansas. Boardwalk and the Trustee's counsel have been negotiating

contracts pertaining to Boardwalk's engagement as to those properties, and I understand that,

upon execution of those contracts, they will be presented to the Court for approval.

*The Shreveport Facility*

8.    As the acting property sub-manager for the Shreveport Facility, I am

familiar with its condition, its maintenance, its rent roll and its operating expenses. I speak

several times per week with the onsite property manager, Terrence Jefferson, regarding the

property's maintenance. I have reviewed leases and created current accounting records for the

property. I have spoken numerous times with Ted Kantrow, who was, prior to the petition date,

and who continues, post-petition as I understand it, to carry out certain leasing functions concerning the property. Based on my discussions with the Trustee and/or his advisors, it is my understanding that the debtor IPofA Shreveport's objective is to maintain the property while it is marketed and sold as soon as practicable, within the next several months.

9.      The Shreveport Facility is a nearly one million square foot warehouse building situated on nearly 200 acres of land in Shreveport, Louisiana. The facility, which is mostly vacant, is occupied by two types of tenants. There are tenants, such as Unipak Logistics and Land O' Lakes Purina Feed, that lease the facility for warehouse space. And there are tenants that utilize the facility for film and television production. The film and television production tenants typically lease the space on "as needed" (one to few month) basis, but pay rents that are several times higher than the rents paid for warehouse space.

10.      Like other properties acquired by Okun, the Shreveport Facility was not being adequately maintained prior to Boardwalk's involvement. In fact, when Boardwalk was asked by the Trustee to act as property manager for the property, the Shreveport Facility was largely in a state of neglect (this is why we were asked to step in). We were told that on site personnel were going to quit if they were not paid, which they had not been. The janitor did quit. And the trash had not been collected from the premises for some time.

11.      At the Trustee's direction, Boardwalk has acted quickly to stabilize the property. Additional staff was hired. Trash collection bills have been brought current, and trash is being collected. Property insurance has been paid. And a concerted, and adequate, effort has been made to maintain the property.

12.      Based on the leases and accounting records available to us (almost no accounting records are available), our extensive interviews of Terrence Jefferson, who had been

the onsite property manager prior to IPofA Shreveport's bankruptcy filing, and our discussions

with Ted Kantrow regarding expected television and film production leasing activity, Boardwalk

has prepared an operating budget for the Shreveport Facility, which is attached as Exhibit A.

The budget assumes, as mentioned above, that the property is going to be liquidated as soon as

practicable (within the year) and operated under normal conditions. Accordingly, only those

operating and capital expenses needed to maintain the property through a sale have been

projected, and all rents are assumed to be used solely as operating capital. Budget projections

may changed based on unpredictable weather patterns and other unforeseen events.

        13.    As the Court can see, Boardwalk projects a monthly net operating deficit

at the property. Nevertheless, despite the deficit, it is my opinion that the property can be

maintained for approximately six (6) months (based on projected income, limited equipment

failure, stable weather conditions and meeting leasing expectations) while it is marketed and

sold, and that the property's value can be realized.

*Rebuttal of Beverley's Assertions Concerning the Shreveport Facility's Condition*

        14.    I have read Mr. Beverley's affidavit concerning his one visit to the

Shreveport Facility in mid-December 2007. As I describe in more detail below, the conditions

described by Mr. Beverley in his affidavit either have been addressed, existed prior to IPofA

Shreveport's bankruptcy filing and have not materially changed since the filing and/or have been

substantially overstated by Mr. Beverley.

        15.    Mr. Beverley states that the "Property requires significant infrastructure

improvements, repairs and controls after what appears to have been a period of neglect, and lack

of local control and oversight." I do not disagree with Mr. Beverley that the Shreveport Facility

suffered a period of neglect. Nor do I dispute that certain capital expenditures would be needed

in order to maximize the long-term value of the property. But the period of neglect at the property, which was in a state of neglect even before Boardwalk's involvement, has been rectified, and the property is now being adequately maintained. As for capital expenditures, as reflected in my budget, no significant capital expenditures, to my knowledge, are required in order to maintain the property through a near-term sale. I have identified several capital expenditures that will need to addressed, however, in the future.

16.    Mr. Beverly asserts that the building roof is "in serious need of repair or replacement" and that "[s]ignificant leaks and water pooling throughout the building were observed." The building roof is approximately 45 years old. It eventually will need to be replaced or substantially repaired. But, in the short term, no such replacement or repair is needed. The roof can continue to be maintained through a reasonable sale period in the same fashion as it had been maintained prior to IPofA Shreveport's bankruptcy filing -- by patching and repairing it on an as needed basis. There has been no material change, to my knowledge, in the condition of the roof since IPofA Shreveport filed for bankruptcy protection in November 2007. Based on conversations with Terrence Jefferson, currently, there is no significant leaking issue. There are multiple small leaks in the roof that have been aggravated recently by fluctuating weather conditions in the region. Shreveport has experienced several periods this winter where a stretch of cold weather has been followed immediately by a stretch of warm weather. The resulting contraction and expansion of the roof membrane has caused leaks. When the weather warms, the roof will be patched as needed. The few leaks that exist, however, do not affect any tenant space. Based on conversations with Terrance Jefferson and to my knowledge, no tenant is complaining about the state of the roof. Nor is any withholding rent on account of the roof.

17.    Mr. Beverley complains that, during his visit, the "building was left unlocked and no security was observed." While that may have been the case during the visit, it also was the practice prior to the filing of the petition. To my knowledge, there has never been any security personnel employed at the premises. Nor, to my knowledge, have there been incidents of theft, vandalism or tampering that would necessitate the presence of full-time or even part-time security personnel. Nevertheless, since Boardwalk began acting as property manager for the Shreveport Facility, we have taken steps to improve security at the building. We now have personnel on site 24 hours per day. While such personnel do not serve as security guards per se, they are charged with monitoring the premises. We also have begun discussions with building tenants regarding implementing a badge system, whereby the tenants' personnel would wear a badge to identify them as authorized visitors to the premises. In short, security conditions have improved, not worsened, since IPofA Shreveport filed for bankruptcy protection.

18.    Mr. Beverley states, without revealing his source of information, that unidentified "[c]onsultants previously engaged to market and lease the Property were forced to pay for removal of garbage left piled up at the Property and to refill such basics as toilet paper for the bathrooms and light bulbs." Notably, Mr. Beverley does not state that, during his visit in mid-December, he observed any unseemly pile up of garbage or shortage of toilet paper or light bulbs. As mentioned above, Boardwalk has rectified any garbage removal problem, and trash is now being regularly collected from the premises. Boardwalk is adequately maintaining the property, and any tenant complaints that I have been made aware of concerning the building's basic services, have been taken care of.

19.    Mr. Beverley, who does not identify his knowledge and expertise concerning HVAC systems, states that "the HVAC system is not being property maintained."

He does not identify any problems with the building's HVAC system, other than to assert that the "boiler is not being monitored 24 hours a day, raising safety and operational concerns." I am not aware of any problems with the building's HVAC system. Utility expenses are being paid, and the HVAC system is functioning normally. As stated above, the building now has personnel on site 24 hours per day monitoring, among other things, the building systems. To the extent any problem with the HVAC surfaces, building personnel are poised to respond to the problem immediately.

