UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CORDELL FUNDING, LLLP, et al.,

        Appellants,

        -against-

THE 1031 TAX GROUP, LLC, et al.,

        Appellees.

CASE NO. 07-11342 (NRB)

## APPELLANTS' REPLY BRIEF

102420900.1

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ i

PRELIMINARY STATEMENT ........................................................................................ 1

REPLY ............................................................................................................................... 5

I.   CORDELL HAS STANDING TO BRING THIS APPEAL ....................................... 5

II.  THIS APPEAL IS NOT BARRED BY THE DOCTRINE OF EQUITABLE
     MOOTNESS ........................................................................................................... 7

III. THE ORDER SHOULD BE VACATED OR REMANDED BECAUSE THE
     BANKRUPTCY COURT ERRED ......................................................................... 13

     A.   The Order Improperly Reviewed/Vacated the State Court Injunction, and
          Violated the Rooker-Feldman Doctrine ......................................................... 13

     B.   The Bankruptcy Court Erred by Failing to Consider the Impact of the
          Transfers and Their Consolidation in the 1031 Debtors' Bankruptcies .............. 16

     C.   Sufficient Notice was Not Afforded to Cordell .................................................. 17

CONCLUSION .............................................................................................................. 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*The Aetna Casualty and Surety Company v. LTV Steel Company, Inc. (In re Chateaugay Corp.)*, 1995 WL 386483 (Case. No. 93-cv-4725, S.D.N.Y. June 28, 1995) <u>rev'd</u> on other grounds 94 F.3d 772 (2nd Cir. 1996) ..........................8, 9, 23

*Allstate Insurance Co. v. Hughes*, 174 B.R. 884 (S.D.N.Y. 1994)..........................9, 10, 21

*Alpha Forty-Five, LLC v. PC Liquidation Corp. (In re PC Liquidation Corp.)*, 2008 WL 199457 (Case No. 06-cv-1935, E.D.N.Y. Jan. 17, 2008) ..................9, 10, 22

*Carroll v. Rafael Galleries, Inc. (In re Altman)*, 254 B.R. 509 (D. Conn. 2000) .......................................................................................6, 18, 20, 21, 23

*In re Chateaugay Corp.*, 167 B.R. 776 (S.D.N.Y. 1994) .............................................8, 21

*Colorado River Water Conservation District v. United States*, 424 U.S. 800, 99 S. Ct. 1236, 47 L. Ed. 2d 483 (1976) ...........................................................................8, 21

*D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).............................................14, 21

*Doral Center, Inc. v. Ionosphere Clubs, Inc. (In re Ionosphere Clubs, Inc.)*, 208 B.R. 812 (S.D.N.Y. 1997)........................................................................................5, 21

*F.H. Partners, L.P. v. Investment Company of the Southwest, Inc. (In re Investment Company of the Southwest, Inc.)*, 341 B.R. 298 (10th Cir. BAP 2006) .....................................................................................................................8, 21

*Home & City Savings Bank v. Rensselaer Polytechnic Institute (In re International Trade Administration)*, 936 F.2d 744 (2d Cir. 1991)......................5, 21

*In re Iridium Operating LLC*, 478 F.3d 452 (2d Cir. 2007) ........................................16, 21

*Karta Container & Recycling, Inc. v. Karta Corp. (In re Karta Corp.)*, 342 B.R. 45 (S.D.N.Y. 2006) .................................................................................8, 9, 21

*Kenton Cty. Bondholders Committee v. Delta Airlines, Inc. (In re Delta Airlines, Inc.)*, 374 B.R. 516 (S.D.N.Y. 2007) .........................................................9, 10, 21, 22

*In re Metromedia Fiber Network, Inc.*, 416 F.3d 136 (2d Cir. 2005)............................8, 22

*Nelson v. Adams USA, Inc.*, 529 U.S. 460, 120 S. Ct. 1579 (2000)..............................20, 22

*Official Committee of Unsecured Creditors of LTV Aerospace and Defense Co.*
*Inc. v. The Official Committee of Unsecured Creditors of LTV Steel Co., Inc.*
*(In re Chateaugay Corp.)*, 988 F.2d 322 (2nd Cir. 1993)......................................10, 22

*In re Onouli-Kona Land*, 846 F.2d 1170 (9th Cir. 1988) .................................................8, 22

*Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101 (9th Cir. 2003) .............................................8, 22

*In re PWS Holding Corp.*, 228 F.3d 224 (3d Cir. 2000)...................................................8, 22

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).......................................................14, 22

*Sutter v. Goedert*, 504 F.3d 982 (9th Cir. 2007)......................................................8, 10, 22

*United States Trustee v. Official Committee of Equity Security Holders (In re*
*Zenith Electronics Corp.)*, 329 F.3d 338 (3d Cir. 2003)...............................7, 8, 10, 22

## STATE CASES

*Manter v. Howard*, 94 Cal. App. 2d 404 (Cal. Dist. Ct. App. 1949).................................14

## FEDERAL STATUTES

28 U.S.C. §§ 1257, 1330, 1331................................................................................14, 23

## STATE STATUTES

Fla. Stat. § 319.22 (2008).........................................................................................16, 23

N.H. Rev. Stat. Ann. 261:14 (2008) .........................................................................16, 23

Va. Code Ann. § 46.2-628 (2008)..............................................................................16, 23

102420900.1

## PRELIMINARY STATEMENT

Cordell Funding, LLLP ("Cordell") and Cordell Consultants, Inc., Money Purchase Plan, a Qualified Retirement Plan Trust ("Cordell Retirement", together with Cordell Funding, "Cordell"), entered into a Loan Modification Agreement and Supplement to Loan Modification Agreement (collectively the "Loan Modification Agreement") pursuant to which Cordell agreed to forbear from exercising its rights against its direct debtors, which include among others, Edward Okun ("Okun"), Investment Properties of America, LLC ("Investment Properties"), Columbus Works Trust ("Columbus Works"), Parkway Virginia Trust ("Parkway"), and IPofA Shreveport Industrial Park, LLC ("Shreveport", together with Investment Properties, Columbus Works and Parkway the "IPofA Debtors"). The Loan Modification agreement was signed and accepted by all of these parties, the 1031 Debtors[1] and the Official Committee of Unsecured Creditors (the "Committee" together with the 1031 Debtors the "Appellees"). After inducing Cordell to forbear from exercising its rights, and after the deadline for filing proofs of claim in the 1031 Debtors' cases passed, Okun and the Appellees entered into the Agreement to Transfer Interests and Assets for the Benefit of Bankruptcy Estates (the "Agreement") thereby placing assets out of Cordell's reach. Although the Appellees knew of, and indeed encouraged, Cordell's forbearance and knew of Cordell's claims, the Appellees chose to enter into the Agreement which was a material breach of the Loan Modification Agreement and at the same time, sought relief which materially and adversely affected Cordell's rights and claims without noticing Cordell of the motion (the "Motion") to approve the Agreement or naming Cordell as a

---

[1] The "1031 Debtors" are: The 1031 Tax Group, LLC; Exchange Management, LLC; Investment Exchange Group, LLC; National Exchange Accomodators, LLC; National Exchange Services QI, Ltd.; National Intermediary, Ltd.; NRC 1031, LLC; Real Estate Exchange Services, Inc.; Rutherford Investment LLC; Shamrock Holdings, Group, LLC; and AEC Exchange Company.

party to an adversary proceeding, thereby depriving Cordell of the right to try to protect its interests.