20.    Mr. Beverley states that, during his visit, he observed "only two maintenance personnel on site," both of whom appeared to work a day shift only. He also states that the "Property appeared to have only 1 janitor, who reportedly has quit." In fact, the number of personnel working at the Shreveport Facility is now adequate. There are two maintenance personnel, and there is no reason for employing more such persons given the nature and limited occupancy of the building. In addition, Boardwalk has replaced the janitor with an employee who performs multiple functions, including janitorial, and has adjusted shifts such that there is now personnel on site 24 hours per day.

21.    Mr. Beverley's final salvo is that, in his view, "there is insufficient cash flow to support the necessary costs of maintenance." The attached budget reflects that there exists and is projected to be an operating deficit at the premises. But that deficit, in my view, notwithstanding any major unforeseen expenses and meeting income projections, will not prevent IPofA Shreveport from maintaining the property during a reasonable sale period.

***Columbus Works and Central Mall***

22.    I understand that, in addition to the Shreveport Facility, Cordell has some sort of interest in, and is seeking some type of relief from the Court with respect to, the

Columbus Works and Central Mall properties, for both of which Boardwalk is acting as property sub-manager.    Based on our review of leases, accounting records and interviews of on site property managers, Boardwalk has prepared operating budgets for those two properties -- again, on the assumption that the properties are being managed for the purpose of marketing and selling them as soon as practicable.    I attach as Exhibit B the operating budget for Columbus Works and as Exhibit C the operating budget for Central Mall.

      23.     Both Columbus Works (which is a mixed use property that is largely occupied by Lucent Technologies) and Central Mall (a shopping center) are generating a positive Net Operating Income, and projected to continue generating through the end of this year, an operating surplus. The properties are being adequately maintained, and their value is being preserved pending a sale in the relatively near future.    There are significant 2007 related expense issues associated with both projects and those expenses have not been addressed in the budget projections.  Any unpaid expenses from 2007 that in the future may need to be paid from 2008 cash flow may result in significant adjustment to the attached budgets.  Additionally, there may be a significant reconciliation payment due to the tenant at Columbus Works that has not been included in the budget.

      I declare under penalty of perjury that the foregoing is true and correct to be best of my knowledge executed this 1st day of February, 2008.

                         /s/ Kevin W. Murphy
                         KEVIN W. MURPHY

# Exhibit A

Shreveport Industrial Park
2008 Income/Expense Budget

| Description | January | February | March | April | May | June | July | August | September | October | November | December | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | | | | | | | |
| UNIPAK LOGISTICS RENT | 20,105.50 | 20,105.50 | 20,105.50 | 20,105.50 | 20,105.50 | 20,105.50 | 20,105.50 | 20,105.50 | 20,105.50 | 20,105.50 | 20,105.50 | 20,105.50 | 241,266.00 |
| LAND LEASE - UNFURNISHED RENT | 16,461.90 | 16,461.90 | 16,461.90 | 16,461.90 | 16,461.90 | 16,461.90 | 16,461.90 | 16,461.90 | 16,461.90 | 16,461.90 | 16,461.90 | 16,461.90 | 197,542.80 |
| PHASE ONE FILMS SHREVEPORT LLC | 16,323.84 | | | | | | | | | | | | 16,323.84 |
| HANNA MONTANA | | | | | | | | | | | | | 78,000.00 |
| SUNCOL LIVES RENT | 13,126.00 | 13,126.00 | 13,126.00 | | | | | | | | | | 39,378.00 |
| MAGNOLIA LOFTS RENT | 4,250.00 | 4,250.00 | 4,250.00 | 4,250.00 | 4,250.00 | 4,250.00 | | | | | | | 9,920.00 |
| TEKKEN PRODUCTIONS | 8,500.00 | 12,000.00 | 12,000.00 | 12,000.00 | | | | | | | | | 44,500.00 |
| GLONDOU CASTING | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 9,020.00 |
| HI-BRO CARS | | | | | | | | | | | | | 115,000.00 |
| SOUL MAN | | | | | | | | | | | | | 33,000.00 |
| RENEWAL AND LEASES IN PIPELINE | 20,000.00 | | | | | | | | | | | | 180,000.00 |
| PULSE / FEAST - MIDNIGHT MAN | | | | | | | | | | | | | 70,000.00 |
| WINDMILL STORAGE CONTRACT | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | | | | | | | 48,000.00 |
| CROSSROADS RENT | | | | | | | | | | | | | |
| **TOTAL INCOME** | 107,517.24 | 122,933.40 | 137,693.40 | 124,562.40 | 163,567.40 | 139,567.40 | 120,317.40 | 49,317.40 | 49,317.40 | 49,317.40 | 49,317.40 | 49,317.40 | 1,162,570.64 |
| | | | | | | | | | | | | | |
| **OPERATING EXPENSES** | | | | | | | | | | | | | |
| **UTILITIES** | | | | | | | | | | | | | |
| Electric - Int | 35,000.00 | 42,500.00 | 43,500.00 | 42,500.00 | 35,000.00 | 35,000.00 | 43,000.00 | 43,000.00 | 43,000.00 | 35,000.00 | 35,000.00 | 35,000.00 | 466,500.00 |
| Gas, Air, CANISTER FOR BOILER IGNITION | 30.00 | 60.00 | 60.00 | 60.00 | 80.00 | 80.00 | | | | 80.00 | 60.00 | 60.00 | 940.00 |
| Propane - Used in Forklift | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 960.00 |
| Water - Sewer | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 42,000.00 |
| Heating Oil | 30,000.00 | 25,000.00 | 15,000.00 | 7,500.00 | | | | | | | | | 77,000.00 |
| **TOTAL UTILITIES** | 68,610.00 | 71,140.00 | 61,140.00 | 53,580.00 | 38,580.00 | 38,580.00 | 46,580.00 | 46,580.00 | 46,580.00 | 38,580.00 | 38,640.00 | 38,640.00 | 587,200.00 |
| | | | | | | | | | | | | | |
| **INSURANCE** | | | | | | | | | | | | | |
| General Liability - Int | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 8,400.00 |
| Umbrella - Int | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 3,600.00 |
| Automobile - Int | | | | | | | | | | | | | |
| Property | | | | | | | | | | | | | |
| Fire & Extended - Ext | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 1,800.00 |
| Workers Compensation - Int | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 3,250.00 | 39,000.00 |
| Workers Compensation - Ext | | | | | | | | | | | | | |
| **TOTAL INSURANCE** | 4,400.00 | 4,400.00 | 4,400.00 | 4,400.00 | 4,400.00 | 4,400.00 | 4,400.00 | 4,400.00 | 4,400.00 | 4,400.00 | 4,400.00 | 4,400.00 | 52,800.00 |
| | | | | | | | | | | | | | |
| **IN-HOUSE SECURITY** | | | | | | | | | | | | | |
| Payroll - Inclusive of benefits & taxes | 2,600.00 | 1,702.00 | 1,702.00 | 2,600.00 | 1,702.00 | 1,702.00 | 1,702.00 | 1,702.00 | 1,702.00 | 1,702.00 | 1,702.00 | 2,600.00 | 24,016.00 |
| **TOTAL IN-HOUSE SECURITY** | 2,600.00 | 1,702.00 | 1,702.00 | 2,600.00 | 1,702.00 | 1,702.00 | 1,702.00 | 1,702.00 | 1,702.00 | 1,702.00 | 1,702.00 | 2,600.00 | 24,016.00 |
| | | | | | | | | | | | | | |
| **IN-HOUSE JANITORIAL** | | | | | | | | | | | | | |
| Payroll - Inclusive of benefits & taxes | 2,600.00 | 1,702.00 | 1,702.00 | 2,600.00 | 1,702.00 | 1,702.00 | 2,600.00 | 1,702.00 | 1,702.00 | 2,600.00 | 1,702.00 | 1,702.00 | 24,016.00 |
| Cleaning Supplies | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 9,000.00 |
| Supplies | 3,350.00 | 2,452.00 | 2,452.00 | 3,350.00 | 2,452.00 | 2,452.00 | 3,350.00 | 2,452.00 | 2,452.00 | 3,350.00 | 2,452.00 | 2,452.00 | 33,016.00 |
| **TOTAL IN-HOUSE JANITORIAL** | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| CONTRACT JANITORIAL | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 7,200.00 |
| Trash Removal | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 6,000.00 |
| Pest Control | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 13,200.00 |
| **TOTAL CONTRACT JANITORIAL** | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| **CONTRACT LANDSCAPING** | | | | | | | | | | | | | |
| Service/Labor - Ext | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | | | 40,000.00 |
| Supplies | | | | | | | | | | | | | |
| **TOTAL CONTRACT LANDSCAPING** | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | | | 40,000.00 |
| | | | | | | | | | | | | | |
| **MANAGEMENT OFFICE PERSONNEL** | | | | | | | | | | | | | |
| Payroll - Inclusive of benefits & taxes | 6,240.00 | 4,992.00 | 4,992.00 | 6,240.00 | 4,992.00 | 4,992.00 | 6,240.00 | 4,992.00 | 4,992.00 | 6,240.00 | 4,992.00 | 4,992.00 | 64,896.00 |
| **TOTAL MGMT OFFICE PERSONNEL** | 6,240.00 | 4,992.00 | 4,992.00 | 6,240.00 | 4,992.00 | 4,992.00 | 6,240.00 | 4,992.00 | 4,992.00 | 6,240.00 | 4,992.00 | 4,992.00 | 64,896.00 |
| | | | | | | | | | | | | | |
| **OTHER GENERAL & ADMINISTRATIVE** | | | | | | | | | | | | | |
| Travel & Entertainment | | | | | | | | | | | | | |
| Meals - Travel & Ent. | | | | | | | | | | | | | |
| Postage & Postage Machine | | | | | | | | | | | | | |
| Shipping & Delivery Expense | | | | | | | | | | | | | |
| Copy Machine | | | | | | | | | | | | | |
| Telephone & Cell Phone Service | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 1,200.00 |
| Office Supplies | | | | | | | | | | | | | |
| Employee Recruitment | | | | | | | | | | | | | |
| Computer Services & Fees | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 1,200.00 |
| Equipment Rental | | | | | | | | | | | | | |
| Office Furniture | | | | | | | | | | | | | |
| Management Travel | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 2,400.00 |
| Licenses, Dues & Subscriptions | | | | | | | | | | | | | |
| **TOTAL OTHER GENERAL & ADMINISTRATIVE** | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| **REPAIRS & MAINTENANCE** | | | | | | | | | | | | | |
| Payroll - Inclusive of benefits & taxes | 11,440.00 | 9,152.00 | 9,152.00 | 11,440.00 | 9,152.00 | 9,152.00 | 11,440.00 | 9,152.00 | 9,152.00 | 11,440.00 | 9,152.00 | 9,152.00 | 118,576.00 |