Cordell has standing to prosecute this appeal because Cordell was aggrieved by the order (the "Order") approving the Agreement because of the transfer of nondebtor assets, which Cordell has an interest in and claims against, and because Cordell held liens in various of the equity positions transferred. Cordell has been directly affected pecuniarily by the Order because, among other things, the Order has deprived Cordell of any meaningful chance of recovery against Okun.

Contrary to Appellees' assertions, this appeal is not equitably moot. The equitable mootness doctrine is inapplicable in this case because the doctrine operates to procure finality to orders and confirmation plans where assets leave the estate and are transferred to third parties and because the trustee (The "Trustee") expressly consented and stipulated to the reservation of Cordell's rights in the Transferred Assets. As to the former, the Order accomplishes the opposite and effectuated the transfer of non-debtor assets subject to third party claims into the 1031 Debtors' estates. Unlike cases decided under the equitable mootness doctrine, the bankruptcy court in this case is continuing to exercise jurisdiction over the assets. Even if equitable mootness could be applied to situations addressing the transfer of assets into bankruptcy estates, the doctrine should not be applied in this case. Cordell is not seeking to undo the transactions entered into after the entry of the Order. Rather, Cordell is seeking a mechanism to protect its rights, both as a direct creditor of Okun and a creditor of the IPofA Debtors (and, as a result of the Order, as a creditor of the 1031 Debtors). Such relief may include an accounting to demonstrate that the proceeds from the sale of the IPofA Debtors' assets have actually been placed into the IPofA Debtors' estates, as well as further proceedings in the Bankruptcy Court to

102420900.1

determine whether and to what extent Cordell is entitled to adequate protection, replacement liens, and/or to fix the priority and treatment of Cordell's newly created claim whether as an administrative claim or otherwise. Another form of relief could be the establishment of a supplemental bar date to permit creditors whose claims arose as a result of the Order to participate in any distribution from the 1031 Debtors' estates - - to otherwise leave an entire class of creditors unprotected and without notice of the proceedings contravenes any basic notions of due process and the very underpinnings of the bankruptcy code. Accordingly, the relief Cordell is seeking is significantly narrower than the Appellees state and it is not inequitable to grant Cordell relief.

Lastly, absent intervention by this Court, a terrible injustice will be countenanced in allowing the Trustee, who came into the case after substantially all of the actions implicated hereunder took place, to unjustly retain assets of non-debtor third parties without making provision to address the creditors that lent Okun the monies to buy these very assets. Indeed, despite the State Court restraining order (the "Restraining Order") and that the assets at issue were <u>not</u> property of the estate or subject to the jurisdiction of the bankruptcy court, the Trustee went forward with a proceeding directly affecting the very same property subject to these agreements and orders in contravention of the Forbearance Agreement and Cordell's rights and liens.

As detailed more fully below and in Cordell's original brief, the instant relief was entered under the guise of a "9019 settlement" for expediency in the 1031 Debtors' bankruptcies with no process or sufficient opportunity to be heard afforded to Cordell, where virtually all of the assets of Okun and Third Party Entities ("Nondebtor Assets") were transferred for less than reasonably equivalent value, thereby hindering and delaying the ability of Cordell and other creditors of

102420900.1

Okun and the third party entities ("Third Party Creditors") to enforce their rights - - whether as secured or unsecured creditors. While the Trustee claims that Cordell was somehow not a creditor or entitled to notice, Cordell unequivocally maintained liens in various of the equity positions transferred and claims in all of the assets of Okun under the acknowledged guarantee. After inducing Cordell to forebear on moving to seize Okun's assets, the Debtors as predecessor to the Trustee moved to divest Okun of substantially all of his assets in violation of the implied and express requirements under the Loan Modification Agreement and the restraining order entered in the New York State Court prohibiting the transfer of these very assets.[2]

Moreover, the Agreement deprived Third Party Creditors of the assets against which to enforce judgments, in affect, divesting Okun of substantially all of his non exempt assets. Furthermore, by virtue of the Order, Cordell was materially and adversely impacted by the transfers leaving the borrowers with virtually no assets and in affect pooling the Nondebtor Assets with the 1031 Debtors' Estates to create a common fund. Worse still in Okun's situation, the Trustee consolidated his assets with the bankruptcy estate but left his creditors with all of the liabilities. Despite all of the foregoing, the Trustee has utterly refused to address resolution of the treatment and priority of Cordell's claims and liens and the other newly created creditors arising by virtue of the Order - - and taken the position that all such claims were wiped out by virtue of the Order.

For all of the foregoing reasons and as detailed more fully below, Cordell respectfully submits that the Court grant the instant appeal, and remand this matter back to the Bankruptcy Court with instructions to hold further proceedings to address the treatment and priority of

---

[2] In fact, the Modification Agreement expressly provided that no plan of reorganization in the bankruptcy case may include an injunction restricting Cordell from pursuing its rights as against non-debtors.

Cordell's claims, liens, and interests in the subject transferred assets, together with such other relief as provided for herein.

## REPLY

## I.    CORDELL HAS STANDING TO BRING THIS APPEAL

Section 1109(b) of the Bankruptcy Code governs standing and provides in relevant part that "[a] party in interest, including … a creditor … may raise and may appear and be heard on any issues in a case under this chapter." Courts in the Second Circuit have long recognized that "a 'person aggrieved' -- a person 'directly and adversely affected pecuniary by' the challenged order of the bankruptcy court…" has standing to appeal a bankruptcy court's decision. <u>Home & City Savings Bank v. Rensselaer Polytechnic Institute (In re International Trade Administration)</u>, 936 F.2d 744, 747 (2d Cir. 1991) (Ruling that the appellant had standing even though it had not appeared as a party with regard to the subject of the appeal.); <u>see also</u> <u>Doral Center, Inc. v. Ionosphere Clubs, Inc. (In re Ionosphere Clubs, Inc.)</u>, 208 B.R. 812, 814 (S.D.N.Y. 1997) ("The general theory behind [section 1109] is that anyone holding a direct financial stake in the outcome of the case should have an opportunity … to participate in the adjudication of any issue that may ultimately shape the disposition of his or her interest." <u>quoting</u> Lawrence P. King et al., Collier on Bankruptcy ¶ 1109.01 (15th ed. Rev. 1997)). A party has standing to challenge an order that purports to restrict or bind that party. <u>In re Ionosphere Clubs, Inc.</u>, 208 B.R. at 815.

Despite the Trustee's assertions, Cordell is a party-in-interest as a result of its direct secured claims against certain of the transferred assets and under its guarantees which extended its claims to Okun's individual assets. Moreover, despite the Trustee's efforts to pick and choose what facts it chooses to disclose, the equity interests transferred to the 1031 Debtors unequivocally included interests subject to Cordell's liens. Moreover, the Transfer Order did

- 5 -

more than transfer Okun's equity interests in various corporations into the estate, it also provided for the transfer of substantially all of Okun's tangible assets (excluding predominantly exempt property), including airplanes, yachts, and exotic sports cars, amongst other things - - assets subject to Cordell's direct claims under the guarantees.   The Order resulted in the complete divestiture of substantially all of Okun's assets, including assets which were subject to Cordell's lien and claims.   All of which were effectuated in violation of the Loan Modification Agreement to which Cordell and the 1031 Debtors are parties and in violation of the State Court restraining order which barred transfers of these very assets.   Indeed, after inducing Cordell to forebear on moving to seize Okun's assets, the 1031 Debtors as predecessor to the Trustee moved to divest Okun of substantially all of his assets in violation of the implied and express requirements under the Loan Modification Agreement and the restraining order entered in the New York State Court prohibiting the transfer of these very assets.   Accordingly, while the Trustee contests that the foregoing barred the transfers, which Cordell contests as detailed below, the issues in fact make clear that a controversy existed over the assets and between the parties.