BoardWalk Management Co., Inc.

Shreveport Industrial Park
2008 Income/Expense Budget

| Description | January | February | March | April | May | June | July | August | September | October | November | December | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Plumbing Repairs & Supplies - Int | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 12,000.00 |
| HVAC Repairs & Supplies - Int | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 36,000.00 |
| Fire System Repairs & Supplies - Int | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 3,600.00 |
| Roof/Ceiling - Int | 4,000.00 | 4,000.00 | 4,000.00 | 1,000.00 | | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 24,000.00 |
| Electrical - Hardware / Motors | 3,550.00 | | 300.00 | 3,500.00 | | 3,500.00 | | | 3,500.00 | | 3,500.00 | | 17,500.00 |
| Electrical - Supplies / Bulbs / Ballasts | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 3,600.00 |
| Fencing - Int | | | | | | 250.00 | | | 250.00 | | 250.00 | 250.00 | 1,000.00 |
| Doors - Closers | | 400.00 | | 400.00 | | 400.00 | | 400.00 | | 400.00 | | 400.00 | 2,400.00 |
| Equipment Int - R&M - LIFT | | 500.00 | | | | | | | | | | | 500.00 |
| Equipment Ext - R&M/Maint | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 1,200.00 |
| **TOTAL REPAIRS & MAINTENANCE** | 23,640.00 | 18,752.00 | 18,102.00 | 21,040.00 | 14,852.00 | 19,002.00 | 17,140.00 | 15,252.00 | 18,602.00 | 18,940.00 | 19,352.00 | 16,500.00 | 220,776.00 |
| | | | | | | | | | | | | | |
| **REAL ESTATE TAXES** | | | | | | | | | | | | | |
| Prior Year Taxes (Pro Rata from 11/15/07 - 12/31/07) | 16,145.97 | | | | | | | | | | | | 16,145.97 |
| 2008 Real Estate Taxes | | | | | | | | | | | | 174,528.00 | 174,528.00 |
| Personal Property Taxes | | | | | | | | | | | | | |
| Legal/Consultant Fees | | | | | | | | | | | | | |
| **TOTAL REAL ESTATE TAXES** | 16,145.97 | | | | | | | | | | | 174,528.00 | 174,528.00 |
| | | | | | | | | | | | | | |
| **MANAGEMENT & PROF FEES** | | | | | | | | | | | | | |
| Management Fees - IPOPA | 16,666.67 | 16,666.67 | 16,666.67 | 16,666.67 | 16,666.67 | 16,666.67 | 16,666.67 | 16,666.67 | 16,666.67 | 16,666.67 | 16,666.67 | 16,666.67 | 200,000.04 |
| Management Fees - Other | | | 500.00 | | 500.00 | | | 500.00 | | 500.00 | | | 2,000.00 |
| Other Professional Fees | | | | | | | | | | | | | |
| **TOTAL MANAGEMENT & PROF FEES** | 17,166.67 | 16,666.67 | 17,166.67 | 16,666.67 | 17,166.67 | 16,666.67 | 16,666.67 | 17,166.67 | 16,666.67 | 16,666.67 | 16,666.67 | 16,666.67 | 202,000.04 |
| | | | | | | | | | | | | | |
| **TOTAL EXPENSES** | 143,452.64 | 124,001.67 | 116,954.67 | 115,176.67 | 104,414.67 | 94,034.67 | 102,970.67 | 99,742.67 | 101,694.67 | 95,721.67 | 89,474.67 | 292,080.67 | 1,414,832.04 |
| | | | | | | | | | | | | | |
| **NET INCOME** | (93,935.40) | 1,268.73 | 21,438.73 | 10,390.73 | 71,122.73 | 45,472.73 | 26,539.73 | 30,215.27 | (32,337.27) | (46,461.27) | (212,763.27) | (212,763.27) | (245,321.40) |

▓ = Pending income provided from Ted Kantrow and Bob Davenport

- All budget numbers provided are based on conversations with on-site manager (Terrance Jefferson) and prior year numbers, if available.
- Expense and revenue numbers may vary per period based on timing of payments and signing of proposed deals.

| Capital Improvements Estimates | |
|---|---|
| FIRE SYSTEM REPAIR | 6,000.00 |
| REPLACE CONDENSATE PUMP | 40,000.00 |
| HVAC (SEVEN MOTORS IN NEED REPLACEMENT) | 17,500.00 |
| ELEVATOR REPAIR | 8,000.00 |
| NEW ROOF - ROOF IS 40 YEARS OLD | 4,500,000.00 |

BoardWalk Management Co., Inc.