In Carroll v. Rafael Galleries, Inc. (In re Altman), 254 B.R. 509, 511-12 (D. Conn. 2000), a case addressing similar issues to the ones at bar, the court ruled that a party had standing to challenge an order because the order purported to deprive the party of her interest in property without proper notice and the initiation of an adversary proceeding. Id. at 511-13.   The court stated that because the appellant "claims ownership of the [property] and her claim to the [property] was effectively extinguished by the [order], the Court finds [that the appellant] is an aggrieved party and has standing to appeal this conclusion within the [order]." Id. at 512.

Cordell clearly has standing.   Cordell's pecuniary interests were directly and adversely affected by the entry of the Order because, among other things, the Order deprived Cordell of

any meaningful chance of recovery against Okun by permitting Okun to transfer assets subject to Cordell's liens and strip Okun of substantially all of his non-exempt assets to the 1031 Debtors and render himself essentially judgment proof. The Order also impacted Cordell's liens and claims by transferring assets subject to its liens without consent or opportunity to be heard, vitiating a State Court Restraining Order without notice to Cordell (even if the Bankruptcy Court was permitted to override as state court injunction which Cordell contests, Cordell was entitled to present its defense to any such claims), and overriding the Modification Agreement to which the transfer materially breached. Moreover, to the extent that the Trustee has used its authority under the Order to liquidate the assets belonging to entities in which Cordell has an interest, there is nothing in the record to support the Appellees' statement that the proceeds have been applied to those entities' estates, nor has the Trustee (despite Cordell's requests) provided any proof on this issue. Thus, there is simply no proof that the Trustee has not rendered the IPofA Debtors shells thereby depriving Cordell of its full recovery rights. Finally, the Order created a new class of 1031 creditors. Cordell became a creditor of the 1031 Debtors by virtue of the entry of the Order, and as such, has standing to prosecute this Appeal. Accordingly, while the Trustee may contest Cordell's positions as to the treatment required to be afforded Cordell on account of its liens, claims and interests, it can not be controverted that the instant facts give rise to a case in controversy and the affect of the subject relief without question shaped and impacted Cordell's rights, liens and interests as a party-in-interest.

## II.    THIS APPEAL IS NOT BARRED BY THE DOCTRINE OF EQUITABLE MOOTNESS

Equitable mootness is an exception to the "general rule that when a court has jurisdiction to hear an appeal, it has a 'virtually unflagging obligation' to exercise that jurisdiction." United States Trustee v. Official Committee of Equity Security Holders (In re Zenith Electronics Corp.),

- 7 -

329 F.3d 338, 347 (3d Cir. 2003) (quoting <u>Colorado River Water Conservation Dist. v. United</u> <u>States</u>, 424 U.S. 800, 817, 99 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). The purpose of the equitable mootness doctrine is "to protect the interest of a good faith purchaser … of the property." <u>Sutter</u> <u>v. Goedert</u>, 504 F.3d 982, 987 (9th Cir. 2007) (quoting <u>In re Onouli-Kona Land</u>, 846 F.2d 1170, 1172 (9th Cir. 1988)); <u>see also</u> <u>Karta Container & Recycling, Inc. v. Karta Corp. (In re Karta</u> <u>Corp.)</u>, 342 B.R. 45, 52 (S.D.N.Y. 2006) ("Equitable mootness is a prudential doctrine that is invoked to avoid disturbing a reorganization plan once implemented." (quoting <u>In re Metromedia</u> <u>Fiber Network, Inc.</u>, 416 F.3d 136, 144 (2d Cir. 2005)). Thus, equitable mootness is designed to protect the interests of third parties, and prevent the undoing of transactions whereby assets leave the estate.

Equitable mootness is "to be applied only in order to 'prevent[] a court from unscrambling complex bankruptcy reorganizations when the appealing party should have acted before the plan became extremely difficult to retract.'" <u>In re Zenith Electronics Corp</u>, 329 F.3d at 340. Unless there are no "'intermediate options' short of undoing the entire plan…" a court should not dismiss an appeal. <u>Id.</u> at 345 (quoting <u>In re PWS Holding Corp.</u>, 228 F.3d 224, 236 (3d Cir. 2000); <u>see also</u> <u>In re Chateaugay Corp.</u>, 167 B.R. 776, 780 (S.D.N.Y. 1994). The party alleging equitable mootness "has the heavy burden of establishing that there is no effective relief remaining for a court to provide." <u>Sutter</u>, 504 F.3d at 986 (quoting <u>Or. Advocacy Ctr. v. Mink</u>, 322 F.3d. 1101, 1116-7 (9th Cir. 2003)); <u>see also</u> <u>F.H. Partners, L.P. v. Investment Company of</u> <u>the Southwest, Inc. (In re Investment Company of the Southwest, Inc.)</u>, 341 B.R. 298, 309 (10th Cir. BAP 2006); <u>The Aetna Casualty and Surety Company v. LTV Steel Company, Inc. (In re</u> <u>Chateaugay Corp.)</u>, 1995 WL 386483 at * 5 (Case. No. 93-cv-4725, S.D.N.Y. June 28, 1995) <u>rev'd</u> on other grounds 94 F.3d 772 (2nd Cir. 1996).

Notably, equitable mootness is most often applied to prevent unraveling of confirmation plans rather than orders addressing other issues. See e.g. In re Karta Corp., 342 B.R. at 52. However, when the doctrine is applied to orders, courts use the "'comprehensive change of circumstances' standard to demonstrate just how comprehensive such a change of circumstances must be to make it inequitable to hear an appeal." Allstate Insurance Co. v. Hughes, 174 B.R. 884 888-89 (S.D.N.Y. 1994); contra Alpha Forty-Five, LLC v. PC Liquidation Corp. (In re PC Liquidation Corp.), 2008 WL 199457 (Case No. 06-cv-1935, E.D.N.Y. Jan. 17, 2008) (Applying substantial consummation standard to an order approving the sale of substantially all of the debtor's assets); Kenton Cty. Bondholders Committee v. Delta Airlines, Inc. (In re Delta Airlines, Inc.), 374 B.R. 516, 523 (S.D.N.Y. 2007) (Noting that while there was no express test to determine when a comprehensive change occurs, courts have found the substantial consummation factors helpful.) The determination of whether a comprehensive change has occurred must be made on a case by case basis. Id. The changed circumstances test is a flexible one, and "[c]ourts have considered such factors as whether administrative expenses associated with the bankruptcy were paid and whether funds were distributed to creditors." Id. [3]

"Application for a stay of the Bankruptcy Court's action is not a per se requirement to avoiding dismissal…" In re Karta Corp., 342 B.R. at 52. Moreover, the existence of state law

---

[3] The elements for determining whether equitable mootness exists when substantial consummation is at issue are: 1) the court can still order some effective relief; 2) such relief will not affect 'the re-emergence of the debtor as a revitalized corporate entity'; 3) such relief will not unravel intricate transactions so as to "knock the props out from under the authorization for every transaction that has taken place" and "create an unmanageable uncontrollable situation for the Bankruptcy Court; 4) the "parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings"; and 5) the appellant pursued "with diligence all available remedies to obtain a stay of execution of the objectionable order … if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from. In re Chateaugay Corp., 1995 WL 386483 at * 4 (Ruling that an appeal was not moot when, among other things, appellant sought alternative relief to complete reversal of an order and thus did not "threaten[] to undermine the entire plan…").

remedies "render[s] the lack of a stay [of a decision being appealed] irrelevant to the question of mootness." Sutter, 504 F.3d at 986.