# Exhibit B

**ACTUALS**
**Columbus Works**
**October 2007 - December 2007**

| Account Name | Oct | Nov | Dec | Total |
|---|---|---|---|---|
| **OPERATING INCOME** | | | | |
| Income From Alcatel-Lucent Rent/CAM Payment | 498,250.66 | 498,250.66 | 498,250.66 | 1,494,751.98 |
| Reimbursement - Electric/Gas/Water | 156,408.56 | 448,220.61 | 310,003.22 | 914,632.39 |
| **TOTAL OPERATING INCOME** | 654,659.22 | 946,471.27 | 808,253.88 | 2,409,384.37 |
| | | | | |
| **INSURANCE** | | | | |
| General Liability | 0.00 | 0.00 | 0.00 | 0.00 |
| Umbrella | 0.00 | 0.00 | 0.00 | 0.00 |
| Automobile | 0.00 | 0.00 | 0.00 | 0.00 |
| Fire & Property | 0.00 | 0.00 | 0.00 | 0.00 |
| Finance Charge | 0.00 | 0.00 | 0.00 | 0.00 |
| Workers Compensation | 0.00 | 0.00 | 0.00 | 0.00 |
| **TOTAL INSURANCE** | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | |
| **CONTRACT SERVICES** | | | | |
| Landscaping | 0.00 | 0.00 | 0.00 | 0.00 |
| Snow Removal | 0.00 | 0.00 | 1,843.50 | 1,843.50 |
| **TOTAL CONTRACT LANDSCAPING** | 0.00 | 0.00 | 1,843.50 | 1,843.50 |
| | | | | |
| **PERSONNEL** | | | | |
| Payroll | 44,161.03 | 89,062.14 | 90,720.91 | 223,944.08 |
| Taxes | | | | 0.00 |
| Benefits | | | | 0.00 |
| Payroll Processing | | | | 0.00 |
| **TOTAL PERSONNEL** | 44,161.03 | 89,062.14 | 90,720.91 | 223,944.08 |
| | | | | |
| **GENERAL ADMINISTRATIVE** | | | | |
| Management Fees (BOARDWALK) | 26,666.67 | 16,666.67 | 16,666.67 | 60,000.01 |
| Engineering Services | 0.00 | 0.00 | 0.00 | 0.00 |
| Postage & Shipping | 0.00 | 0.00 | 129.07 | 129.07 |
| Copy Machine | 0.00 | 0.00 | 0.00 | 0.00 |
| Cell Phone Service | 0.00 | 0.00 | 0.00 | 0.00 |
| Office Supplies | 0.00 | 0.00 | 0.00 | 0.00 |
| Computer Service | 0.00 | 0.00 | 0.00 | 0.00 |
| Licenses & Dues | 0.00 | 0.00 | 0.00 | 0.00 |
| Management Travel | 0.00 | 0.00 | 0.00 | 0.00 |
| Traffic Signal | 0.00 | 0.00 | 0.00 | 0.00 |
| Miscellaneous Administrative Expenses | 0.00 | 0.00 | 0.00 | 0.00 |
| **TOTAL OTHER GENERAL & ADMINISTRATIVE** | 26,666.67 | 16,666.67 | 16,795.74 | 60,129.08 |
| | | | | |
| **REPAIRS & MAINTENANCE** | | | | |
| Plumbing Repairs & Supplies | 0.00 | 0.00 | 5,218.06 | 5,218.06 |
| Electrical Repairs & Maintenance | 0.00 | 0.00 | 0.00 | 0.00 |
| HVAC Repairs & Supplies | 0.00 | 7,711.35 | 18,722.20 | 26,433.55 |
| Fire System Repairs & Supplies | 0.00 | 0.00 | 4,869.67 | 4,869.67 |
| Windows/Doors | 0.00 | 0.00 | 0.00 | 0.00 |
| Cranes/Lifts Inspections | 0.00 | 0.00 | 0.00 | 0.00 |
| Elevator/Escalator | 0.00 | 0.00 | 0.00 | 0.00 |
| Roof Repairs | 0.00 | 0.00 | 0.00 | 0.00 |
| Misc. Repairs & Maintenance | 0.00 | 0.00 | 0.00 | 0.00 |
| **TOTAL REPAIRS & MAINTENANCE** | 0.00 | 7,711.35 | 28,809.93 | 36,521.28 |
| | | | | |
| **REAL ESTATE TAXES** | | | | |
| Current Real Estate Taxes | 0.00 | 0.00 | 0.00 | 0.00 |
| **TOTAL REAL ESTATE TAXES** | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | |
| Monthly Cam Expense | 70,827.70 | 113,440.16 | 138,170.08 | 322,437.94 |
| | | | | |
| **UTILITIES  (100% Reimbursable)** | | | | |
| Gas | 0.00 | 0.00 | 162,753.65 | 162,753.65 |
| Electric | 361,458.67 | 182,304.73 | 169,508.83 | 733,272.23 |
| Water | 0.00 | 14,630.88 | 0.00 | 14,630.88 |
| **TOTAL UTILITIES** | 361,458.67 | 196,935.61 | 332,262.48 | 910,656.76 |
| **TOTAL ALL EXPENSES** | 452,286.37 | 310,376.77 | 470,432.56 | 1,233,094.70 |
| | | | | |
| **NET OPERATING INCOME** | 202,372.85 | 636,095.50 | 337,821.32 | 1,176,289.67 |
| | | | | |
| **DISTRIBUTIONS** | | | | |
| SERVICER LLC  (ED OKUN) - Dist | 156,408.56 | 0.00 | 0.00 | 156,408.56 |
| SERVICER LLC  (ED OKUN) | (15,075.00) | 0.00 | 0.00 | (15,075.00) |
| SERVICER LLC  (ED OKUN) - Dist | 15,067.55 | 0.00 | 0.00 | 15,067.55 |
| SERVICER LLC  (ED OKUN) - SALINA CENTRAL MALL | (194,335.00) | 0.00 | 0.00 | (194,335.00) |
| SERVICER LLC  (ED OKUN) - Dist | 310.86 | 0.00 | 0.00 | 310.86 |
| **TOTAL DISTRIBUTIONS** | (37,623.03) | 0.00 | 0.00 | (37,623.03) |
| | | | | |
| **MORTGAGE PAYMENTS** | | | | |
| CORDELL | 0.00 | 195,548.00 | 195,548.00 | 391,096.00 |
| CORDELL | 0.00 | 44,452.00 | 44,452.00 | 88,904.00 |
| **TOTAL MORTGAGE PAYMENTS** | 0.00 | 240,000.00 | 240,000.00 | 480,000.00 |
| | | | | |
| **NOI AFTER DEBT SERVICE & DISTRIBUTIONS** | 239,995.88 | 396,095.50 | 97,821.32 | 733,912.70 |

# Exhibit C

**2008 - Budget Report**
**Boardwalk Management Company Inc**
**Salina Central Mall - Salina, KS**

**Consolidated Statement of Income**
**Accrual**

All monthly columns are labeled "Forecasted".