In this case, the purpose of the equitable mootness doctrine is not implicated. C.f. In re Zenith Electronic Corp., 329 F.3d at 347. Cordell is not seeking to undo transactions or bring assets that have been distributed back into the estate. Instead, the Order brought into the 1031 Debtors' estates assets belonging to non-debtors. While many of these assets have been sold, there has been no distribution of the proceeds. The bankruptcy court still has jurisdiction over the assets regardless of their form. Thus, this situation is the reverse of factual scenarios in the cases cited by the Appellees. See e.g. Official Committee of Unsecured Creditors of LTV Aerospace and Defense Co. Inc. v. The Official Committee of Unsecured Creditors of LTV Steel Co., Inc. (In re Chateaugay Corp.), 988 F.2d 322, 323 (2nd Cir. 1993) (Appellant sought reversal of an order permitting payment of funds from a bankruptcy estate to a pension fund.); Allstate Insurance Co. v. Hughes, 174 B.R. 884 888-89 (Appellant sought reversal of an injunction which was the precondition for the docketing of an order approving the British equivalent of a plan. The court noted that since the entry of the injunction, the underlying insolvency was dismissed, the equivalent of a trustee was dismissed and creditors used the plan to negotiate their own payments); In re PC Liquidation Corp., 2008 WL 199457 (Appellant challenged an order approving the sale of substantially all of the debtor's assets which sale was consummated.); In re Delta Airlines, Inc., 374 B.R. 516, 520 (S.D.N.Y. 2007) (Appellant appealed a settlement order incorporated into a plan that had been fully implemented and the debtor, among other things, distributed millions of dollars in stock and released certain claims.).

Moreover, the trustee fails to mention that he entered into a series of stipulated orders with Cordell, signed by the trustee's counsel and approved by the Bankruptcy Court which

- 10 -

<u>expressly reserved all of Cordell's rights, liens, and claims in any of the subject assets that were</u>

<u>subsequently sold.</u>  The specific stipulated language contained in each and every order (which

were entered in settlement of objections raised by Cordell in the Bankruptcy Court) provides in

relevant part as follows:

> "ORDERED, the sale and/or disbursement of any of the assets (or proceeds of
> such assets) acquired by the Trustee pursuant to this Court's October 26, 2007
> turnover order, is expressly without prejudice to the rights, liens, and claim, if
> any, of Cordell Funding, LLLP and Cordell Consultants, Inc., which are reserved
> to the same extent and priority, if any, previously held." [4]

Accordingly, in lieu of a stay, the Trustee affirmatively stipulated that any disposition of

assets originally transferred into the estate by Okun, would not prejudice Cordell's rights, liens,

and claims, all of which continued.  It is not only disingenuous, but plainly an affront to any

notion of fundamental fairness and due process, for the Trustee to now come into this Court

claiming that the appeal itself is "equitably moot" in the face of stipulated order he signed

expressly reserving all rights - - and which induced Cordell not to seek a stay relating to the

disposition of assets received from Okun.  The trustee's failure to advise the Court of the

existence of such stipulated orders is equally surprising and raises more concerns over the efforts

to push the instant relief through without regard for the costs on the rights of third parties.

In addition, even if equitable mootness could theoretically apply to an order bringing

assets into a bankruptcy estate, and in the face of stipulated order reserving all claims and rights,

the facts do not justify application of the doctrine.  Contrary to the Appellees' assertions, Cordell

is not seeking to "'unravel' the transactions" (Appellees' Brief, p. 16) entered into after the entry

of the Order.  Rather, Cordell is seeking a form of relief which accounts for its claims and

---

[4] As the Appellees noted (see n. 3 of Appellees' Brief) the Court my take notice of the dockets and documents filed
in all of these cases. Accordingly, Cordell respectfully submits as Exhibit "A" copies of various orders approving
sales of assets including language reserving and protecting Cordell's rights.  These orders were docketed after
Cordell submitted its designation of items on appeal.

interests, which the Bankruptcy Court (or this Court) could easily implement without disturbing the underlying order itself. In particular, the affect of the relief at issue resulted in the nearly complete divestiture of all of Okun's tangible assets, leaving creditors of Okun, including Cordell, holding claims against a now empty shell, without proviso for addressing the rights and claims of these newly created creditors - - who by virtue of the transfer order became creditors of the instant 1031 Debtors. The remedy sought includes remanding the instant action back to the Bankruptcy Court with instructions to implement a protocol to address claims of the newly created class of creditors, the institution of a supplemental bar date for creditors like Cordell, whose claims arose as a result of the Order, and for consideration of whether or not the assets transferred into the instant estates should be consolidated with the assets of the 1031 Debtors, segregated by entity, and the priority/treatment to be afforded to creditors of the 1031 Debtors and those with claims against Okun in connection with the distribution of any assets. To simply commingle and consolidate the assets received into the instant estates without regard for the empty shell entities left behind is contrary to basic notions of equity and the underlying principles of due process. This relief would not disturb the body of the Order and would merely protect other creditors' rights. Moreover, Appellees' statement that Cordell "inexplicably wait[ed] more than eight months to pursue this appeal..." (Appellees' Brief, p. 1) is patently misleading and misrepresents Cordell's activities since the entry of the Order. The instant appeal was continued upon consent and joint request of the Appellees and Cordell, during which time the Trustee and Cordell entered into certain partial settlements and stipulated to the reservation of Cordell's rights as detailed above. In addition, Cordell and the Trustee have also agreed to stipulations granting Cordell relief from the automatic stay with regard to certain property. (Unfortunately, the Trustee has subsequently moved to vacate portions of the stipulations).

Thus, the parties have been working diligently to resolve their issues and have resolved many of these issues.

Accordingly, the Appellees' feigned surprise is not warranted, contradicts the express stipulated orders entered reserving rights and disregards that the course of conduct hereunder, in inducing Cordell to forebear, moving forward to transfer all of the Okun assets in violation of a restraining order, and then agreeing to a reservation of rights not disclosed to the court, militates persuasively for the grant of equitable relief hereunder, remanding the action back to the Bankruptcy Court with instructions consistent with the foregoing.

## III.    THE ORDER SHOULD BE VACATED OR REMANDED BECAUSE THE BANKRUPTCY COURT ERRED

This Court should vacate the Bankruptcy Court's Order or remand the matter to hold additional hearings because the Order constituted an attack on the New York State Court's injunction, the Bankruptcy Court failed to consider fully what was accomplished by the Order without a proper evidentiary basis, and the Bankruptcy Court failed to ensure Cordell received sufficient notice.