| | Jan 2008 | Feb 2008 | Mar 2008 | Apr 2008 | May 2008 | Jun 2008 | Jul 2008 | Aug 2008 | Sep 2008 | Oct 2008 | Nov 2008 | Dec 2008 | Total YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | | | | | | | |
| **REVENUE** | | | | | | | | | | | | | |
| **MINIMUM RENTS** | | | | | | | | | | | | | |
| Base Minimum Rent | 288,038 | 288,038 | 288,038 | 288,038 | 288,038 | 288,038 | 288,038 | 288,038 | 288,038 | 288,038 | 288,038 | 288,038 | 3,456,456 |
| Ground Lease Rent | 5,182 | 5,182 | 5,182 | 5,182 | 5,182 | 5,182 | 5,182 | 5,182 | 5,182 | 5,182 | 5,182 | 5,182 | 62,184 |
| Alternative Rent | 20,160 | 13,280 | 15,920 | 11,520 | 13,280 | 25,840 | 12,480 | 12,000 | 13,600 | 13,040 | 21,040 | 48,800 | 220,960 |
| **TOTAL MINIMUM RENTS** | 313,380 | 306,500 | 309,140 | 304,740 | 306,500 | 319,060 | 305,700 | 305,220 | 306,820 | 306,260 | 314,260 | 342,020 | 3,739,600 |
| **TEMPORARY TENANT RENTS** | | | | | | | | | | | | | |
| In-Line Income | 6,889 | 8,999 | 8,480 | 7,207 | 7,049 | 7,211 | 7,919 | 8,439 | 11,217 | 11,266 | 12,532 | 16,000 | 113,208 |
| Kiosk Income | 5,350 | 1,950 | 7,797 | 2,924 | 4,597 | 3,249 | 3,007 | 3,720 | 5,469 | 9,543 | 21,160 | 17,000 | 86,666 |
| Stroller | 250 | 200 | 556 | 639 | 667 | 367 | 611 | 649 | 465 | 529 | 423 | 500 | 5,884 |
| Telephone | | | | | | | | | | | | | - |
| **TOTAL TEMPORARY TENANT RENTS** | 12,489 | 11,149 | 16,833 | 10,770 | 12,313 | 10,827 | 12,437 | 12,808 | 17,179 | 21,338 | 34,115 | 33,500 | 205,768 |
| **OVERAGE RENTS** | | | | | | | | | | | | | |
| Overage Rent | | | 27,328 | | | | 15,640 | 570 | 69,223 | 1,504 | 48,123 | | 162,388 |
| **TOTAL OVERAGE RENTS** | | | 27,328 | | | | 15,640 | 570 | 69,223 | 1,504 | 48,123 | | 162,388 |
| **STRAIGHT LINE RENT** | | | | | | | | | | | | | |
| Straight Line Rent | 4,422 | 3,108 | 3,074 | 2,505 | 2,338 | 2,338 | 2,305 | 2,278 | 2,278 | 2,278 | 2,284 | 2,284 | 31,452 |
| **TOTAL STRAIGHT LINE RENT** | 4,422 | 3,108 | 3,074 | 2,505 | 2,338 | 2,338 | 2,305 | 2,278 | 2,278 | 2,278 | 2,284 | 2,284 | 31,452 |
| **TOTAL RENT REVENUE** | 330,291 | 320,757 | 356,375 | 318,015 | 321,151 | 332,225 | 336,082 | 320,876 | 395,500 | 331,360 | 398,782 | 377,794 | 4,139,198 |
| **TENANT RECOVERIES** | | | | | | | | | | | | | |
| **CAM RECOVERIES** | | | | | | | | | | | | | |
| CAM Recoveries | 2,016 | 2,016 | 2,016 | 2,016 | 2,016 | 2,016 | 2,016 | 2,016 | 2,016 | 2,016 | 2,016 | 2,016 | 24,192 |
| Fixed CAM Recoveries | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 660,000 |
| **TOTAL CAM RECOVERIES** | 57,016 | 57,016 | 57,016 | 57,016 | 57,016 | 57,016 | 57,016 | 57,016 | 57,016 | 57,016 | 57,016 | 57,016 | 684,192 |
| **RET TAX RECOVERIES** | | | | | | | | | | | | | |
| RET Recoveries | 18,776 | 18,776 | 18,776 | 59,963 | 29,073 | 29,073 | 29,073 | 29,073 | 29,073 | 29,073 | 29,073 | 29,073 | 348,874 |
| RET Recoveries - Prior Year | | | | 251,339 | | | | | | | | | 251,339 |
| **TOTAL RET TAX RECOVERIES** | 18,776 | 18,776 | 18,776 | 311,302 | 29,073 | 29,073 | 29,073 | 29,073 | 29,073 | 29,073 | 29,073 | 29,073 | 600,213 |
| **OTHER RECOVERIES** | | | | | | | | | | | | | |
| HVAC Recoveries | 27,097 | 895 | 895 | 895 | 895 | 895 | 895 | 895 | 895 | 895 | 895 | 895 | 39,932 |
| Utility Recoveries | 2,660 | 23,767 | 23,767 | 23,767 | 23,767 | 23,209 | 23,313 | 26,292 | 26,137 | 26,439 | 27,097 | 27,097 | 277,384 |
| Insurance Recoveries | 2,176 | 2,709 | 2,709 | 2,709 | 2,709 | 2,680 | 2,660 | 2,660 | 2,660 | 2,660 | 2,660 | 2,660 | 31,632 |
| Trash Removal | 1,576 | 2,225 | 2,225 | 2,225 | 2,225 | 2,176 | 2,176 | 2,176 | 2,176 | 2,176 | 2,176 | 2,176 | 25,708 |
| Sprinkler | 1,674 | 1,625 | 1,625 | 1,625 | 1,625 | 1,576 | 1,576 | 1,576 | 1,576 | 1,576 | 1,576 | 1,576 | 19,205 |
| **TOTAL OTHER RECOVERIES** | 35,173 | 31,221 | 31,221 | 31,221 | 31,221 | 30,606 | 30,620 | 33,599 | 33,444 | 33,746 | 34,394 | 34,394 | 390,862 |

**2008 - Budget Report**
**Boardwalk Management Company Inc**
**Salina Central Mall - Salina, KS**
**Consolidated Statement of Income**
**Accrual**