### A.    The Order Improperly Reviewed/Vacated the State Court Injunction, and Violated the Rooker-Feldman Doctrine

Notwithstanding the Trustee's efforts to distance himself from the facts by engaging in personal attacks, Cordell was perfectly within its rights to protect its interests in property of Okun and Okun's entities, <u>none of whom were debtors in bankruptcy</u>, by seeking injunctive relief in New York State Court. Because transfers of property for less than reasonably equivalent value appeared imminent, emergency <u>ex parte</u> relief was appropriate.

- 13 -

The matter was properly before a New York Supreme Court. Based on the record, the Judge exercised jurisdiction and entered the Restraining Order. None of the property subject to the Restraining Order and the State Court's jurisdiction was property of a bankruptcy estate or property of a debtor.

Despite the State Court Restraining Order concerning Nondebtor Assets, the Trustee went forward with a proceeding directly affecting the very same property. Yet the Trustee raises the issue of collateral attack. Indeed, it is the Trustee who urged the Bankruptcy Court to proceed with what amounted to a collateral attack on the New York State Court Order.

Even more significantly, the effect of the Bankruptcy Court's Order was to invalidate the injunction of the New York Supreme Court in violation of the <u>Rooker-Feldman</u> Doctrine.[5] The property Cordell sought to restrain Okun from transferring in state court and over which Cordell obtained the Restraining Order was the same property the Bankruptcy Court then ordered transferred. It cannot be disputed that the effect of the Order was to vacate the State Court's Restraining Order. Even if one were to disregard the <u>Rooker-Feldman</u> Doctrine, a court may not disregard a restraining order from another court without at least holding hearings on notice to the aggrieved party as to the merits of the vacating or otherwise overruling any such order - - in this case, Cordell was not named, noticed, or served with any proceedings to void the Restraining Order. <u>See</u> <u>e.g.</u> <u>Manter v. Howard</u>, 94 Cal. App. 2d 404, 407 (Cal. Dist. Ct. App. 1949) ("Even though the restraining order may have been voidable, which is unnecessary for us to determine, the fact remains that defendants did not have their day in court. The doctrine of comity entitled that restraining order to full respect until it was set aside or modified in a proper proceeding.")

---

[5] The principle that lower federal courts lack jurisdiction to review state court judgments is set forth in <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923); <u>D.C. Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983); 28 U.S.C. §§ 1257, 1330, 1331 and 1332. It is jurisdictional and may be raised at any time by the court or any party. 18 Moore's Fed'l Prac. § 133.30[3][6], at 133-26 (3d. ed. 2006).

Moreover, the Trustee admits, as he must, that the hearings at which the Bankruptcy Court was made aware of the Restraining Order and even the Bankruptcy Court's Order all occurred after the Restraining Order was entered. The attempt to set an earlier effective date is clear error and an effort to circumvent the State Court's jurisdiction by claiming the Transferred Assets were property of the estate.

Clearly, the matters in both the Bankruptcy Court and the New York State Court were "inextricably intertwined." The Trustee's efforts by the Agreement and argument before the Bankruptcy Court were an effort, whether by design or otherwise, to obtain direct review of the New York State Supreme Court's decision by a federal court (here the bankruptcy court) in violation of Rooker-Feldman. The Bankruptcy Court's action was clear error.

In addition, in the case at hand, there was no hearing on the record as to when title to the Assets passed other than a conclusory statement that the Agreement was back dated before the entry of the restraining order. No determination was made by the Bankruptcy Court as to whether or not title in the assets were in fact transferred prior to entry of the Restraining Order, putting aside that the Agreement itself could not be effective until approved by the Bankruptcy Court in any event - - which was clearly after entry of the Restraining Order. Moreover, subsequent sale motions indicate that title to many of the assets, including Okun's vehicles, yacht, helicopters and other aircraft did not pass prior to approval of the Order, let alone Restraining Order. As set forth in greater detail in Appellants' Brief, the law of the state in which an asset is located determines when title to that asset passes. As stated in Appellees' Brief starting on page 7, by the Agreement, Okun and his wife conveyed all of their direct and indirect right, title and interest in the assets. Much of Okun's tangible assets (automobiles, yacht, helicopter and other aircraft) that was supposed to be conveyed to the 1031 Debtors' Estates by

- 15 -

the Agreement is located in states where, in order to transfer title of vehicles and vessels, the owner must execute an assignment and warranty of title to the transferee. See e.g. Fla. Stat. § 319.22 (2008); N.H. Rev. Stat. Ann. 261:14 (2008); Va. Code Ann. § 46.2-628 (2008). To transfer title to an aircraft, an agreement transferring title must be signed by the transferor and transferee and submitted to the Federal Aviation Administration Aircraft Registry for recording, per the United States Department of Transportation.

Accordingly, the Bankruptcy Court erred when it held proceedings involving the Restraining Order covering non-estate assets without a proceeding before it naming Cordell as the counter-party to the order, in affect voiding an order of another court entitled to comity or at worst, proceedings with the aggrieved parties, and otherwise failed to take evidence as to the transfer dates of each and every asset conveyed under the Order.

**B.     The Bankruptcy Court Erred by Failing to Consider the Impact of the Transfers and Their Consolidation in the 1031 Debtors' Bankruptcies**

Appellees mischaracterize the standard of review because they fail to appreciate the impact on Cordell. This appeal is not about the Rule 9019 standard or Iridium[6] factors. This Court reviews *de novo* because the Bankruptcy Court's order involved the transfers of nondebtor property that were not subject to the Bankruptcy Court's jurisdiction, consolidation the Nondebtor Assets with a bankruptcy estate, overruling a state court Restraining Order and Loan Modification Agreement and adjudicated the property interests, all without commencement of a formal adversary proceeding, naming Cordell as a party or other compliance with the Bankruptcy Rules. And the Bankruptcy Court took those actions after determining by a conclusory statement and no showing that the 1031 Debtors' creditors probably had claims to those assets. After that determination, approval of the settlement was a foregone conclusion.

---

[6] In re Iridium Operating LLC, 478 F.3d 452 (2d Cir. 2007).

- 16 -

Likewise, the Court reviews *de novo* the Bankruptcy Court's error in substantively consolidating the Nondebtor Assets[7] with the bankruptcy estates.  Contrary to the Appellees' assertion, the Nondebtor Assets were pooled with the 1031 Debtors' Estates to create a common fund.  The Trustee has begun selling the transferred assets and using the funds to pay expenses arising from the bankruptcy cases.  A review of the dockets indicates the expenses/claims being paid.  Worse still in Okun's situation, the Trustee consolidated his assets with the bankruptcy estate but left his creditors with all of the liabilities.

All of these acts were accomplished under the guise of a "9019 settlement" for expediency in the 1031 Debtors bankruptcies with no process or sufficient opportunity to be heard afforded to Cordell.  Such acts are clearly erroneous and must be vacated.

### C.    Sufficient Notice Was Not Afforded to Cordell

As provided above, the Trustee's argument that Cordell was not entitled to notice fails to address two critical points.  First, by the Agreement, virtually all of the assets of Okun and Third Party Entities ("Nondebtor Assets") were transferred for less than reasonably equivalent value, thereby hindering and delaying the ability of Cordell and other creditors of Okun and the third party entities ("Third Party Creditors") to enforce their rights—whether as secured or unsecured creditors.  The Agreement deprived Third Party Creditors of the assets against which to enforce judgments.  And secondly, Cordell was impacted by the transfers and left with no remedy.