| | Forecasted Jan 2008 | Forecasted Feb 2008 | Forecasted Mar 2008 | Forecasted Apr 2008 | Forecasted May 2008 | Forecasted Jun 2008 | Forecasted Jul 2008 | Forecasted Aug 2008 | Forecasted Sep 2008 | Forecasted Oct 2008 | Forecasted Nov 2008 | Forecasted Dec 2008 | Total YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **PROMOTIONAL INCOME** | | | | | | | | | | | | | |
| Marketing Fund | 7,535 | 7,233 | 7,233 | 7,345 | 7,330 | 7,123 | 7,019 | 7,219 | 7,019 | 7,090 | 7,034 | 7,000 | 86,180 |
| Event Income | - | - | 1,788 | 7,367 | 1,500 | - | 1,998 | 760 | 1,500 | 428 | 234 | 600 | 16,175 |
| **TOTAL PROMOTIONAL INCOME** | 7,535 | 7,233 | 9,021 | 14,712 | 8,830 | 7,123 | 9,017 | 7,979 | 8,519 | 7,518 | 7,288 | 7,600 | 102,355 |
| **TOTAL TENANT RECOVERIES** | 118,500 | 114,246 | 116,034 | 414,251 | 126,140 | 123,818 | 125,726 | 127,667 | 128,052 | 127,355 | 127,751 | 128,083 | 1,777,622 |
| **MISCELLANEOUS INCOME** | | | | | | | | | | | | | |
| Litigation Settlement | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Miscellaneous Income | 200 | - | - | - | - | - | - | - | - | 200 | 200 | 200 | 800 |
| Storage Rent | 83 | 83 | 83 | 83 | 83 | 83 | 83 | 83 | 83 | 83 | 83 | 87 | 1,000 |
| Fax & Copy Income | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **TOTAL MISCELLANEOUS INCOME** | 283 | 83 | 83 | 83 | 83 | 83 | 83 | 83 | 83 | 283 | 283 | 287 | 1,800 |
| **TOTAL INCOME** | 449,074 | 435,088 | 472,492 | 732,349 | 447,374 | 456,126 | 461,891 | 448,626 | 523,635 | 459,016 | 526,796 | 500,154 | 5,919,620 |
| **OPERATING EXPENSES** | | | | | | | | | | | | | |
| **RECOVERABLE EXPENSES** | | | | | | | | | | | | | |
| **UTILITIES** | | | | | | | | | | | | | |
| Electric - Int | 28,694 | 30,011 | 27,846 | 24,747 | 29,038 | 34,645 | 40,952 | 36,695 | 31,391 | 10,919 | 25,116 | 34,100 | 354,151 |
| Gas - Int | 1,190 | 1,190 | 739 | 832 | 821 | 777 | 860 | 793 | 723 | 725 | 760 | 800 | 10,310 |
| Water - Int | 4,214 | 2,780 | 3,080 | 3,549 | 3,672 | 3,533 | 4,550 | 5,121 | 5,149 | 4,081 | 5,124 | 4,000 | 48,853 |
| Water - Ext | 132 | 128 | 144 | 213 | 195 | 208 | 170 | 143 | 215 | 380 | 383 | 250 | 2,881 |
| Sewer - Ext | - | - | - | - | - | 30 | - | - | 30 | - | - | 30 | 120 |
| **TOTAL UTILITIES** | 34,230 | 34,109 | 31,838 | 29,341 | 33,726 | 39,193 | 46,532 | 42,752 | 37,506 | 16,115 | 31,392 | 39,280 | 416,015 |
| **INSURANCE** | | | | | | | | | | | | | |
| General Liability - Int | 1,416 | 1,416 | 1,416 | 1,416 | 1,416 | 1,416 | 1,416 | 1,416 | 1,416 | 1,416 | 1,416 | 1,416 | 16,992 |
| Umbrella - Int | 574 | 574 | 574 | 574 | 574 | 574 | 574 | 574 | 574 | 574 | 574 | 574 | 6,888 |
| Umbrella - Excess | 190 | 190 | 190 | 190 | 190 | 190 | 1,416 | 190 | 190 | 190 | 190 | 190 | 3,506 |
| Automobile - Ext | 138 | 138 | 138 | 138 | 138 | 138 | 574 | 138 | 138 | 138 | 138 | 138 | 2,070 |
| Workers Compensation - Int | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Property Insurance | 4,020 | 4,020 | 4,020 | 4,020 | 4,020 | 4,020 | 4,020 | 4,020 | 4,020 | 4,020 | 4,020 | 4,020 | 48,240 |
| Insurance Finance Agreement - Late Fees | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **TOTAL INSURANCE** | 6,336 | 6,336 | 6,336 | 6,336 | 6,336 | 6,336 | 8,000 | 6,336 | 6,335 | 6,336 | 6,336 | 6,335 | 77,696 |
| **IN-HOUSE SECURITY** | | | | | | | | | | | | | |
| Rep & Maint & Equipment | 793 | 185 | 152 | 321 | 210 | 364 | 193 | 333 | 232 | 227 | 145 | - | 948 |
| Scrty Veh Gas & Oil | 200 | 217 | - | - | - | 109 | - | 40 | - | - | - | 300 | 2,964 |
| Scrty Veh Repairs | 40 | - | - | - | - | - | - | - | - | - | - | - | 169 |
| Supplies | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |

**2008 - Budget Report**
**Boardwalk Management Company Inc**
**Salina Central Mall - Salina, KS**

**Consolidated Statement of Income**
**Accrual**

| | Forecasted Jan 2008 | Forecasted Feb 2008 | Forecasted Mar 2008 | Forecasted Apr 2008 | Forecasted May 2008 | Forecasted Jun 2008 | Forecasted Jul 2008 | Forecasted Aug 2008 | Forecasted Sep 2008 | Forecasted Oct 2008 | Forecasted Nov 2008 | Forecasted Dec 2008 | Total YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **TOTAL IN-HOUSE SECURITY** | 2,003 | 1,402 | 1,152 | 1,321 | 1,210 | 1,473 | 1,193 | 1,373 | 1,232 | 1,227 | 1,146 | 1,300 | 16,031 |
| **CONTRACT SECURITY** | | | | | | | | | | | | | |
| ServiceLabor - Int | 15,000 | 12,000 | 12,000 | 12,000 | 15,000 | 12,000 | 12,000 | 12,000 | 15,000 | 12,000 | 12,000 | 12,000 | 153,000 |
| **TOTAL CONTRACT SECURITY** | 15,000 | 12,000 | 12,000 | 12,000 | 15,000 | 12,000 | 12,000 | 12,000 | 15,000 | 12,000 | 12,000 | 12,000 | 153,000 |
| **IN-HOUSE JANITORIAL** | | | | | | | | | | | | | |
| Payroll - Int | 8,250 | 8,250 | 8,250 | 8,250 | 8,250 | 8,250 | 8,250 | 8,250 | 8,250 | 8,250 | 8,250 | 8,200 | 98,950 |
| Payroll Processing | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 4,200 |
| Benefits - Int | 2,368 | 2,010 | 2,010 | 2,010 | 2,010 | 2,010 | 2,010 | 2,010 | 2,010 | 2,010 | 2,010 | 2,010 | 24,478 |
| Rep & Maint & Equipment | | | 50 | | | | | 400 | | 200 | | | 650 |
| Supplies | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 22,800 |
| Janitorial Workers Comp | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,000 |
| **TOTAL IN-HOUSE JANITORIAL** | 13,118 | 12,760 | 12,810 | 12,760 | 12,760 | 12,760 | 12,760 | 13,160 | 12,760 | 12,960 | 12,760 | 12,710 | 154,078 |
| **CONTRACT JANITORIAL** | | | | | | | | | | | | | |
| Trash Removal | 3,151 | 1,345 | 1,662 | 1,039 | 1,133 | 1,637 | 1,837 | 2,835 | 1,405 | 817 | 1,124 | 2,000 | 18,579 |
| Pest Control | 139 | 139 | 139 | 139 | 139 | 139 | 139 | 139 | 139 | 139 | 139 | 139 | 1,698 |
| **TOTAL CONTRACT JANITORIAL** | 3,290 | 1,484 | 1,701 | 1,178 | 1,272 | 1,776 | 1,976 | 2,974 | 1,544 | 956 | 1,263 | 2,139 | 20,247 |
| **IN-HOUSE LANDSCAPING** | | | | | | | | | | | | | |
| Supplies | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 240 |
| **TOTAL IN-HOUSE LANDSCAPING** | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 240 |
| **MANAGEMENT OFFICE PERSONNEL** | | | | | | | | | | | | | |
| Payroll | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 108,000 |
| Taxes | | | | 40 | | | | 40 | | | | | 80 |
| Benefits | 2,638 | 2,638 | 2,638 | 2,638 | 2,638 | 2,638 | 2,638 | 2,638 | 2,638 | 2,638 | 2,638 | 2,638 | 31,656 |
| Payroll Processing | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| Mall Mgmt Workers Comp | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 1,320 |
| **TOTAL MANAGEMENT OFFICE PERSONNEL** | 12,048 | 12,048 | 12,048 | 12,088 | 12,048 | 12,048 | 12,048 | 12,088 | 12,048 | 12,048 | 12,048 | 12,048 | 144,655 |
| **OTHER GENERAL AND ADMINISTRATIVE** | | | | | | | | | | | | | |
| Postage & Postage Machine | 117 | 55 | 55 | 65 | 42 | | 97 | 38 | 36 | 108 | 70 | 75 | 759 |
| Shipping & Delivery Expense | 100 | 167 | 296 | 21 | | | | 99 | 34 | 60 | 80 | 75 | 870 |
| Copy Machine | 620 | 620 | 620 | 620 | 620 | 620 | 620 | 620 | 620 | 620 | 620 | 620 | 7,440 |
| Telephone & Cell Phone Service | 1,397 | 1,100 | 1,039 | 1,039 | 369 | 485 | 1,045 | 1,216 | 1,069 | 843 | 1,020 | 1,200 | 11,644 |
| Data Communications | 26 | 33 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 300 |
| Office Supplies | 500 | 50 | 500 | 500 | 50 | 50 | 500 | 500 | 50 | 500 | 50 | 50 | 2,400 |
| Employee Recruitment | 75 | 3,560 | 75 | 75 | 75 | 75 | 75 | 95 | 75 | 75 | 75 | 75 | 4,525 |
| Computer Services & Fees | | | | | 12 | | | | | 40 | | | 147 |
| Other Misc Gen & Admin | 2,000 | | | | | | | | | | | | 2,000 |
| Management Travel | | | | | | | | | | | | | |
| Licenses, Dues & Subscriptions | 22 | 22 | 22 | 22 | 22 | 22 | 22 | 22 | 22 | 22 | 22 | 22 | 264 |
| **TOTAL OTHER GENERAL AND ADMINISTRATIVE** | 4,640 | 5,403 | 2,114 | 2,642 | 1,268 | 1,374 | 2,420 | 2,200 | 1,931 | 2,393 | 1,962 | 2,142 | 30,467 |
| **CUSTOMER SERVICE CENTER** | | | | | | | | | | | | | |
| Misc Supplies | 1,000 | | 50 | | | 50 | | | 50 | | | 50 | 1,200 |
| **TOTAL CUSTOMER SERVICE CENTER** | 1,000 | | 50 | | | 50 | | | 50 | | | 50 | 1,200 |