Yet, despite these two critical points and despite depriving Third Party Creditors, including Cordell, of the Nondebtor Assets, the Apellees argue Cordell was not entitled to notice because Cordell was not impacted, and was not a creditor or even a party-in-interest.  The

---

[7] To the extent confusion exists as to Nondebtor Assets (see n.10 of Appellee's Brief), Cordell consistently intends that the defined term "Nondebtor Assets" refers to those assets taken by the Trustee as a result of the Transfer Order from Okun and his entities, the IPofA entities, none of which was a debtor at the time of the taking.

- 17 -

Appellees' conclusory assertions that Cordell was not entitled to notice because Cordell is not a creditor or party-in-interest assumes the very fact that Cordell seeks to challenge were Cordell provided an opportunity to be heard.

Apparently recognizing their shortcomings respecting proper notice, the Appellees attempt to ameliorate the deficiency by arguing that Cordell somehow received notice because of the Loan Modification Agreement (which pre-dated the Trustee's appointment) or because Cordell may have been aware of the Agreement.

The Appellees' argument here fails as well. Even if Cordell were aware of the Agreement, Cordell acted reasonably by expecting that the Trustee would bring an adversary proceeding to carry out the terms of the Agreement to recover property allegedly belonging to the 1031 Debtors or determine the interest of Cordell (and other creditors) in the property sought to be transferred. Certainly Cordell could rely on the Trustee's compliance with Bankruptcy Rule 7001. See e.g., Bankruptcy Rule 7001(1), (2), and (9).

Appellees attempt to minimize cases that defeat their argument by mischaracterizing them as inapplicable because, as the Appellees would have it, Cordell simply is not a creditor or party-in-interest. That argument, while convenient for the Appellees, flies in the face of the facts of the cases. For example, in a strikingly similar set of facts, the District Court vacated the bankruptcy court's order to approve the transfer of nondebtor property to the control of a Chapter 11 Trustee without sufficient notice or opportunity to be heard. See In re Altman, 254 B.R. 509 (D. Conn. 2000).

Altman presented a situation very similar to Cordell's. Roberta Carroll, the affected party similar to Cordell, was a creditor and had an interest in property of a nondebtor entity. A creditor in Mr. Altman's bankruptcy sought appointment of a Chapter 11 Trustee because of

alleged transfers (including a painting in which Ms. Carroll asserted an interest) to nondebtor entities. As part of the hearing on appointment of Chapter 11 Trustee, the Court ordered that the painting was property of the estate, without an adversary proceeding or even a motion. Altman at 510.

The affected party argued that the Court's conclusion that the painting was property of the estate effectively extinguished her claim against the nondebtor without affording her sufficient notice and opportunity to be heard as contemplated by Bankruptcy Rule 7001. There, as here, the affected party argued it was reasonable for the party to anticipate that once a Trustee was appointed, the Trustee would seek through proper procedures to determine what should be transferred or what transfers should be avoided. The creditor seeking a trustee in Altman argued that Ms. Carroll had actual notice because of her participation in the case, a 2004 exam, her attendance at the Trustee appointment hearing, and because she was subject to a prior restraining order. It was also argued that she chose to sit on her rights and not object. Id. at 514.

The Appellate Court disagreed that she had to intervene rather than adopting a "wait-and-see" approach; instead, the Altman court placed the burden on the party seeking the property to file an adversary proceeding. Even though the bankruptcy court had every reason to be suspicious about the ownership/transfers, it went too far, too fast in determining the question of property of the estate in the absence of proper procedural protections. Based solely on evidence presented by parties to the trustee appointment (who were seeking the transfer), the bankruptcy court determined that the property was property of the estate, without an opportunity for Ms. Carroll to present evidence or even be heard. The Altman court said, even if the bankruptcy court's decision may have constituted an accurate prediction, such an approach was improper. Altman at 515; See also Nelson v. Adams USA, Inc., 529 U.S. 460, 120 S.Ct. 1579, 1586 (2000)

("judicial predictions about the outcome of hypothesized litigation cannot substitute for the actual opportunity to defend that due process affords every party against whom a claim is stated").

The record here demonstrates that the Bankruptcy Court went too far, too fast in determining property of the estate as to Nondebtor Assets. As in <u>Altman</u>, for all of the above reasons and those in Cordell's original brief, this Court should vacate the Order and return the matter to the Bankruptcy Court so Cordell may be heard.

## CONCLUSION

For the foregoing reasons, Cordell's appeal should be granted.

Dated:  July 11, 2008                                   Respectfully submitted,


                                                        */s/ Douglas E. Spelfogel*
                                                        Douglas E. Spelfogel (DS 7097)
                                                        Richard J. Bernard (RB 6371)
                                                        **BAKER & HOSTETLER LLP**
                                                        45 Rockefeller Plaza
                                                        New York, New York  10111
                                                        Tel: (212) 589-4200
                                                        Fax: (212) 589-4201

                                                        Attorneys for Appellants
                                                        Cordell Funding, LLLP and Cordell
                                                        Consultants, Inc., Money Purchase Plan, a
                                                        Qualified Retirement Plan Trust

- 20 -

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                            :

In re                         :        Chapter 11

                            :        Case No. 07-11448 (MG)

1031 TAX GROUP, LLC, et al,[1]    :

                            :

               Debtors.    :

                            :
-------------------------------------------------------------X

## ORDER (A) SETTING FORTH PROCEDURE
## FOR CHAPTER 11 TRUSTEE TO SELL CERTAIN ASSETS
## ACQUIRED PURSUANT TO ASSET TRANSFER AGREEMENT;
## AND (B) APPROVING ON A *NUNC PRO TUNC* BASIS CERTAIN SALES

Upon the motion (the "Motion") of Gerard A. McHale, Jr. (the "Trustee"), chapter 11

trustee for the estates (the "Estates") of The 1031 Tax Group, LLC, et al. (the "Debtors"), dated

November 27, 2007, seeking entry of an order, pursuant to § 363(b)(1) of title 11 of the United

States Code (the "Bankruptcy Code"), (a) setting forth the procedure for the Trustee to sell

certain assets acquired pursuant to the Asset Transfer Agreement; and (b) approving on a *nunc*

*pro tunc* basis certain sales; and it appearing that proper notice of the Motion has been given; and

a hearing on the Motion having been held on December 13, 2007; and after due deliberation and

sufficient cause appearing therefor; it is

ORDERED, that the Motion is approved to the extent set forth below; and it is further

ORDERED, that the Trustee be, and hereby is, authorized to sell without further Court

approval, individual assets of the Debtors for amounts of $10,000 or less, subject to an overall

---

[1] The Debtors are:  The 1031 Tax Group, LLC; 1031 Advance 132 LLC; 1031 Advance, Inc.; 1031 TG Oak Harbor
LLC; Atlantic Exchange Company, Inc.; Atlantic Exchange Company LLC; Investment Exchange Group, LLC;
National Exchange Accommodators, LLC; National Exchange Services QI, Ltd.; NRC 1031, LLC; Real Estate
Exchange Services, Inc.; Rutherford Investment LLC; Security 1031 Services, LLC; Shamrock Holdings Group,
LLC; and AEC Exchange Company LLC.

cap of $50,000, upon three (3) business days' notice to the Office of the United States Trustee

and counsel to the Committee of Unsecured Creditors; and it is further

ORDERED, that in the event that the Office of the United States Trustee or the

Committee of Unsecured Creditors submits an objection within such three (3) business days, the

Trustee shall not proceed with the sale but may seek approval of this Court to sell such asset; and

it is further

ORDERED, that the Trustee's sales of a certain trailer and pay a commission in

connection therewith and the sale of a certain Dodge Intrepid, as described in the Application,

are approved *nunc pro tunc*; and it is further

ORDERED, the sale and/or disbursement of any of the assets (or proceeds of such

assets) acquired by the Trustee pursuant to this Court's October 26, 2007 turnover order, is

expressly without prejudice to the rights, liens, and claims, if any, of Cordell Funding LLLP and

Cordell Consultants, Inc., which are reserved to the same extent and priority, if any, previously

held.