**2008 - Budget Report**
**Boardwalk Management Company Inc**
**Salina Central Mall - Salina, KS**
**Consolidated Statement of Income**
**Accrual**

| | Forecasted Jan 2008 | Forecasted Feb 2008 | Forecasted Mar 2008 | Forecasted Apr 2008 | Forecasted May 2008 | Forecasted Jun 2008 | Forecasted Jul 2008 | Forecasted Aug 2008 | Forecasted Sep 2008 | Forecasted Oct 2008 | Forecasted Nov 2008 | Forecasted Dec 2008 | Total YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **MAINTENANCE** | | | | | | | | | | | | | |
| Payroll | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 66,000 |
| Payroll Processing | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2,400 |
| Maintenance Workers Comp | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 1,320 |
| **TOTAL MAINTENANCE** | 5,810 | 5,810 | 5,810 | 5,810 | *5,810 | 5,810 | 5,810 | 5,810 | 5,810 | 5,810 | 5,810 | 5,810 | 69,720 |
| **FOOD COURT EXPENSES** | | | | | | | | | | | | | |
| Service/Labor | | | | | | | | | 209 | 195 | | | 404 |
| **TOTAL FOOD COURT EXPENSES** | | | | | | | | | 209 | 195 | | | 404 |
| **REPAIRS AND MAINTENANCE** | | | | | | | | | | | | | |
| Benefits - Int | 1,563 | 1,206 | 1,206 | 1,206 | 1,206 | 1,206 | 1,206 | 1,206 | 1,206 | 1,206 | 1,206 | 1,206 | 14,829 |
| Uniforms - Int | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 4,200 |
| Plumbing Repairs & Supplies - Int | 178 | | | | 78 | 22 | 194 | 138 | 1,286 | | | 200 | 2,123 |
| HVAC Repairs & Supplies - Ext | | | | | | 73 | 575 | | 150 | 150 | | | 948 |
| Fire System Repairs & Supplies - Int | | | | | 45 | | | 1,533 | 183 | | | | 1,761 |
| Roof/Ceiling - Int | | | 12 | | | | | | | | | | 12 |
| Roof - Ext | | | 24 | | | | | | | | | | 250 |
| Electrical - Int | 1,221 | | 348 | 294 | 190 | 301 | 103 | 11 | 170 | 170 | 252 | 250 | 3,288 |
| Electrical - Ext | | | 2,341 | | | 117 | | 113 | 163 | | | | 2,621 |
| Flooring - Int | | | 27 | | | | | | | | | | 27 |
| Flooring - Ext | | | | | | | | 14 | | | | | 14 |
| Doors - Int | | | 19 | | | | | | | 2 | | | 19 |
| Doors - Ext | | | | | | | | | | | | | 125 |
| Painting - Int | | | 61 | | | | | | | 70 | | | 131 |
| Painting - Ext | 10,000 | | | 123 | 460 | 834 | | 101 | | 312 | | | 1,784 |
| Parking/Sidewalk Repairs/Striping | 1,122 | | 3 | 57 | | 6 | | | | | | | 3 |
| Parking Lot Cleaning & Sweeping | 3,000 | | 2,000 | | | | | | | | | | 22,000 |
| Snow Removal | | 5,000 | | | | | | | | | | 5,000 | 1,144 |
| Equipment Int - R&M/Rent | | | | | 2,000 | | | | | | | 250 | 7,500 |
| Equipment Ext -R&M/Rent | | 250 | 250 | 250 | | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 1,200 |
| Misc - Int | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| Misc - Ext | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| Aquarium | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 7,200 |
| Maintenance Vehicle Gas & Oil | 300 | 217 | 152 | 321 | 210 | 364 | 193 | 333 | 232 | 227 | 154 | 300 | 3,003 |
| **TOTAL REPAIRS AND MAINTENANCE** | 18,534 | 7,823 | 7,605 | 3,401 | 5,339 | 4,323 | 3,671 | 4,849 | 4,622 | 3,507 | 3,012 | 8,655 | 75,342 |
| **RE TAXES** | | | | | | | | | | | | | |
| Current Real Estate Taxes | 93,828 | 93,828 | 93,828 | 93,828 | 93,828 | 93,828 | 93,828 | 93,828 | 93,828 | 93,828 | 93,828 | 93,828 | 1,125,934 |
| Personal Property Taxes | | | | | | | | | | | | 1,000 | 1,000 |
| **TOTAL RE TAXES** | 93,828 | 93,828 | 93,828 | 93,828 | 93,828 | 93,828 | 93,828 | 93,828 | 93,828 | 93,828 | 93,828 | 94,828 | 1,126,934 |
| **NON RECOVERABLE EXPENSES** | 150,282 | 171,738 | 156,926 | 165,182 | 155,646 | 156,968 | 170,500 | 159,544 | 150,316 | 390,344 | 172,084 | 199,319 | 2,185,929 |
| **MANAGEMENT FEES** | | | | | | | | | | | | | |
| Management Fees - BW | 14,583 | 14,583 | 14,583 | 14,583 | 14,583 | 14,583 | 14,583 | 14,583 | 14,583 | 14,583 | 14,583 | 14,583 | 174,996 |