ORDERED, that the requirement in Local Bankruptcy Rule 9013-1(b) that any motion

filed shall have a separate memorandum of law is hereby waived.

Dated: New York, New York
       December 13, 2007

                                             ___/s/ Martin Glenn_____
                                             Honorable Martin Glenn
                                             United States Bankruptcy Judge

NO OBJECTION:


___/s/ Andrew Velez-Rivera_____
Trial Attorney
UNITED STATES TRUSTEE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                     :
In re                                                :        Chapter 11
                                                     :        Case No. 07-11448 (MG)
1031 TAX GROUP, LLC, et al.,[1]                      :
                                                     :
                                                     :
                              Debtors.               :
                                                     :
-------------------------------------------------------------X

## ORDER (A) AUTHORIZING CHAPTER 11 TRUSTEE TO PAY NECESSARY EXPENSES ASSOCIATED WITH THE MAINTENANCE OF ASSETS ACQUIRED PURSUANT TO ASSET TRANSFER AGREEMENT AND (B) APPROVING ON A *NUNC PRO TUNC* BASIS CERTAIN EXPENSES PAID ON AN EMERGENCY BASIS

Upon the motion of Gerard A. McHale, Jr. (the "Trustee"), chapter 11 trustee for the

estates (the "Estates") of The 1031 Tax Group, LLC, *et al.* (the "Debtors"), dated November 21,

2007, seeking entry of an order pursuant to § 363(b)(1) of title 11, United States Code (the

"Bankruptcy Code"): (a) authorizing the Trustee to pay ordinary and necessary expenses

required to maintain the value pending sale of assets recently acquired by the Estates; and (b)

approving on a *nunc pro tunc* basis the payment of certain expenses paid by the Trustee on an

emergency basis (the "Motion"); and the Supplement to the Motion, dated December 3, 2007

(the "Motion Supplement"); and it appearing that proper notice of the Motion and the Motion

Supplement have been given; and the objection to the Motion and the Motion Supplement having

been settled; and a hearing on the Motion and the Motion Supplement having been held on

December 13, 2007; and after due deliberation and sufficient cause appearing therefor; it is

---

[1] The Debtors are:  The 1031 Tax Group, LLC; 1031 Advance 132 LLC; 1031 Advance, Inc.; 1031 TG Oak Harbor LLC; Atlantic Exchange Company, Inc.; Atlantic Exchange Company LLC; Investment Exchange Group, LLC; National Exchange Accommodators, LLC; National Exchange Services QI, Ltd.; NRC 1031, LLC; Real Estate Exchange Services, Inc.; Rutherford Investment LLC; Security 1031 Services, LLC; Shamrock Holdings Group, LLC; and AEC Exchange Company LLC.

ORDERED, that the Motion and the Motion Supplement are approved to the extent set forth below; and it is further

ORDERED, that the Trustee be, and hereby is, authorized to pay from property of the Estates without further order of the Court:

(a)    salary and benefits of not more than $25,000 a month for the crew of Edward H. Okun's ("Okun") former yacht (the "Yacht");

(b)    insurance premiums of $52,308.29 with respect to vehicles formerly owned by Okun;

(c)    salary of not more than $55,000 per year and existing benefits to Anne Fox;

(d)    other expenditures of amounts less than $10,000 in the sole discretion of the Trustee; and

(e)    other expenditures greater than $10,000 only with the consent of the Committee of Unsecured Creditors; and it is further

ORDERED, the Trustee is authorized *nunc pro tunc* to have paid the $42,000 and $24,000 expenditures set forth in the Motion relating to the Yacht; and it is further

ORDERED, the Trustee is authorized *nunc pro tunc* to have paid the $81,471.21 set forth in the Motion Supplement relating to the payment of insurance premium with respect to the coverage on all real property; and it is further

ORDERED, the Trustee is authorized *nunc pro tunc* to have paid any other expenditures made by the Trustee prior to the December 13, 2007 hearing that are disclosed to the Court and approved at the December 13, 2007 hearing; and it is further

ORDERED, the sale and/or disbursement of any of the assets (or proceeds of such

assets) acquired by the Trustee pursuant to this Court's October 26, 2007 turnover order, is

expressly without prejudice to the rights, liens, and claims, if any, of Cordell Funding LLLP and

Cordell Consultants, Inc., which are reserved to the same extent and priority, if any, previously

held.

ORDERED, that the requirement in Local Bankruptcy Rule 9013-1(b) that any motion

filed shall have a separate memorandum of law is hereby waived.

Dated: New York, New York
      December 13, 2007

                                              /s/ Martin Glenn
                                              Honorable Martin Glenn
                                              United States Bankruptcy Judge

NO OBJECTION:


      /s/ Andrew Velez-Rivera
Trial Attorney
UNITED STATES TRUSTEE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                          :
In re                                     :        Chapter 11
                                          :        Case No. 07-11448 (MG)
1031 TAX GROUP, LLC, et al.,              :        Jointly Administered
                                          :
                         Debtors.         :
                                          :
-----------------------------------------------------------X

### ORDER AUTHORIZING THE SALE OF A CERTAIN GULFSTREAM II JET PURSUANT TO 11 U.S.C. §§ 363(b)(1) AND 105(a) OF THE BANKRUPTCY CODE

Upon the motion (the "Motion") of Gerard A. McHale, Jr. (the "Trustee"), chapter 11 trustee for the estates of The 1031 Tax Group, LLC, et al., (collectively, the "Debtors")[1], dated December 6, 2007, for entry of an order, pursuant to §§ 363(b)(1) and 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), authorizing the sale of a 1969 Gulfstream II jet, serial number 0049, FAA registration number N511BA (the "Gulfstream") to Threshold Technologies, Inc., pursuant to the terms of the Offer to Purchase Letter (the "Purchase Agreement"), which is attached to the Motion as Exhibit B; and it appearing that due and sufficient notice of the Motion has been given to the parties entitled to receive notice; and it appearing that no objections to the Motion were filed; and it appearing that the sale of the Gulfstream is in the best interests of the Debtors' estates; and after due deliberation and sufficient cause appearing therefor; it is

ORDERED, that the Motion is approved to the extent set forth below; and it is further

---

[1] The Debtors are:  The 1031 Tax Group, LLC; 1031 Advance 132 LLC; 1031 Advance, Inc.; 1031 TG Oak Harbor LLC; Atlantic Exchange Company, Inc.; Atlantic Exchange Company LLC; Investment Exchange Group, LLC; National Exchange Accommodators, LLC; National Exchange Services QI, Ltd.; NRC 1031, LLC; Real Estate Exchange Services, Inc.; Rutherford Investment LLC; Security 1031 Services, LLC; Shamrock Holdings Group, LLC; and AEC Exchange Company LLC.