**2008 - Budget Report**
**Boardwalk Management Company Inc**
**Salina Central Mall - Salina, KS**
**Consolidated Statement of Income**
**Accrual**

| | Forecasted Jan 2008 | Forecasted Feb 2008 | Forecasted Mar 2008 | Forecasted Apr 2008 | Forecasted May 2008 | Forecasted Jun 2008 | Forecasted Jul 2008 | Forecasted Aug 2008 | Forecasted Sep 2008 | Forecasted Oct 2008 | Forecasted Nov 2008 | Forecasted Dec 2008 | Total YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **TOTAL MANAGEMENT FEES** | 14,583 | 14,583 | 14,583 | 14,583 | 14,583 | 14,583 | 14,583 | 14,583 | 14,583 | 14,583 | 14,583 | 14,583 | 174,996 |
| **LEASING EXPENSE** | | | | | | | | | | | | | |
| Leasing Travel | - | - | - | - | 3,000 | - | - | - | - | - | - | - | 3,000 |
| Leasing Meals & Ent. | - | - | - | - | 500 | - | - | - | - | - | - | - | 500 |
| I.C.S.C | - | - | - | - | 8,500 | - | - | - | - | - | - | - | 8,500 |
| Temp Leasing Incentive | 13,343 | - | - | 6,071 | - | - | 6,364 | - | - | 6,364 | - | - | 32,141 |
| Leasing Fees | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 99,996 |
| Tenant Coordination | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **TOTAL LEASING EXPENSES** | 50,842 | 37,499 | | | 17,957 | 8,333 | 37,596 | 8,557 | 8,333 | 16,811 | 8,333 | 8,333 | 219,250 |
| **MARKETING** | | | | | | | | | | | | | |
| Payroll | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 84,000 |
| Payroll Processing | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| Benefits | 402 | 402 | 402 | 402 | 402 | 402 | 402 | 402 | 402 | 402 | 402 | 402 | 4,824 |
| Contract Services | 47 | 47 | 47 | 47 | 47 | 47 | 47 | 47 | 47 | 219 | 47 | 47 | 736 |
| Radio | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Radio Production | - | - | - | - | - | - | - | - | - | - | - | - | 200 |
| Print | - | - | - | - | - | 200 | 200 | - | - | 200 | 200 | 200 | 200 |
| Print Production | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Television | - | - | - | - | - | - | - | - | - | - | - | - | - |
| On-Mail Signage | 1,000 | - | - | - | - | - | - | - | - | - | - | - | 1,000 |
| Gift Certificate | - | - | - | - | - | - | - | - | - | - | - | 200 | 200 |
| Billboards | 2,908 | 4,755 | 2,786 | - | - | - | 1,000 | - | 2,786 | - | 1,500 | 3,000 | 18,930 |
| Special Events | 200 | 200 | 200 | 200 | 200 | 200 | 200 | - | 200 | 200 | 200 | 200 | 2,400 |
| Website Maintenance | - | - | - | 200 | 200 | - | - | 200 | - | 200 | - | 2,000 | 2,400 |
| Equipment | - | 2,354 | 250 | - | - | - | - | - | - | - | - | 250 | 4,354 |
| Supplies | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,000 |
| Owners Contribution | - | - | - | - | - | - | - | 226 | 2,786 | - | - | - | 2,728 |
| Mall Directories | 2,500 | - | - | - | - | - | - | - | - | - | - | - | 2,728 |
| Balances | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| Marketing Workers Comp | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,000 |
| **TOTAL MARKETING** | 15,187 | 15,658 | 11,515 | 8,749 | 8,749 | 8,049 | 9,749 | 8,680 | 11,515 | 8,749 | 10,421 | 14,349 | 132,770 |
| **PROFESSIONAL SERVICES** | | | | | | | | | | | | | |
| Legal Fees | 5,000 | - | 3,750 | - | - | - | 2,000 | - | - | 2,000 | - | - | 12,750 |
| Accounting Services | - | 5,000 | 5,000 | - | - | - | - | - | - | - | - | - | 10,000 |
| Architectural | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Professional Fees | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **TOTAL PROFESSIONAL SERVICES** | 5,000 | 5,000 | 8,750 | - | - | - | 2,000 | - | - | 2,000 | - | - | 22,750 |
| **OWNERS REPAIRS AND MAINTENANCE** | | | | | | | | | | | | | |
| HVAC Repairs & Supplies | - | - | 5,000 | 5,000 | - | - | - | - | - | - | - | - | 10,000 |
| Roof/Ceiling | - | 5,000 | 10,000 | - | 500 | - | 500 | - | 500 | - | 500 | - | 17,000 |
| Doors | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Parking/Sidewalk Repairs/Striping | - | - | - | 2,000 | 2,000 | 2,000 | 2,000 | - | - | - | - | - | 8,000 |
| Barricade | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **TOTAL OWNERS REPAIRS AND MAINTENANCE** | - | 5,000 | 15,000 | 7,000 | 2,500 | 2,000 | 2,500 | - | 500 | - | 500 | - | 35,000 |

2008 - Budget Report
Boardwalk Management Company Inc
Salina Central Mall - Salina, KS

Consolidated Statement of Income
Accrual

| | Forecasted Jan 2008 | Forecasted Feb 2008 | Forecasted Mar 2008 | Forecasted Apr 2008 | Forecasted May 2008 | Forecasted Jun 2008 | Forecasted Jul 2008 | Forecasted Aug 2008 | Forecasted Sep 2008 | Forecasted Oct 2008 | Forecasted Nov 2008 | Forecasted Dec 2008 | Total YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MISCELLANEOUS | | | | | | | | | | | | | |
| Bank Fees | 45 | 45 | 45 | 45 | 45 | 45 | 45 | 45 | 45 | 45 | 45 | 45 | 540 |
| Misc | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2,400 |
| Late Fees | - | - | - | - | - | - | - | - | - | - | - | - | - |
| TOTAL MISCELLANEOUS | 245 | 245 | 245 | 245 | 245 | 245 | 245 | 245 | 245 | 245 | 245 | 245 | 2,940 |
| TOTAL NON RECOVERABLE EXPENSES | 85,857 | 78,185 | 58,426 | 38,910 | 44,034 | 34,110 | 66,663 | 32,365 | 35,176 | 42,388 | 34,082 | 37,510 | 587,706 |
| TOTAL OPERATING EXPENSES | 236,119 | 249,923 | 215,352 | 204,092 | 199,680 | 191,078 | 237,263 | 191,909 | 185,492 | 422,732 | 206,166 | 233,829 | 2,773,636 |
| NET OPERATING INCOME | 212,955 | 185,163 | 257,140 | 528,257 | 247,694 | 265,048 | 224,628 | 256,717 | 338,143 | 36,286 | 320,630 | 272,325 | 3,144,985 |

| | |
|---|---|
| Tax Adjustments Due Prior Owner (Warmack) | 143,188 |
| 2006 Real Estate Taxes - Second half | 385,000 |
| 2007 First Half Real Estate Taxes | 536,189 |
| 2007 Second Half Real Estate Taxes | 536,128 |
| Old Navy/Reinhart Construction | 447,860 |
| Maurices Tenant Allowance | 115,000 |