*407562.3*

ORDERED, that the Trustee be, and hereby is, authorized to cause Okun Air to sell the Gulfstream, pursuant to the terms contained in the Purchase Agreement; and it is further

ORDERED, the sale and/or disbursement of any of the assets (or proceeds of such assets) acquired by the Trustee pursuant to this Court's October 26, 2007 turnover order, is expressly without prejudice to the rights, liens, and claims, if any, of Cordell Funding, LLLP and Cordell Consultants, Inc., which are reserved to the same extent and priority, if any, previously held; and it is futher

ORDERED, that the Trustee is authorized to take such steps as are reasonably necessary to effectuate the sale of the Gulfstream; and it is further

ORDERED, that the requirement in Local Bankruptcy Rule 9013-1(b) that any motion filed shall have a separate memorandum of law is hereby waived.

Dated: New York, New York
**December 27, 2007**


_____/s/Martin Glenn_____
Honorable Martin Glenn
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                          :
In re                                     :      Chapter 11
                                          :      Case No. 07-11448 (MG)
THE 1031 TAX GROUP, LLC, et al.,          :      Jointly Administered
                                          :
                              Debtors.    :
                                          :
                                          :
-----------------------------------------------------------------X

## ORDER AUTHORIZING THE SALE OF A CERTAIN DIASHIP/HEESEN YACHT PURSUANT TO 11 U.S.C. §§ 363(b)(1) AND 105(a) OF THE BANKRUPTCY CODE

Upon the motion (the "Motion") of Gerard A. McHale, Jr. (the "Trustee"), chapter 11 trustee for the estates of The 1031 Tax Group, LLC, et al., (collectively, the "Debtors")[1], dated December 28, 2007, for entry of an order, pursuant to §§ 363(b)(1) and 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), authorizing the sale of a Diaship/Heesen 132-foot yacht, official number 723017 registered with the British Registry (the "Yacht") to Kelly Capital ("Kelly"), pursuant to the terms of the Offer to Purchase Letter (the "Purchase Agreement"), which is attached to the Motion as Exhibit B; and it appearing that due and sufficient notice of the Motion has been given to the parties entitled to receive notice; and it appearing that no objections to the Motion have been filed; and it appearing that the sale of the Yacht is in the best interests of the Debtors' estates; and after due deliberation and sufficient cause appearing therefor; it is

ORDERED, that the Motion is approved to the extent set forth below; and it is further

---

[1] The Debtors are:  The 1031 Tax Group, LLC; 1031 Advance 132 LLC; 1031 Advance, Inc.; 1031 TG Oak Harbor LLC; Atlantic Exchange Company, Inc.; Atlantic Exchange Company LLC; Investment Exchange Group, LLC; National Exchange Accommodators, LLC; National Exchange Services QI, Ltd.; NRC 1031, LLC; Real Estate Exchange Services, Inc.; Rutherford Investment LLC; Security 1031 Services, LLC; Shamrock Holdings Group, LLC; and AEC Exchange Company LLC.

*410679.1*

ORDERED, that the Trustee be, and hereby is, authorized to cause Okun Water, Ltd. to sell the Yacht, pursuant to the terms contained in the Purchase Agreement; and it is further

ORDERED, the sale and/or disbursement of any of the assets (or proceeds of such assets) acquired by the Trustee pursuant to this Court's October 26, 2007 turnover order, is expressly without prejudice to the rights, liens, and claims, if any, of Cordell Funding, LLLP and Cordell Consultants, Inc., which are reserved to the same extent and priority, if any, previously held; and it is further

ORDERED, that the Trustee is authorized to take such steps as are reasonably necessary to effectuate the sale of the Yacht; and it is further

ORDERED, that the requirement in Local Bankruptcy Rule 9013-1(b) that any motion filed shall have a separate memorandum of law is hereby waived.

Dated: New York, New York
       January 22, 2008


/s/ Martin Glenn_____
HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                       :

In re                                     :      Chapter 11
                                         :      Case No. 07-11448 (MG)
THE 1031 TAX GROUP, LLC, *et al.*,     :      Jointly Administered
                                       :

                        Debtors.    :
                                       :
-----------------------------------------------------------------X

### ORDER AUTHORIZING THE SALE OF A CERTAIN 1978 LEAR 25D JET PURSUANT TO 11 U.S.C. §§ 363(b)(1) AND 105(a) OF THE BANKRUPTCY CODE

Upon the motion (the "Motion") of Gerard A. McHale, Jr. (the "Trustee"), chapter 11 trustee for the estates of The 1031 Tax Group, LLC, *et al.*, (collectively, the "Debtors")[1], dated March 5, 2008, for entry of an order, pursuant to §§ 363(b)(1) and 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), authorizing the sale of a 1978 Lear 25D Jet, serial number 238, FAA registration number N4INK (the "Lear Jet") to Golden Aircraft ("Golden"), pursuant to the terms of the Offer to Purchase (the "Purchase Agreement") and Aircraft Inspection Acceptance of the Lear Jet (the "Aircraft Inspection Acceptance") which are annexed to the Motion as **Exhibits B** and **C**, respectively (the "Sale Contract"); and it appearing that due and sufficient notice of the Motion has been given to the parties entitled to receive notice under and in accordance with the Order Granting Application Pursuant to Fed. R. Bankr. P. 2002(2) and 9006(c) for an Order Shortening Time for a Hearing to Consider the Trustee's Motion for an Order Authorizing the Sale of a Certain 1978 Lear 25d Jet to Golden Aircraft Pursuant to 11 U.S.C. §§ 363(b)(1) and 105(a) of the Bankruptcy Code; and it appearing that no objections to

---

[1] The Debtors are:  The 1031 Tax Group, LLC; 1031 Advance 132 LLC; 1031 Advance, Inc.; 1031 TG Oak Harbor LLC; Atlantic Exchange Company, Inc.; Atlantic Exchange Company LLC; Investment Exchange Group, LLC; National Exchange Accommodators, LLC; National Exchange Services QI, Ltd.; NRC 1031, LLC; Real Estate Exchange Services, Inc.; Rutherford Investment LLC; Security 1031 Services, LLC; Shamrock Holdings Group, LLC; and AEC Exchange Company LLC.

*410637.2*

the Motion were filed; and it appearing that the sale of the Lear Jet is in the best interests of the

Debtors' estates; and after due deliberation and sufficient cause appearing therefor; it is

     **ORDERED**, that the Motion is approved to the extent set forth below; and it is further

     **ORDERED**, that the Trustee be, and hereby is, authorized to cause Okun Air 3, LLC to

sell the Lear Jet, pursuant to the terms contained in the Sale Contract; and it is further

     **ORDERED**, the sale and/or disbursement of any of the Lear Jet acquired by the Trustee

pursuant to this Court's October 26, 2007 turnover order, is expressly without prejudice to the

rights, liens, and claims, if any, of Cordell Funding, LLLP and Cordell Consultants, Inc., which

are reserved to the same extent and priority, if any, previously held; and it is further

     **ORDERED**, that the Trustee is authorized to take such steps as are reasonably necessary

to effectuate the sale of the Lear Jet; and it is further

     **ORDERED**, that the 10-day stay imposed by Rule 6004(h) is hereby waived; and it is

further

     **ORDERED**, that the requirement in Local Bankruptcy Rule 9013-1(b) that any motion

filed shall have a separate memorandum of law is hereby waived.

Dated: New York, New York
      March 18, 2008

                         /s/ Martin Glenn
                         Honorable Martin Glenn
                         United States Bankruptcy Judge